In the Matter of SEVEN SPRINGS APARTMENTS, PHASE II, d/b/a Seven Springs Joint Venture, d/b/a Seven Springs Apartments, a California Partnership Composed of Seven Springs Phase II Associates, a California Limited Partnership, Clinton E. Cooper, Gloria L. Cooper, and Plaza Pacific Equities, Inc., a California Corporation, Debtor.

Bankruptcy No. 81–01382A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 14, 1983.

Joyce Bihary, Edward J. Hardin, Janice E. Garlitz, Rogers & Hardin, Atlanta, Ga., for debtor.

Marion Smith, Margaret Murphy, Deborah Burks, Smith, Cohen, Ringle, Kohler & Martin, and J. Michael Lamberth, J. Timothy White, Cotton, White, & Palmer P.A., Atlanta, Ga., for objectors.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This Chapter 11 case was filed on March 31, 1981. After the parties' repeated but unsuccessful negotiations toward settlement of pending complex litigation as a precedent to a possible stipulated plan of reorganization and numerous court hearings, confirmation of the debtor's plan of reorganization is now before the court. However, creditors in this case have challenged this court's authority to confirm the plan. They allege that the Bankruptcy Court lacks subject matter jurisdiction in this case as a result of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and that the Judicial Conference Emergency Model Local Rule, promulgated by the District Court for the Northern District of Georgia, is illegal. In view of the uncer-

tainty surrounding the Bankruptcy Courts' jurisdiction after *Northern Pipeline* and the controversy concerning the Rule, this court deems the following extensive discussion of its authority to be appropriate.

## I. QUESTION PRESENTED

(1) Whether the Bankruptcy Court, after the *Northern Pipeline* decision, has jurisdiction to enter an order of confirmation of this Chapter 11 plan pursuant to 11 U.S.C. § 1129.

## II. ARGUMENTS PRESENTED

The parties seem to be in agreement that, after *Northern Pipeline,* except for the Judicial Conference Local Rule, this court is absent any bankruptcy jurisdiction over this proceeding. Arguments in favor of the legality of the Local Rule generally merely refer to recent perfunctory, fairly uniform, decisions by Article III judges, the July 22, 1982, memorandum of the General Counsel of the Administrative Office of the U.S. Courts, and memoranda of the Administrative Office dated September 27, 1982, and December 3, 1982, which accompanied the Rule proposed to the District Courts. The point is made to this court by respondents to the motions to dismiss that the conception of the Rule by the Judicial Conference and its unanimous promulgation by the Circuit Councils and District Courts through-

out the system indicate that the federal judiciary will, in all likelihood, automatically sustain the Rule on any appeal. Hence, respondents urge this court, to automatically approve the Rule as legal and binding, as many Bankruptcy Judges are doing. The court notes that, while the rule received swift and affirmative promulgation after its recommendation by the Judicial Conference and announcement by the Director of the Administrative Office, the Circuit Councils and District Judges had little initial opportunity to inquire into its legality. While every attorney with whom this court has discussed this matter is skeptical, in view of the national unanimity in promulgating the Rule, that any Article III judge is not committed to endorse the legality of the Rule, this Court rejects that cynical assumption and instead has always asserted that Article III judges would, in considering the Rule in the adversarial context of an appeal from the Bankruptcy Court, apply their recognized talents in scholarship and legal analysis to produce independent rulings. This court hopes that most of the Article III judges harbor no paternalistic bias toward the Rule merely because of their necessarily hasty approval at the time of its adoption in December, 1982.

Recently, several District Courts have sustained the legality of the Rule.[1] One

---

1. (x) *In the Matter of Northland Point Partners,* 26 B.R. 860, 9 B.C.D. 1412 (D.C.E.D.Mich. 1983) and 26 B.R. 1019, 10 B.C.D. 95 (D.C.E.D. Mich.1983).

(xx) *In re Braniff Airways, Inc.,* 27 B.R. 231, 10 B.C.D. 30 (D.C.N.D.Tex.1983), aff'd, 700 F.2d 214, 10 B.C.D. 419 (CA 5 1983).

(xxx) *In re Color Craft Press, Ltd.,* 27 B.R. 962, 10 B.C.D. 182 (D.C.Utah, 1983) (vacating dismissal orders of Bankruptcy Judges).
Other decisions finding the Local Rule illegal are:
(a) *In re Conley,* 26 B.R. 885, 10 B.C.D. 10 (Bkrtcy.M.D.Tenn.1983) (Reversed).
(b) *In re Color Craft Press Ltd.,* 27 B.R. 392, 10 B.C.D. 53 (Bkrtcy.Utah 1983).
(c) *In re Herrera,* 34 B.R. 810, 10 B.C.D. 123 (Bkrtcy.D.Colorado 1983).
(d) *In re Jorges Carpet Mills, Inc.,* 27 B.R. 333, 10 B.C.D. 1 (Bkrtcy.E.D.Tenn.1983).
(e) *In re Otero Mills, Inc.,* —— B.R. ——, 10 B.C.D. 89 (Bkrtcy.D.N.M. Feb. 18, 1983).

(f) *In re Richardson,* 27 B.R. 407, 10 B.C.D. 39 (Bkrtcy.D.Utah 1983) (Reversed).
(g) *In re Sheehan,* 27 B.R. 935 (Bkrtcy.S.D. Ohio 1983).
(h) *In re Sentinel Energy Control Systems, Inc.,* 27 B.R. 795, 10 B.C.D. 153 (Bkrtcy.D.Mass. 1983).
(i) *In re Priebe Farms,* 27 B.R. 119 (Bkrtcy.W. D.Wis.1983).
(j) *In re Johnson,* 26 B.R. 530, 10 B.C.D. 8 (Bkrtcy.S.D.Ohio 1983) (recognizes that jurisdiction does exist under 28 U.S.C. § 1331 to determine the dischargeability of a debt, even though Rule was involved).
(k) *In re Lifeguard Industries, Inc.,* 26 B.R. 858 (Bkrtcy.S.D.Ohio 1983) (jurisdiction continues over all cases filed before December 24, 1982 because stay in accord with Bankruptcy Court in *Matlock, supra* ).
(*l*) In *Samuel Alper v. Old Guard Mutual Insurance Co.,* Misc. No. 83–126 (D.C.E.D.Pa. March 21, 1983). District Judge Van Artsdalen acknowledges the opinions of District

District Court has held that the Rule lacked the statutory foundation to delegate jurisdiction to the Bankruptcy Court, while another District Court has ruled that neither the Bankruptcy Court nor District Court has *any* bankruptcy jurisdiction and the Rule is therefore illegal.[2] Some of these rulings, however, lacked significant legal analysis of the Reform Act and its legislative history. This is especially true of the two sentence per curiam ruling by the Fifth Circuit Court of Appeals on February 28, 1983.[3] These rulings have to some extent eroded the confidence of the undersigned that Article III judges will not bring to their considerations of the Rule a preconception of its legality. Neither the several District Court opinions nor the Fifth Circuit opinion favorable to the Rule discussed *Northern Pipeline* beyond the points made in the memorandum of the Administrative Office which accompanied the proposed Rule. The novel conclusions at pp. 237–238

Judge DeMascio in *North Point Partners* and the *Braniff* District Court and Fifth Circuit opinions, and concluded: the "*Marathon Pipeline* decision should be read as invalidating § 1471 in its entirety." He rejected the contention that only § 1471(c) was declared unconstitutional because that is "inconsistent with what appears to be a consensus of the majority (plurality and concurring Justices) in *Marathon Pipeline,* namely, that the statute is not severable." *Id.,* pp. 11–12. Judge Van Artsdalen further ruled that absent jurisdiction after *Northern Pipeline,* the Bankruptcy Judge has no authority to "certify" or transfer the case or proceeding to the District Court as provided in the Local Rule, because the District Court also has no subject matter bankruptcy jurisdiction. *Id.* at pp. 17–18.

Other decisions found to this date which sustain the Local Rule are:

(aa) *In re American Computer and Telecommunications Corporation,* 26 B.R. 512, 9 B.C.D. 1421 (Bkrtcy.E.D.Va.1983) (implicitly recognizes Rule's validity).

(bb) *In the Matter of Ted Eugene Brown,* 26 B.R. 119, 9 B.C.D. 1276 (Bkrtcy.W.D.Mo., 1983) (it has "inherent" jurisdiction).

(cc) *In re Egeria Societa Per Azioni di Na Vigazione,* 26 B.R. 494, 9 B.C.D. 1312 (Bkrtcy.E.D. Va.1983).

(dd) *In the Matter of Independence Savings Bank,* 26 B.R. 127, 9 B.C.D. 1274 (Bkrtcy.E.D. 1983) (implicitly recognizes Rule's validity).

(ee) *In the Matter of Isis Foods, Inc.,* 26 B.R. 122, 9 B.C.D. 1291 (Bkrtcy.W.D.Mo.1983) (implicitly recognizes Rule's validity).

(ff) *In re Johns-Manville Corp.,* 26 B.R. 919 (Bkrtcy.S.D.1983).

(gg) *Q 1 Corp. v. Reichenstein,* 28 B.R. 647 (D.C.E.D.N.Y.1983).

(hh) *In the Matter of The Schear Realty & Investment Co., Inc.,* 25 B.R. 463, 9 B.C.D. 1210 (Bkrtcy.S.D.Ohio 1982).

(ii) *In re Irving M. Stillman, M.D.,* 26 B.R. 834, 10 B.C.D. 5 (Bkrtcy.D.Md.1983).

(jj) *In re Tip-Pa Hans Enterprises, Inc.,* 27 B.R. 780, 10 B.C.D. 85 (Bkrtcy.W.D.Va.1983) (with reservations: Rule may entail liability for bankruptcy judges).

(kk) *In re International Titanium Corp.,* 33 B.R. 374 (WD Pa.1983).

The decisions are in hopeless conflict. Despite the obvious tendency of Article III judges to subscribe to the rule, the holdings in favor of the rule are conflicting. Some district courts have even fashioned their own expedient. For instance, the District Court in *Matlock Trailer Corp., infra,* ruled that because the 1978 Act's grant of jurisdiction to the bankruptcy courts was invalid, "responsibility [for bankruptcy matters] rests with the district court" by virtue of (1) 28 U.S.C. § 1471(a) and (b), (2) the transition provisions of the 1978 Act, and (3) "old" 28 U.S.C. § 1334. At 326. The *Matlock* court then invalidated its counterpart of the Emergency Rule because, tested by Fed.R.Civ.P. 53 (authorizing references to a special master in exceptional cases), the "wholesale referral" of bankruptcy cases by the "model" rule violated Rule 53. The court held that the "model" rule was "*an unconstitutional abdication of the judicial function*". At 328 (emphasis supplied). The *Matlock* court then made a "re-referral" to Bankruptcy Judges for the district on the basis of Rule 53 and it appointed Bankruptcy Judges as special masters under Rule 53. Moreover, the court directed that the bankruptcy judges serve "in accordance with the bankruptcy court's usual system for the assignment of cases", and also that bankruptcy matters referred to the Bankruptcy Judges could be "transferred in whole or in part between the bankruptcy judges for this district without prior approval of this court." At 330. Finally, the District Court sanctioned a separate clerk's office for the courts it thus created. In the absence of a congressional solution, only one or more Supreme Court decision can supply the answer to the Rule.

**2.** (a) *In re Matlock Trailer Corp.,* 27 B.R. 311, 10 B.C.D. 34 (Bkrtcy.M.D.Tenn.1983) (but preserved pre-December 24, 1982 jurisdiction because of stay) (Reversed).

 (b) *In re Matlock Trailer Corp.,* 27 B.R. 318, 10 B.C.D. 372 (D.C.M.D.Tenn.1983) (enacts its own bankruptcy system).

**3.** See fn 1(xx), *supra.*

of the opinion of the District Judge in the *Braniff* case, and especially n. 9, do, however, offer some very amazing insights into the legal analysis applied there.[3A] The recent District Court decision in the Middle District of Tennessee in *In re Conley, supra,* n. 1(a) sustaining bankruptcy jurisdiction in the District Court but holding that the Rule's authorization of referral of bankruptcy matters by District Judges to Bankruptcy Judges is without a legal basis, and the recent Sixth Circuit decision in *White Motors,*[3B] demonstrate that the decisions are in hopeless conflict. Only the Supreme Court can end the uncertainty surrounding the legality of the Rule in the absence of intervening action by the Congress. The recent Article III court decisions indicate a build-up of decisional authority and erroneous reliance on prior decisions offering little analysis; beginning with *Prudential Insurance Co. v. The Stouffer Corporation,* 26 B.R. 1019 (D.C.N.D.Mich.1983), by Judge DeMascio, who, as Chairman of the Judicial Conference Bankruptcy Committee, helped author the Rule and proposed its adoption by the Judicial Conference. Contrary to the assumptions made in these opinions, there can be no presumption of bankruptcy jurisdiction in the District Courts as proposed by the Rule. Thus far, no Article III court opinion which has considered the legality of the Rule has dealt with the applicable guiding principles of federal jurisdiction.

As a result of the Supreme Court's decision in *Northern Pipeline,* the contentions of the movants may be summarized as follows:

(1) The District Court is without trial subject matter jurisdiction over the case or proceeding;

(2) This Bankruptcy Judge has no exercisable jurisdiction to hear and adjudicate the issues and enter an order in this proceeding;

(3) The District Court does not have the authority to promulgate the Local Rule, refer proceedings to, and direct this Bankruptcy Judge;

(4) The Local Rule impermissibly delegates Article III powers to non-Article III judges.

### III. INTRODUCTION TO THE NORTHERN PIPELINE DECISION:

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, 9 B.C.D. 67, (1982), the United States Supreme Court held that § 241(a) of the Bankruptcy Reform Act of 1978 ("Bankruptcy Reform Act"), which, *inter alia,* enacted 28 U.S.C. §§ 1471–1482, violated Article III of the United States Constitution because § 241(a) *vested*[4] the Bankruptcy Courts solely with jurisdiction which empowered the Bankruptcy Judges to exercise the "essential attributes of the judicial power" of the United States without providing life tenure and protection against salary diminution for the Bankruptcy Judges as mandated by Article III for other federal judges empowered to exercise such jurisdiction. The Court stated: "We *conclude* that *§ 241(a)* of the Bankruptcy Act of 1978 … *has* impermissibly *removed* most of … the *judicial power* from the Article III District Court and *has vested*[5] those attributes in a non-Article III Court … Such a grant [by

---

**3A.** *Id.*

**3B.** n. 70 *infra.*

**4.** See *Northern Pipeline,* 102 S.Ct. at 2878, 79–80 (Justice Brennan);

Vest: to put in the possession or control of a person or persons: *The management of the hospital is vested in a board of trustees;* to furnish with powers, authority, rights, etc.: "Congress is vested with the power to declare war."

Vested: placed in the possession or control of a person or persons; fixed; settled; *a vested privilege*
Vested interest: a legally established title to real or personal property;
Vested right: a legally established right to present or prospective enjoyment of a property
*The World Book Encyclopedia Dictionary,* Vol. 2, p. 2172, (1963) (Doubleday and company, Inc.).

**5.** *Id.*

§ 241(a)] of jurisdiction cannot be sustained ...". 458 U.S. 50 at 87, 102 S.Ct. 2858 at 2880, 73 L.Ed. 598 at 625, 9 BCD 84.

The Supreme Court initially stayed its ruling in *Northern Pipeline* until October 4, 1982, to "afford Congress an opportunity to reconstitute the Bankruptcy Courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." 102 S.Ct. 2858 at 2880. Subsequently, the Supreme Court extended the stay until December 24, 1982. On December 23, 1982, however, the Court declined to extend the stay of its judgment a second time, and on December 25, 1982 the decision in *Northern Pipeline* became effective.

### The Local Rule

Upon expiration of the stay of *Northern Pipeline,* and in the absence of remedial legislation, the Judicial Conference of the United States adopted the position that bankruptcy jurisdiction is vested[6] in the District Courts during the Transition period to April 1, 1984. The Conference proposed a temporary Emergency Model Local Rule, [hereinafter "Local Rule," "Model Rule," or "Emergency Rule"], for the District Courts that would govern the conduct of Title 11 cases during the Transition period. The Rule suggested by the Judicial Conference, as drafted by the Administrative Office of the United States Courts and as directed by the Circuit Council, was adopted by the District Court of the Northern District of Georgia on December 17, 1982.[7] The Local Rule asserts jurisdiction and judicial power in the District Court over Title 11 cases and proceedings filed in the Bankruptcy Court. The Rule then refers all bankruptcy cases and proceedings, and controversies arising out of or related thereto to the existing United States Bankruptcy Judges of the United States Bankruptcy Court, except for certain judicial actions as prescribed in the Rule. It asserts control over the Bankruptcy Court and Bankruptcy Judges. The Rule

disregards the separate and independent status of the Bankruptcy Courts and Bankruptcy Judges during the Transition period, which was provided for by §§ 404 and 405 of the Reform Act, and creates a pseudo-merger of the two courts under the supervision of the District Court. The authority for the view, asserted in the July 22, 1982 memorandum of the General Counsel, is that §§ 404 and 405 of the Reform Act continue the prior Act's courts of bankruptcy. The Rule creates these courts of bankruptcy with the District Courts, which continue to possess Title 11 jurisdiction and control of Bankruptcy Judges and the new court during Transition.

Apparently, the Administrative Office divides bankruptcy matters into two categories, either "core" bankruptcy matters (the plurality opinion in *Northern Pipeline* uses the term "core" in one discussion but does not define "core" bankruptcy proceedings) or "related proceedings." The Bankruptcy Judge shall, in the case of core matters, make findings and conclusions and enter judgments, but, in the case of related matters, he is to make findings and conclusions and lodge a proposed judgment with the District Court. In essence, the Rule attempts to recast the distinction between summary and plenary jurisdiction as it existed under the 1898 Act. A party aggrieved by an order of the Bankruptcy Judge in a core matter must timely appeal to the District Court. The order of the Bankruptcy Judge is enforceable unless enforcement is stayed. In related matters, the District Court is to enter its order and appeal therefrom is to the Circuit Court. The appeal procedure of Part VIII of the Bankruptcy Rules and 28 U.S.C. § 1334 and § 405(c)(2) of the Reform Act are overridden by the Local Rule. The standard of review of judgments entered in core matters and of proposed judgments in related matters is not the "clearly erroneous" standard of Bankruptcy Rule 810 and FRCP 53, but is within the discretion of the District Court. The District Court is not required to give deference to the findings of fact of the

---

6. *Id.*

7. The model Rule submitted to the courts by the A.O. December 3, 1982, was adopted by the DC ND GA on December 17, 1982.

Bankruptcy Judge and may adopt, modify, terminate, annul, remand or take such other steps as the District Court finds appropriate.

The Rule adopted by the District Court for the Northern District of Georgia refers all bankruptcy matters pending before a Bankruptcy Judge of this district on December 25, 1982 to that judge exactly as constituted on December 24. The Rule is exactly as proposed by the Administrative Office. Filings of cases and proceedings within the Bankruptcy Court under Chapter 3 of Title 11 U.S.C., and automatically referred to Bankruptcy Judges by § 405(a)(1) of the Reform Act and 11 U.S.C. §§ 301, 302, 303, 304, are referred to the four Bankruptcy Judges exactly as previously assigned by the Bankruptcy Court's rotation system or, in the future, as determined by the policy of the Bankruptcy Judges.

One such matter pending before the undersigned Bankruptcy Judge at the time *Northern Pipeline* became effective is this case and proceeding.

In considering the legality and constitutionality of the "Judicial Conference Emergency Model Local Rule," an understanding of the scope of the Rule, the jurisdiction statute and Transition provisions, the legislative history of the Reform Act of 1978 as revealed through the Senate and House Reports and legislative statements, and of the four opinions in *Northern Pipeline* is required. Thus, starting with federal jurisdictional principles, the Supreme Court decision and the legislative history of the Reform Act, this court will attempt to deal with these issues comprehensively. Appendix A contains extensive quotations from the House Report, Senate Report and Congressional Record concerning the Reform Act.

## IV. THE BANKRUPTCY REFORM ACT OF 1978; COURT STRUCTURE

### Pre-1978

Prior to the adoption of the Reform Act in 1978, the courts of bankruptcy were defined in Section 2(a)(10) of the 1898 Act as the United States District Courts. The courts of bankruptcy of the District Courts were authorized to exercise original jurisdiction over bankruptcy cases, including such matters as contested petitions, the allowance and disallowance of claims, the granting or denial of discharges and the confirmation of plans. In addition, the courts of bankruptcy had jurisdiction over property in the actual or constructive possession of the debtor on the date of bankruptcy and had original, nonexclusive jurisdiction over specified avoiding powers, including preferences and fraudulent conveyances. Section 2(a)(7).

The judicial power conferred on the courts of bankruptcy of the District Courts was exercised either by a United States District Judge sitting as a court of bankruptcy, or by a referee in bankruptcy (Bankruptcy Judge since promulgation of the Bankruptcy Rules of 1973), appointed for a six-year term, in which event the orders were subject to appellate review by the District Court under Part VIII of the Bankruptcy Rules; in either event, the power of the courts of bankruptcy was limited to the exercise of so-called "summary jurisdiction." Summary jurisdiction included matters inherent in bankruptcy cases and the determination of disputes relating to property in the actual or constructive possession of the debtor, but did not include the exercise of District Court power over matters of original but not exclusive jurisdiction.

■ The bifurcation of judicial effort between the referee in bankruptcy (Bankruptcy Judge); the District Court and state courts led to endless litigation, delay and waste. House Report, 95–595, pp. 4, 7–15, Senate Report 95–989, pp. 16–20, U.S.Code Cong. & Admin.News 1978, p. 5787. The elimination of controversies over the appropriate forum and the delays and expense in contesting the existence or absence of summary jurisdiction was one of the major changes wrought by the Reform Act. House Report, 95–598, 1977, pp. 7–16; Senate Report, 95–989, 1978, pp. 18, 20, 153–54, 166–67.

### During Transition

■ The Reform Act made several changes to courts of bankruptcy which be-

came effective during the Transition period. First, the Bankruptcy Reform Act, Title IV Transition, § 401, repealed the Bankruptcy Act of 1898, ("Bankruptcy Act"), as amended, with respect to cases commenced on or after October 1, 1979 and abolished the old court of bankruptcy—District Court jurisdiction and adjudicatory system. The congressional intention to eliminate the universally criticized two-step adjudicatory system whereby two levels of judges (or more than one court) could exercise jurisdiction was manifest in two competing bills, H.R. 8200 and S. 2266, the Senate[8] and House[9] Reports, and in the floor statements of the House and Senate leadership in consideration of the Reform Act.[10] Second, the statutory scheme of the compromise of Congress on the jurisdictional grant in the Reform Act was to grant the District Courts "original and exclusive jurisdiction over all cases under Title 11." The District Courts have "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." 28 U.S.C. § 1471. However, the newly constituted Bankruptcy Court was to "exercise all of the jurisdiction conferred by this section on the district courts." 28 U.S.C. § 1471(c); *Northern Pipeline, supra,* 102 S.Ct. 2879–80 at n. 40; Senate Report, 95–989, § 216, p. 153. The purpose of these provisions was to eliminate the confusing and costly summary/plenary jurisdictional bifurcation that existed under the old Act by conferring jurisdiction of all bankruptcy matters on a new, independent and specialized Bankruptcy Court. *Northern Pipeline, supra,* pp. 2879–2880 and n. 40.

## V. FEDERAL JURISDICTION PRINCIPLES

A. *In The Absence Of A Clear Grant By Congressional Statute Of Specific Jurisdiction, Federal Courts Are Without Alleged Jurisdiction*

The *Northern Pipeline* decision strips the Bankruptcy Judges on and after December 24, 1982, from exercising any of the grant of jurisdiction included in § 241(a) to adjudicate rights of parties in Title 11 cases or proceedings. Thus, the only basis for jurisdiction of Bankruptcy Judges to act in proceedings in Title 11 cases must be derived from the Rule proposed by the Judicial Conference and entered by the District Court in the Northern District of Georgia on December 17, 1982. The Rule purports to lodge bankruptcy jurisdiction in the District Court and directs the Bankruptcy Judges to perform a judicial role similar to that of special masters or United States Magistrates. Creditors in this case have challenged the legality of the exercise of jurisdiction by this court under the Rule. Thus, this court, in order to ascertain its jurisdiction in the matter in question, must determine the validity of the Local Rule of the District Court which purports to confer that jurisdiction, i.e., to determine the jurisdiction of another court, which is an unusual circumstance. Many Bankruptcy Courts are ruling that it is not incumbent upon a trial court to declare a rule illegal and many allege that we should all be good soldiers and comply with the chain of command under which the Rule was promulgated. However, in the view of this court, this is not a military exercise and the Rule is not an appellate court decision on issues of substantive or procedural law. It is not a question of *stare decisis* which is binding upon this court in consideration of its jurisdiction. The Rule raises questions of subject matter jurisdiction which this court, and the District Court when it acts under the Rule, must determine as a threshold issue on a case by case basis in respect to each category of proceeding and type of judicial action.

1. *No Common Law Power*

In the aftermath of *Northern Pipeline,* there is a common notion reflected in some recent decisions that the District Courts

---

**8.** Senate Report No. 95–989.

**9.** House Report No. 95–595.

**10.** *Id.*

must inherit or be reinvested with bankruptcy jurisdiction either under the prior Bankruptcy Act or the Reform Act because "bankruptcy jurisdiction must be someplace." This reveals an impression that there is some sort of common law or inherent bankruptcy jurisdiction in the District Courts. In the *Braniff* case,[11] affirmed by the Fifth Circuit Court of Appeals,[12] and in *In re Northland Point Partners,* 26 B.R. 1019, 10 B.C.D. 95 (E.D.Mich.1983) (DeMascio, J.) the decision held that the District Court possesses "inherent equitable jurisdiction" over bankruptcy matters and authority to promulgate an adjudicatory court system using the organization, clerical staff and judicial services of the existing United States Bankruptcy Court and the existing United States Bankruptcy Judges as aides to the District Judges. The District Court in Utah[13] expressed a similar argument of District Court inherent or equitable authority to exercise and/or refer the bankruptcy adjudicatory process. These opinions reflect the viewpoint suggested by the Administrative Office memorandum of July 22, 1982; namely, that because bankruptcy jurisdiction under the 1898 Act obtained from 1898 through 1978 in the courts of bankruptcy of the District Courts, the District Courts must, after *Northern Pipeline,* have reversionary bankruptcy jurisdiction by something akin to title by prior possession, longevity, habit, or default; or that by virtue of the emergency situation and ensuing chaos, the Circuit Courts[14] and District Courts[15] must, in the interest of justice, save the system and devise an adjudicatory system to fill the breach.

This court considers such suggestions of inherent jurisdiction and delegation powers in the Circuit Councils and District Courts to be both counter to long-standing federal jurisdictional principles and a dangerous policy of encroachment into the legislative power reserved for the Congress.

On the contrary, there is no common-law bankruptcy jurisdiction in the federal courts and bankruptcy jurisdiction is not inherent in Article III courts. Bankruptcy jurisdiction does not "have to be somewhere." The federal courts have been without bankruptcy jurisdiction under the Constitution almost as long as the Constitution has existed. Although the Constitution of the United States, adopted in 1789, gave Congress authority to enact national uniform laws on the subject of bankruptcy in Article I, Congress did not enact a Bankruptcy Act until 1800. That Act was repealed in 1803. (2 Stat 19). Thereafter, no Bankruptcy Act was in existence in the United States until 1841, which statute expired in 1843. (5 Stat 440). The Bankruptcy Act of 1867 expired in 1878. (14 Stat 517). Then, during the economic panic of 1898, the Bankruptcy Act of 1898 was enacted. (Ch. 541, 30 Stat 544). Thus, during the 19th century, the United States was without a bankruptcy act more years than a bankruptcy act applied. Hence, it is error to assume inherent or residual bankruptcy jurisdiction in the District Courts just because *Northern Pipeline* ruled that the jurisdictional grant to the non-Article III Bankruptcy Court is unconstitutional and because the subsequent lapse of jurisdiction is resulting in considerable economic chaos. For federal jurisdiction to obtain, the federal court in which the action is filed must find a clear congressional jurisdictional grant to that court.

## 2. Separation of Powers

The Constitution carefully divided governmental power between the Congress, the courts and the executive. The importance of enforcing the separation of powers among the three branches of government needs no elaboration. Under the Constitution, it is the Congress, not the courts, which has the responsibility of determining

11. See fn. 1(xx), *supra.*

12. See fn. 1(xx), *supra.*

13. See fn. 1(xxx), *supra.*

14. *Braniff, supra,* fn. 1(xx), Feb. 8, 1983.

15. *Color Craft* D.C., *Northland,* D.C., *supra,* fn. 1(XXX) and 1(x).

the jurisdiction of the inferior federal courts. The judicial power under the Constitution is to be exercised by independent judges, but only within the scope of the jurisdiction granted to them by Congress. A failure of Congress to act, despite a need for legislation, cannot justify an usurpation of congressional power by any other branch of government to supply what Congress failed to provide. The federal courts have universally recognized that adherence to the constitutional mandate for separation of powers precludes an assumption of power by the courts to create their own jurisdiction. As the Supreme Court noted in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., supra,* 458 U.S. 50 at 64, n. 15, 102 S.Ct. 2858 at 2867, n. 15, 73 L.Ed.2d 598 at 610, n. 15:

> "The Framers chose to leave to *Congress* the precise role to be played by the lower federal courts in the administration of justice." [Emphasis supplied].

*See also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *Lockerty v. Phillips,* 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Kline v. Burke Construction Co.,* 260 U.S. 226, 233–234, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922); *Graves v. Sneed,* 541 F.2d 159, 161 (6th Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977); *Jorden v. Metropolitan Utilities District,* 498 F.2d 514, 516 (8th Cir.1974); *Markham v. Newport News,* 292 F.2d 711, 713 (4th Cir.1961); *Eastern Federal Corp. v. Wasson,* 525 F.Supp. 241, 243 (D.S.C.1981); *Rompe v. Yablon,* 277 F.Supp. 662, 664 (S.D.N.Y.1967); 1 *Moore's Federal Practice* ¶ 0.60[2.–3], at 616.1 to 617 (2d ed. 1982); 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3526, at 113–114 (1975).

### 3. *No Presumption of Jurisdiction*

■ Any doubt about whether the District Courts are empowered to confer bankruptcy jurisdiction on themselves and the Bankruptcy Courts must be resolved *against* a finding of jurisdiction. "[I]n the absence of a clear expression of Congress' intent," authority for the District Courts should not be read into the 1978 statute. *United States v. Security Industrial Bank,* —— U.S. ——, ——, 103 S.Ct. 407, 414, 74 L.Ed.2d 235, 245 (1982). It is hornbook law that all federal courts are courts of limited jurisdiction and the "jurisdiction of the lower federal courts is ... limited to those subjects encompassed within a statutory grant of jurisdiction through an act of Congress."[16] The lower federal courts are courts of limited, not general, jurisdiction. They have no subject matter jurisdiction except as conferred upon them by Congress. The Supreme Court has stated that "there are no presumptions in favor of the jurisdiction of Federal courts." *Ex parte Smith,* 94 U.S. 455, 456, 24 L.Ed. 165 (1877).[17] Moreover, it is *presumed* that a federal court lacks jurisdiction unless it affirmatively appears that there is a statute which confers jurisdiction over the cause. *See Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 17 (1799).[18] When the inquiry involves the jurisdiction of a federal court, "the presumption in every stage of a cause [is] that it is without the jurisdiction of a court of the United States." *Lehigh Mining & Manufacturing Co. v. Kelly,* 160 U.S. 327, 337, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895). *Accord, Grace v. American Central Ins. Co. of St. Louis,* 109 U.S. 278, 283, 3 S.Ct. 207, 209, 27 L.Ed. 932 (1883); *Owen Equipment & Erection Co. v. Kroger, supra,* 437 U.S. at 374, 98 S.Ct. at 2403 (1978); *Arizona v. Manypenny,* 451 U.S. 232, 258, 101 S.Ct. 1657, 1673, 68 L.Ed.2d 58 (1981); *In re Trac Records, In re Motion to Dismiss,*

**16.** *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

**17.** *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799); *Grace v. American Central Ins. Co.,* 109 U.S. 278, 283, 3 S.Ct. 207, 209, 27 L.Ed. 932 (1883).

**18.** *Id.;* and *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981).

9 B.C.D. 101, 23 B.R. 334, 335, (Bkrtcy.N.D. Ga.1982); Lieb, *Jurisdiction and Venue in Bankruptcy Litigation,* 1982 Ann.Surv. Bank.Law at 116.

■ Neither waiver, nor consent of the parties, nor estoppel by judgment will confer jurisdiction where it is prohibited.[19] In the absence of clear constitutional or federal statutory jurisdiction, jurisdiction must be denied by federal courts.[20]

■ It is incumbent on each federal court at all levels to *sua sponte* inquire into its subject matter jurisdiction over every matter before it.[21] In the absence of jurisdiction, the court has no authority other than to dismiss.[22]

■ None of the statutes cited in Administrative Office memoranda or in the decisions supporting the Rule can be argued to clearly confer Title 11 jurisdiction on District Courts. Each jurisdictional argument in support of the Rule is at best highly uncertain. All of the arguments for the validity of the Rule fail to overcome the presumption against such jurisdiction.

## VI. THE DISTRICT COURT IS WITHOUT JURISDICTION OVER TITLE 11 CASES AND PROCEEDINGS

A. *Sections 404 And 405 Of The Reform Act Do Not Include A Statutory Grant Of Jurisdiction To The District Court To Exercise Trial Bankruptcy Jurisdiction During Transition*

1. *The Administrative Office Memoranda*

The Model Rule nowhere states that the District Court has bankruptcy jurisdiction, although that assumption is implicit. The Rule does not cite any authority for the District Court to assert Title 11 jurisdiction or its authority to establish and supervise a reconstituted bankruptcy adjudicatory system using Bankruptcy Judges. Sections 404 and 405 of the Bankruptcy Reform Act were cited in the memorandum of the General Counsel of the Administrative Office dated July 22, 1982,[23] and in the Administrative Office memoranda of September 27, 1982 and December 3, 1982[24] as authority for the proposition that "the 1978 Act also vests bankruptcy powers in the District Court as 'courts of bankruptcy' until 1984."

■ The memorandum of the General Counsel of the Administrative Office, dated July 22, 1982, states that "the courts of bankruptcy ... continue to exist until April 1, 1984, despite the formal repeal of the old Bankruptcy Act ... the 1978 Act expressly provides for continuation of the old courts of bankruptcy and their jurisdiction as departments of the respective district courts." This statement, especially "and their jurisdiction," is both oversimplified and erroneous. Neither the old courts of bankruptcy nor their old jurisdiction is continued. However, the statement has apparently led to the conclusion reached in some recent District Court decisions that the continuation of the prior Act's courts of bankruptcy means that there is "no change" in the "bankruptcy jurisdiction of courts of bankruptcy—district courts until April 1, 1984," and that a two-step judicial

---

**19.** *Rock Island Millwork Co. v. Hedges-Gough Lumber Co.,* 337 F.2d 24, 26 (CA8 1964); *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951).

**20.** See fn. 12 and *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

**21.** *Insurance Corp.,* fn. 16, *supra* at 2104; *California v. LaRue,* 409 U.S. 109, 112–113, fn. 3, 93 S.Ct. 390, 394, fn. 3, 34 L.Ed.2d 342 (1972).

**22.** *Freeman v. Bee Machinery Co.,* 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509 (1943). See 23 B.R. at 335.

**23.** House Rep. No. 97–807, 97th Cong. 2d Sess., to accompany H.R. 6978, p. 20 et seq., Sept. 15, 1982; see also: House Rep. No. 98–9, 98th Cong., 1st Sess., Part I to accompany H.R. 3, p. 1 et seq., Feb. 24, 1983.

**24.** *Norton Bankruptcy Law and Practice, Monograph:* Norton & Lieb, *The Aftermath of Northern Pipeline: Bankruptcy Jurisdiction Under the Local Court Rule;* Appendix I, pp. 82–84, 89–90.

process remains until April 1, 1984.[25] Aside from the question of jurisdiction which, during Transition, is vested in the incumbent Transition Bankruptcy Judges, not the courts of bankruptcy, this erroneous impression, fostered by Administrative Office memoranda, ignores the myriad of changes which the Reform Act makes in the status, structure, and function of the courts of bankruptcy during Transition, the removal of the District Judges from the management of the court of bankruptcy and from authority over Bankruptcy Judges.

The Administrative Office memorandum reasons:

> "This conclusion is evidenced by the retention of some district court authority over the office of bankruptcy judge from the old Bankruptcy Act, notably provisions relating to appointment, removal, compensation, vacancies, absence and disability."

A reading of § 405(a)(1) and the Senate and House Reports pertaining to the Transition provisions shows that the terms of the "incumbent" Bankruptcy Judges are continued at least until April 1, 1984, (i.e., until their successors are "appointed and qualify"), without any right of removal or "retention of some district court authority." Section 405 clearly places removal on the basis of absence, disability, and so forth, in the Court of Appeals and a Merit Screening Committee. The mention of "compensation" by the Administrative Office memorandum is a mystery because compensation is set by Congress, not the District Courts.

 The conclusion of the memorandum is that the "jurisdiction granted under Section 405(b) ... is invalidated by *Northern Pipeline* and the "courts of bankruptcy" as they existed on September 30, 1979, and their jurisdiction under the *old Bankruptcy Act* would be continued through March 31, 1984."[26] [Emphasis supplied]. Thus, the memorandum argues that, because of *Northern Pipeline*, the District Courts through the courts of bankruptcy "revert to their jurisdictional status under Section 2(a) of the *old Bankruptcy Act*." [Emphasis supplied]. This argument ignores § 401(a) of the 1978 Act which repeals the prior Bankruptcy Act and, thus, the "old" jurisdiction granted thereunder. Therefore, the old Act simply cannot be the basis of District Court jurisdiction over Title 11 cases and proceedings.

 Apparently, even the Administrative Office seems to have abandoned this argument. No court has followed it. Now the proponents of bankruptcy jurisdiction in the District Courts seem to suggest that the continued court of bankruptcy *is* the District Court under § 2(a) of the prior Bankruptcy Act and, thus, the District Court, i.e., District Judges, acquired the § 1471(a) and (b) jurisdiction of the Reform Act rather than "old" Act jurisdiction during the Transition period. This strange jump from § 2(a)(10) court of bankruptcy status to include a jurisdiction grant is fallacious and ignores the separate jurisdictional grant of § 2(a)(7). It also ignores the creations of the Reform Act: the new court in 28 U.S.C. § 151 and § 404; then the jurisdiction for that new court in 28 U.S.C. § 1471 and other provisions of § 241(a).

The Administrative Office memorandum of September 27, which accompanied the Rule, stated that the Rule, which delegates power to Bankruptcy Judges, expresses "the clear intent of the Congress to continue a two-officer court of bankruptcy through 1984." Both the Transition provisions and their legislative explanation show the clear fallacy of that statement. The December 3 memorandum, which accompanied a modified Rule, omitted this statement, leaving the impression that argument has been abandoned.

2. *Sections 404 and 405*

 A study of § 404 shows that Congress intended to exclude the authority of the District Court and District Judges over bankruptcy matters effective October

---

**25.** Utah District Court, see fn. 1(xxx), *supra;* see also *Braniff* and *Northland Point* District Court opinions, *supra,* fn. 1(xx) and 1(x).

**26.** See fn. 23, *supra.*

1, 1979. None of the Transition provisions contained in Title IV—Transition of the Bankruptcy Reform Act of 1978 contain *any* statutory grant of jurisdiction to the court of bankruptcy or the District Court. Section 404 of the Reform Act provides that the courts of bankruptcy, as defined and created under § 1(10) of the Bankruptcy Act of 1898, "*shall continue through March 31, 1984,* to be the courts of bankruptcy for the purposes of this Act and the amendments made by this Act."[27] [Emphasis supplied]. But the § 2(a) courts of bankruptcy had no jurisdiction except as granted in § 2(a), particularly by § 2(a)(7). The continuation of the § 2(a) courts of bankruptcy, without more, carried with it no jurisdiction. Section 404 is not a jurisdictional grant, despite the argument of the Administrative Office memorandum of July 22, 1982, that it continues the jurisdiction of the old Act, and despite the holdings of some courts [28] that the mere continuation of the courts of bankruptcy by § 404 automatically carries with it the grant of 28 U.S.C. § 1471(a) and (b) jurisdiction to the District Courts.

Prior to § 404, § 401(a) Title IV—Transition of the Reform Act had repealed the 1898 Bankruptcy Act in its entirety. Therefore, a court had to be created by Congress to operate under Title 11 (which became applicable on October 1, 1979) from October 1, 1979 to the date the new court and *new Bankruptcy Judges were to be appointed.* There had to be a corps of judges immediately available to preside over the new Title 11 Courts. The Presidential appointments could not begin immediately. The number of judicial positions required to serve the new court could not be accurately anticipated. Section 404 thus continued the court of bankruptcy, and its incumbent Bankruptcy Judges, accompanied by some considerable changes in its status, jurisdiction, and management, to make the Transition court in effect a simulated, *pro forma* copy of the 1984 court.

Section 405(a) provides that "all cases commenced under Title 11 ... during the transition period shall be referred to the United States bankruptcy judges," (i.e., that is a change over prior statute); that the "*United States bankruptcy judges may exercise* in such cases *the jurisdiction* granted under Section 241; and *all proceedings* in such cases *shall be before the United States bankruptcy judges,* except ...". This jurisdiction "*shall apply* to the courts of bankruptcy continued by Section 404(a) of this Act *the same as such amendment shall apply* to the United States Bankruptcy Court established under Section 201 of this Act."[29] [Emphasis supplied]. Thus, the Transition statute makes clear that, during Transition, the courts of bankruptcy, through the existing, incumbent Bankruptcy Judges, rather than the District Judges, are charged to exercise a jurisdictional grant under § 241(a) of the Bankruptcy Reform Act. The Transition provision does not continue any jurisdictional grant under the prior Bankruptcy Act, which was repealed by § 401 of the Bankruptcy Reform Act.[30] Thus, § 405 is not a jurisdictional grant to the court of bankruptcy; it merely adopts or incorporates for the existing, *incumbent Bankruptcy Judges* sitting on the continuing courts of bankruptcy the jurisdictional grant of § 241(a). The jurisdiction is granted to the Bankruptcy Judges, not the court of bankruptcy.

The cases and proceedings by statute "*shall be referred*" to the Bankruptcy Judges and *all* proceedings "shall be before" Bankruptcy Judges. The statute allows no exception during Transition except as mentioned in § 405(a)(1)(A), (B), (C), discussed later herein. Thus, § 405(a)(1) supercedes Bankruptcy Rule 102 which, under the Bankruptcy Act, automatically referred cases and proceedings as filed to Bankruptcy Judges and allowed for limited withdrawal of the automatic reference by a

---

27. 1978 Reform Act, Public Law 95–598, November 6, 1978, title IV Transition, Section 404.

28. See fn. 1(aa–kk).

29. Title IV—Transition, Sec. 405(b).

30. *Id.* and § 401(a).

District Judge. Rule 102 is inconsistent with the 1978 Act in respect to any District Judge's alleged power to withdraw a case or proceeding from a Bankruptcy Judge.

The language of §§ 404 and 405 should be enough to show that the District Court has no jurisdiction over bankruptcy matters or the court of bankruptcy during the Transition as well as thereafter. A review of the House and Senate Reports explaining the Transition period vividly reinforces this conclusion.

3. *Analysis Of Senate And House Reports On Title IV—Transition*

(a.) *No District Court Authority Over Transition Court*

A review of the Senate and House Report dealing with Title IV—Transition provisions shows that the Administrative Office memoranda and recent District Court decisions [31] are clearly incorrect in concluding that "Sections 404 and 405 of the Act expressly vest bankruptcy powers in the district courts as 'courts of bankruptcy' until April 1, 1984." The 1977 House Report, *supra,* at § 404, p. 459, U.S.Code Cong. & Admin.News 1978, p. 6415, clearly shows that "the purpose of Section 404 is to continue the present bankruptcy court system during the transition period, *with changes that are necessary to make the transition system enough like the proposed new court system* so that the measurement process of case-load and judicial time requirements will be accurate." [Emphasis supplied]. The statements of congressional leaders, accompanying the compromised agreed bill, stated at 124 Cong.Rec.H. 11089, September 28, 1978: "In summary, the amendment retains *a strong independent bankruptcy court* to handle the large number of bankruptcies filed every year." [Emphasis supplied]. Effective October 1, 1979, the continued court system is changed to "a separate department of the district court." [Emphasis supplied]. House Report, *supra,* § 404, p. 459, see also pp. 287–289, U.S.Code Cong. & Admin.News 1978, pp. 6243–6246, 6415. See Appendix A(I), *infra.* "It will be

necessary to have that ... [i.e., the new court system and jurisdiction] system in place [i.e., during Transition] in order to evaluate the need for judges under the new court system." [Emphasis supplied]. *Id.* § 404, p. 459, U.S.Code Cong. & Admin. News 1978, p. 6414.

Section 404(b) "protects existing Bankruptcy Judges during the transition period." "[T]he terms of all bankruptcy judges sitting on the date of enactment of the legislation are extended to the end of the transition period, and gives the current referees the statutory title of 'United States Bankruptcy Judge.'" *Id.* § 404(b), pp. 459–60, U.S.Code Cong. & Admin.News 1978, p. 6415. "[I]t is important to have experienced judges ... [i.e., Bankruptcy Judges] ... on the bench during the early phases ... [i.e., Transition] ... of the implementation of this new law." *Id.* § 404(b), pp. 287–89, 460, U.S.Code Cong. & Admin.News 1978, pp. 6243–6246, 6415, Appendix A(I), *infra.* During Transition, § 404 "gives the bankruptcy judges the same staff and control over staff as the new court will have after the effective date of the Act, April 1, 1984." *Id.,* § 404(b), pp. 287–88, 460, U.S. Code Cong. & Admin.News 1978, pp. 6243–6245, 6415. The process of controlling and removing Bankruptcy Judges during Transition is taken from the District Court and placed in the Court of Appeals and a merit screening committee. *Id.* Thus, Bankruptcy Judges are protected from possible removal by District Judges during the Transition period which is a significant change from the prior "court of bankruptcy" system where the District Judges appointed Bankruptcy Judges for six-year terms. *Id.,* § 404 pp. 459–60. The continuation of the court of bankruptcy and the Bankruptcy Judges during Transition was intended to provide an existing structure and vehicle to operate and exercise the new substantive law and Title 11 jurisdiction. *Id.,* pp. 287–89, 459–60.

"[T]hese provisions [i.e., for the separate department and protection and independence of Bankruptcy Judges from the Dis-

---

**31.** See fn. 1; and fns. 23 and 24.

trict Court] will aid in the administration of the bankruptcy courts, and provide a better estimate of the need for judges after the transition period. In order to implement this provision, it is expected that the Judicial Conference will make the appropriate budget requests beginning with fiscal 1979, and the appropriations and budgeting process will take the costs of the administrative staff and other facilities into account." *Id., § 404(d)*, pp. 460, 287–88, U.S.Code Cong. & Admin.News 1978, pp. 6243–6245, 6415. Thus, the *"separate department"* court of bankruptcy is under the "direction" of the "incumbent transition bankruptcy judges," with separate staffs, library, assistants and budget. Senate Report, *supra,* pp. 15–18, 20, 168. Since the enactment of the 1978 Act, i.e., beginning October 1, 1979, the Bankruptcy Judges' staffs and court, clerk, office, and library facilities have had their own *separate* budget and fiscal accountability independent from the District Court; the court has been under the "direction" ... of the "incumbent transition bankruptcy judges," and Bankruptcy Judges have been on various Judicial Conference and Administrative Office committees. *Id.*

The District Court for this district since October 1, 1979, has recognized the separation of the Transition court of bankruptcy and Bankruptcy Judges from the authority of the District Court. The Clerk's Office and employees of each division, maintained and supervised by the District Court for the District Court and the "court of bankruptcy" in this district prior to October 1, 1979, served both the filing and processing of cases and proceedings for the court of bankruptcy. Effective October 1, 1979, the division offices and employees maintained by the District Court were terminated by the District Court insofar as filing of bankruptcy cases and proceedings, acceptance of mail, and acceptance of telephone calls for the Bankruptcy Court and Bankruptcy Judges. Telephones of Bankruptcy Judges located in the division offices of the district Court Clerk's Office were removed by direction of the District Court. Courtrooms in divisions in part-time use were prohibited by direction of the District Court from use

for meetings of creditors as required by 11 U.S.C. § 341. Effective October 1, 1979, the Administrative Office of United States Courts and the General Services Administration began the allocation of charges for space and facilities of the Bankruptcy Judges and court of bankruptcy to the new United States Bankruptcy Court in compliance with §§ 404, 405 and 406 of the Reform Act.

(b.) *No Bankruptcy Jurisdiction in District Court after October 1, 1979: Jurisdiction Vested to Bankruptcy Judges*

█ Section 405 provides the jurisdiction and procedure during Transition for this new, separated, and independent department and changed court of bankruptcy. "The thrust of Section 405 is to provide the transition period bankruptcy courts with the *same jurisdiction and powers* as the proposed new United States bankruptcy court system ....". [Emphasis supplied]. House Report, *supra,* § 405, pp. 460, 287–89, U.S.Code Cong. & Admin.News 1978, pp. 6243–6246, 6416.

The Senate Report at Title IV—Transition, p. 166, U.S.Code Cong. & Admin.News 1978, p. 5952 continues:

[C]onfers on each referee in bankruptcy serving on the date of the enactment of this Act, the title of bankruptcy judge and *vests in him all of the rights and powers vested in a bankruptcy judge appointed under Section 201 of the Act.* Therefore, the broadened *jurisdiction* conferred by ... this Act *is exercisable by incumbent bankruptcy judges* serving on and after the date of the enactment of this Act ... [Emphasis supplied].

It should be noted that the Transition court is not called the "court of bankruptcy," but is referred to as "transition period bankruptcy courts" and "incumbent transition bankruptcy judges" to demonstrate the changed and separate character of the continued court of bankruptcy and the new independent power of the incumbent Transition Bankruptcy Judges.

As *Northern Pipeline* found at 102 S.Ct. 2878–80 and at n. 3, 2862, the Senate Report

at pp. 166–68 and p. 18 makes clear that the District Judges during Transition have no "exercisable" jurisdiction. "The ultimate repository of the Act's broad jurisdictional grant is the bankruptcy courts." *Id.,* n. 3. The "broadened jurisdiction which is allowed to be exercised by the Bankruptcy Judges during Transition is 'all' ... 'the totality' ... of the jurisdiction over ... everything ..." described in § 216 of the Senate Bill. See pp. 153–54, and at pp. 18 and 20 of the Senate Report, *supra.* At p. 18, the Senate Report states:

> [W]hile conferring expanded jurisdiction in bankruptcy cases and related civil actions and proceedings directly upon the district courts, ... [sections 164 and 28 U.S.C. 1334] ... delegate the *exclusive exercise* of *that jurisdiction* at the trial level *to bankruptcy judges* .... Thus, all cases under title 11 and all civil actions and proceedings arising under or related to cases under title 11 are to be before the bankruptcy judge. [Emphasis supplied]. Senate Report, *supra,* p. 18, U.S.Code Cong. & Admin.News 1978, p. 5804.

At p. 153, in describing the "statutory scheme" of the jurisdictional grant of § 216 which § 404 provides is "exercisable by incumbent bankruptcy judges" during Transition, the Senate Report states:

> [A] *statutory scheme* has been adopted whereby *the totality of this jurisdiction,* ... *shall be exercised by the bankruptcy* court, which is created as an adjunct of each U.S. district court. ... the adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction *in order that they may handle everything that arises* in a bankruptcy case. [Emphasis supplied]. Senate Report, *supra,* p. 153, U.S.Code Cong. & Admin. News 1978, p. 5939.

> The *jurisdiction to be exercised* by the bankruptcy courts *is of all proceedings* arising under Title 11 or arising under or related in the case under Title 11. [Emphasis supplied]. p. 153, U.S.Code Cong. & Admin.News 1978, p. 5939.

> It is the intent of these provisions that the *bankruptcy court will receive and the bankruptcy judge will handle* cases and proceedings under Title 11 and that *all actions filed* under Section 1334(b) except those arising in connection with municipal adjustment and railroad reorganization cases *will be automatically referred to the bankruptcy judge.* It is contemplated that Rules of Bankruptcy Procedure will be adopted to carry out this intent *in order that the bankruptcy judge shall exercise the full range of jurisdiction* in bankruptcy cases and proceedings.... Otherwise, *the district judge will function only* as an *appellate judge* in bankruptcy matters, .... [Emphasis supplied]. *Id.* p. 154, U.S.Code Cong. & Admin.News 1978, p. 5940.

"The procedure in the transition court will also be the same as the procedure established ... for the new court system." House Report, *supra,* p. 460, U.S.Code Cong. & Admin.News 1978, p. 6416. Again, note the reference to "the transition court" rather than the "court of bankruptcy."

"Appeals will be governed by the same standards as well." House Report, *supra,* p. 460, U.S.Code Cong. & Admin.News 1978, p. 6416. "Appeals from judgments and orders of a bankruptcy judge will go initially to the U.S. district court ..." Senate Report, *supra,* p. 18, U.S.Code Cong. & Admin.News 1978, p. 5804. Thus, appeals procedure during the Transition period of the orders of Bankruptcy Judges are the same as the appeals procedure after April 1, 1984. Appeals to the District Courts are pursuant to the new 28 U.S.C. § 1334 and existing Bankruptcy Rules (Part VIII). § 405(c) and (d). Surely, Congress did not intend District Courts to have appellate jurisdiction of orders of Transition Bankruptcy Judges who possess the "totality of jurisdiction" over "everything," and at the same time provide the District Courts with a trial court Title 11 jurisdiction. Senate Report, *supra,* pp. 167–68.

Subsection (a)(1) of § 405, however, "places certain limits on the powers of the United States bankruptcy judges during the transition period. These limits are some of

the same limits that are placed on current bankruptcy judges by the Bankruptcy Act and Rules, and are felt to be the minimum constitutionally required in light of the non-tenured status of the bankruptcy judges." House Report, *supra*, § 405, pp. 460–61, U.S.Code Cong. & Admin.News 1978, p. 6416. These limits are over three subjects specified in § 405(a)(1)(A), (B), (C):

 (1) hearing certain criminal contempts;

 (2) enjoining another court;

 (3) entertaining appeals from Bankruptcy Judges.

These limits of § 405(a)(1)(A), (B), (C) on the power of Bankruptcy Judges during the Transition period again show that the powers granted during Transition to the Bankruptcy Judges, are the same as the powers given Bankruptcy Judges after April 1, 1984.

The limited powers retained by the District Judges are specified in § 405(a)(1) and again in 28 U.S.C. § 1481. The power, authority, and bankruptcy jurisdiction of District Judges over the court of bankruptcy and Bankruptcy Judges is as limited during Transition as after April 1, 1984; i.e., effectively *nothing*.

■ In contrast to the undocumented conclusion that there is no change in District Court jurisdiction and power until 1984, and that Title 11 jurisdiction goes with the § 404 continuation of the court of bankruptcy,[32] the above legislative history of § 405(a) makes clear that, except for these specified, retained judicial powers, the District Judges do not have any retained trial jurisdiction or judicial bankruptcy powers during the Transition period. If the "court of bankruptcy" were to be continued as the District Court, unchanged under the direction and authority of the District Judges during the Transition period as some District Courts have concluded,[33] the procedure "in the transition court" would not be the same as established for the new court system after April 1, 1984; appeals of orders of Bankruptcy Judges under the

three possibilities to the District Court, Bankruptcy Appellate Panels, and Court of Appeals, would not be governed by the same standards as those applicable after April 1, 1984; and there would be no need specifically to provide for reservation of contempt and injunctive powers to the District Judges. In all respects, the Act intended to distinguish, alter and change the Transition court from the authority and control of the District Court and District Judges over the prior Act's court of bankruptcy.

The changed court of bankruptcy, the changed status and jurisdiction of Bankruptcy Judges during Transition are for a specific congressional purpose: to conduct studies to see how the 1984 court and jurisdiction will work. Sections 406 and 407 provide for studies and surveys to determine the number of Bankruptcy Judges which should be established for the new court effective April 1, 1984.

In order that the transition period run smoothly, and that it be run in a manner that will be most conducive to an accurate study of the need for new bankruptcy judges, section 406 makes provision for participation of bankruptcy judges in the administrative bodies of the judiciary. House Report, *supra*, § 406, p. 461. See also pp. 287–89, U.S.Code Cong. & Admin. News 1978, pp. 6243–6246, 6416. See Appendix A(I) *infra*.

Title IV—Transition of the Senate Report, *supra*, p. 20, similarly provides:

 In order to accomplish a smooth transition between the old bankruptcy law and procedures and the new law, the committee felt it necessary to have special provisions for a transition period.... This is intended *to ensure the availability of a cadre of experienced bankruptcy judges for service on the bankruptcy bench ... during the transition period....* It is in the public interest that bankruptcy judges in office on the date of enactment be continued in service, ... the acquired

---

**32.** See fn. 1, *supra*, *In re Color Craft Press* [1(xxx)], and *Q 1 Corp.* [1(gg)].

**33.** See fn. 1, *supra*.

experience of the incumbent bankruptcy judges is a public resource which cannot be replaced until such time as their successors have seen equivalent service on the bankruptcy bench. Thus, the terms of bankruptcy judges serving at the date of enactment are extended . . . through the transition period. *"Bankruptcy judges serving . . ." during the transition period . . . are conferred with the powers of the judge appointed under Section 201 . . . which include "the powers conferred upon the bankruptcy courts by this Act.* Senate Report, *supra,* [Emphasis supplied]. p. 20, U.S.Code Cong. & Admin. News 1978, p. 5806.

The Senate Report provides in Section 405 that the purpose of the Transition study to be conducted by the Administrative Office is to:

(1) . . . determine the number of bankruptcy judges needed to implement the provisions of this act and (2) to report the results of the study to the Congress, etc. . . . the *transition period* prescribed . . . *is necessary* in view of the time required *to acquire meaningful empirical data under the vastly enlarged jurisdiction and altered structure* of the new bankruptcy court. p. 167.

*The broadened jurisdiction and powers of the new bankruptcy courts pertain only to cases commenced after October 1, 1979.* The transition study report by the . . . A.O. . . . The committee feels a 3-year transition period should be sufficient to enable the Director to conduct a meaningful survey on which to base his report to the Congress. [Emphasis supplied]. p. 167, U.S.Code Cong. & Admin. News 1978, p. 5953.

The Senate Report recognized that:

[I]mplementation of the approved changes may be infeasible within the allotted time, . . . Hence the bankruptcy judges serving upon enactment of the Reform Act should . . .

. . . continue to serve until their successors are appointed and qualified . . . [§ 402(d) ] . . . *permits the bankruptcy courts to continue to function under the direction of incumbent transition bank-*

*ruptcy judges* until the numbers and locations of bankruptcy court judgeships can be established under this section. [Emphasis supplied]. p. 168, U.S.Code Cong. & Admin.News 1978, p. 5954.

The "broadened jurisdiction and powers of the new bankruptcy courts" and the "vastly enlarged jurisdiction and altered structure of the new bankruptcy courts" . . . pertaining . . . "only to cases commenced after October 1, 1979" . . . refer to the "courts of bankruptcy" as changed and functioning during the Transition period under the "direction of incumbent transition bankruptcy judges." *Id.* pp. 167–168, U.S.Code Cong. & Admin.News 1978, p. 5954. The Transition study is to evaluate the function and operation of that changed court exclusively under the "direction of incumbent transition bankruptcy judges." Therefore, if the "transition court" is to be under the "direction of the incumbent transition bankruptcy judges," the court of bankruptcy cannot be held to be unchanged and under the authority and supervision of the District Judges. The House and Senate Reports make clear that the District Judges during Transition simply do not have any more exercisable Title 11 jurisdiction and/or judicial authority over the Transition court than District Judges have after April 1, 1984 over the "adjunct" Bankruptcy Court. The purpose of the Transition court was to make the Transition court as much as possible "like the proposed new court system" after March 30, 1984. House Report, *supra,* § 404, pp. 287–89, 459, U.S.Code Cong. & Admin.News 1978, pp. 6243–6246, 6415. The "adjunct" United States Bankruptcy Court under 28 U.S.C. § 151(a) (effective April 1, 1984) and the "separate department" Transition Bankruptcy Court under § 404(a) are intended to be virtually the same. In each situation, the District Court has no bankruptcy trial authority. This conclusion was reached by the Supreme Court when it held that the § 1471(a) and (b) jurisdictional grant to the District Court and the reference to "adjunct" for the District Court was a "facade." *Northern Pipeline,* J. Brennan, at n. 39, p. 2879. Hence, the District Courts have no bankruptcy trial jurisdiction through the "court of bankrupt-

cy" during Transition and no judicial powers over the substantially changed and separate "transition period bankruptcy courts" or the independent "incumbent transition bankruptcy judges."

The Senate and House Reports void any argument that §§ 404 and 405 supply Title 11 jurisdiction to the District Court, and demonstrate the purpose of Title IV—Transition to be to supply instantaneously at October 1, 1979, without judicial interruption, the existing necessary Bankruptcy Judges to exercise new Title 11 jurisdiction after repeal of the 1898 Act. These Bankruptcy Judges were to continue to function as trial judges under the new Title 11 and to exclusively exercise the new Title 11 jurisdiction allowed under § 241(a) of the 1978 Act.[34]

4. *Northern Pipeline Decision: Transition*

■ It should be remembered that the decision of the Supreme Court in *Northern Pipeline* involves the exercise of jurisdiction by Bankruptcy Judges as it exists during the Transition period. It is the exercise of this jurisdiction during the Transition period, the same jurisdiction as that provided to Bankruptcy Judges after April 1, 1984, that the Supreme Court found unconstitutional.[35] If the Supreme Court had had any suspicion whatsoever that the Reform Act had made no changes in pre-Reform Act bankruptcy jurisdiction and in District Court supervisory powers over the Bankruptcy Judges, which would be effective for the Transition period beginning October 1, 1979, as the July 22, 1982, memorandum of the Administrative Office and some Article III judges are concluding,[36] the Supreme Court could merely have held that the 28 U.S.C. § 1471 grant of jurisdiction to the Bankruptcy Judges could not be exercised until 1984, and that the District Courts could continue to operate the old Act's courts of bankruptcy with Title 11 jurisdiction added. The contention of no change in court structure at October 1, 1979, leads to the specious conclusion that the Supreme Court was engaging in an unnecessary decisional exercise or at least an oversight, when it decided *Northern Pipeline* and issued stays of its judgment for six months in order to avoid what it feared might become chaos in the bankruptcy process.[37] Instead, the *Northern Pipeline* decision reveals that the Court fully understood that the congressional statutes vested "the totality" of § 1471 jurisdiction in the Bankruptcy Judges during and after the Transition period [*Northern Pipeline, supra,* pp. 2878–80; Senate Report, *supra,* pp. 18, 20, and § 216, pp. 153–54, § 405, pp. 166–68], and effected an "altered structure" of the prior court of bankruptcy under the "direction of the incumbent bankruptcy judges" during Transition while the "empirical study" was being conducted. Senate Report, *supra,* p. 168, U.S.Code Cong. & Admin.News 1978, p. 5954. The Court decision reveals that the plurality and concurring opinions fully understood that Congress had clearly intended to effectively remove the Article III District Judges from any authority or supervision over the Transition court and the Bankruptcy Judges after October 1, 1979. *Id.* pp. 18, 20, 166–68. *Northern Pipeline, supra,* pp. 2880, 2882. The Court, by issuance of the extraordinary stay, not once, but twice, for a six-month period, surely understood that there would be no jurisdiction in any trial court in the absence of the stay.[38]

5. *Conclusion On §§ 404–405*

The legal position of the Administrative Office and the Judicial Conference has changed since July and September 1982. At all times, however, the Judicial Conference has apparently followed the philosophy of the dissent of the Chief Justice and its

---

**34.** *Northern Pipeline,* 102 S.Ct. at 2879–80, and fn. 40.

**35.** *Id.*

**36.** *Id.*

**37.** cf. *Northern Pipeline* at 2880, and fn. 40.

**38.** *In re Color Craft,* fn. 1(xxx), *supra* (Bkrtcy. Utah 1983); *In re M.J.S. Apparel, Inc.,* 22 B.R. 736–37 (Bkrtcy.S.D.N.Y.1982); *In re Trac Records, Inc.,* sub nom, *In re Motion to Dismiss: Constitutionality of the Jurisdiction of the Bankruptcy Court,* 23 B.R. 334 at 337–38, 9 B.C.D. 101 (Bkrtcy.N.D.Ga.1982).

prior (1977–78) and current (S. 443 and S. 1013) court structure legislation advocated to the Congress, and has been at odds with the decision in *Northern Pipeline.*

The House Judiciary Committee mailed the Administrative Office July 22 memorandum to several bankruptcy professors and other scholars throughout the United States and requested legal opinions. Unanimously, these experts rejected and criticized the General Counsel memorandum and its legal conclusion that the District Court derived any power from the court of bankruptcy continued by §§ 404 and 405. House Rep. No. 97–807, 97th Cong. 2d Sess., to accompany H.R. 6978, at p. 20 et seq., September 15, 1982, pp. 32–40.

The decisions of Article III judges validating the Rule and asserting that there is no change in bankruptcy jurisdiction of the District Courts until April 1, 1984, have not used §§ 404 and 405 as authority for alleged District Court bankruptcy jurisdiction. The legislative history of these sections has never been discussed in such opinions; rather, it seems to have been avoided.

Instead, the Article III courts which have ruled on the legality of the Rule have found that 28 U.S.C. § 1471(a) and (b) survive *Northern Pipeline* and confer trial court subject matter jurisdiction on District Courts, as per the Rule. This court will now deal with that latter-day argument to demonstrate that § 1471(a) and (b) cannot confer exercisable bankruptcy jurisdiction on the District Courts under analysis of *Northern Pipeline,* legislative history of the Reform Act, or applicable federal jurisdictional principles.

## VII. THE SYMBOLIC GRANT OF 28 U.S.C. § 1471(a) AND (b) IS NOT A LEGITIMATE STATUTORY BASIS FOR THE DISTRICT COURT TO ASSERT BANKRUPTCY JURISDICTION UNDER THE LOCAL RULE AFTER NORTHERN PIPELINE

### A. *The Northern Pipeline Holding*

The Administrative Office memoranda dated September 27 and December 3, 1982 [39] were the genesis for the notion that, despite *Northern Pipeline,* 28 U.S.C. § 1471(a) and (b) survive and allow bankruptcy jurisdiction to revert to the District Courts during the Transition period. The prior memorandum of the General Counsel of the Administrative Office dated July 22, 1982, did not rely on or cite § 1471(a) and (b) as surviving *Northern Pipeline.* The General Counsel's memorandum stated that the "courts of bankruptcy would effectively revert to their jurisdictional status under § 2(a) of the old Bankruptcy Act." The argument that § 1471(a) and (b) survive seems to have been an afterthought which surfaced for the first time in the memoranda of September 27 and December 3, 1982, which accompanied the proposed Rule. However belated its origin, the argument has been embraced by some recent Article III courts [40] that 28 U.S.C. § 1471(a) and (b), enacted by the stricken § 241(a), is extracted from § 241(a) and resurrected after *Northern Pipeline* to confer exercisable trial jurisdiction in the District Court over *all* bankruptcy matters.

In *Northern Pipeline,* a Chapter 11 debtor in possession brought an action against a third party pursuant to 28 U.S.C. § 1471(b) and (c), seeking damages for breach of contract, breach of warranty, misrepresentation, coercion and duress. The defendant objected to the jurisdiction of the Bankruptcy Court and moved to dismiss the adversary proceeding. The motion to dismiss was denied by the Bankruptcy Judge and the third party appealed. The District Court reversed and dismissed the adversary proceeding. The Supreme Court, in a plurality opinion of four justices, to which two justices concurred, affirmed the District Court.

The Court ruled that § 241(a) of the Reform Act was unconstitutional because under 28 U.S.C. § 1471(a) and (b) it conferred jurisdiction of all matters under Title 11 on the District Courts and then under subsec-

---

**39.** See fn. 24.

**40.** See fn. 1.

tion (c) it automatically "vested"[41] ... "all" of that jurisdiction on the Bankruptcy Court and directed the Bankruptcy Court to "exercise *all of the jurisdiction* conferred" (at p. 2879) by this section on the district courts." [Emphasis supplied]. [*Northern Pipeline, supra,* p. 2879; See 28 U.S.C. § 1471(b) and (c).] The Court held that, by conferring bankruptcy jurisdiction on the District Court and then automatically *vesting*[42] *all* of this jurisdiction on non-Article III Bankruptcy Judges, § 241(a) violated Article III of the Constitution, which requires that the "judicial power of the United States" shall be exercised only by judges appointed for life whose compensations cannot be reduced while in office. A majority of six Justices viewed § 1471(a), (b), and (c), as well as all of § 241(a), as a "single statutory grant," a unitary grant of jurisdiction to a "single forum," the Bankruptcy Court. A majority of six Justices recognized that the effect of the decision was to invalidate the entire package of the broad jurisdictional grant of § 1471 to both the Bankruptcy and the District Courts.

The plurality stated that, having determined that "at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon," it was necessary to invalidate § 241(a)'s entire broad grant of jurisdiction. 102 S.Ct. at 2879–80, n. 40. The plurality observed in response to the Chief Justice's dissent that the Reform Act of 1978 had entailed "*a comprehensive restructuring of the bankruptcy laws.*" 102 S.Ct. at 2879–80, n. 40. Under the restructured Act, jurisdiction over all bankruptcy cases and matters related to such cases was vested exclusively in the Bankruptcy Court "*pursuant to a single statutory grant of jurisdiction.*"[43] Refer-

ring to § 241(a), (not to § 1471), the Court observed that that single statutory grant disclosed that one of the "*express purposes*" of the 1978 Act was "to ensure" that *all* claims related to bankruptcy matters—both those traditionally within the bankruptcy court's jurisdiction and those state-law claims that had been added by the 1978 Act—be adjudicated "*in a single forum.*"[44]

The plurality concluded that the "statutory scheme"[45] intending "single grant of jurisdiction,"[46] as evidenced by (a), (b), and (c) of § 1471 to "vest"[47] *all* the § 1471 exercisable jurisdiction in "a single forum,"[48] i.e., the Bankruptcy Court, shows that the jurisdictional grant to the District Court was a "facade." *Northern Pipeline, supra,* 102 S.Ct. at 2879, and comment preceding n. 39.

Some Article III court decisions supporting the Rule are quoting the plurality, to wit: "Having concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional," and are then concluding that the Court has declared only § 1471(c) unconstitutional and that the Court's decision does not affect the § 1471(a) and (b) grant of bankruptcy jurisdiction to the District Court. A closer reading of the plurality opinion at pp. 2878–80, from n. 35–40, reveals that nowhere does the plurality cite § 1471(c). Several of the grants of power to Bankruptcy Judges, i.e., 28 U.S.C. §§ 1480, 2201, 2256, and 11 U.S.C. § 105(a), are cited but only to demonstrate the content and extent of the § 241(a) exclusive grant *to Bankruptcy Judges* which goes beyond the grant of § 1471(c). The plurality construes all of the grants of § 241(a) together as a unitary package of jurisdictional authority granted to Bankruptcy Judges.

**41.** See 102 S.Ct. at 2878, 79–80 re use of "vest" and "vested" several times by Justice Brennan. See fn. 4, *supra.*

**42.** See fn. 4, *supra,* for definition of "vest."

**43.** 102 S.Ct. at 2879–80, n. 40.

**44.** 102 S.Ct. at 2880.

**45.** *Northern Pipeline, supra,* fn. 40. See also: Senate Report, Appendix B(III), *supra,* 18, 20, 166–167.

**46.** 102 S.Ct. 2879–80, and n. 40.

**47.** *Northern Pipeline, supra,* pp. 2878, 79–80; See fn. 4, *supra.*

**48.** *Id.*

The reference to unconstitutionality in the opinion is made only to § 241(a). Nowhere does the Court isolate § 1471(a) and (b) from § 241(a) or declare § 1471(a) and (b) as a constitutional grant to the District Courts. In fact, the "facade" conclusions at p. 2879 shows that the Court considers the § 1471(a) and (b) grant to the District Court as a masquerade, disguise, false pretense and myth.

The plurality opinion analyzed the statute, its objective and the scheme of the "comprehensive restructuring." It found the "single statutory grant" of § 241(a) to "a single forum" comprised a unitary package of jurisdictional provisions, i.e., §§ 1471–1482, given to the Bankruptcy Court, which package was not subject to division by the Supreme Court into individual parts in the face of such a strong congressional purpose. *Id.*, n. 40.

■ Given that clear legislative intent, the plurality concluded that it could not sever the unconstitutional portion of the grant from the remaining portions of § 241(a) and that the entire § 241(a) package was unconstitutional. The plurality found it was impossible for the Court to determine from the language what jurisdictional framework Congress might have designed in lieu of the "*single statutory grant of jurisdiction.*" 102 S.Ct. at 2880, n. 40. Rather, the plurality found that "*it is for Congress to determine the proper manner of restructuring* the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose." *Id.* The Court declined to encroach upon the legislative function of the Congress. The plurality thus struck down *all* of § 241(a)'s grant of jurisdiction, by stating that all of § 241(a) as a unitary, nonseverable package was unconstitutional, because all of the grant was "vested" in and could not be extracted from the Bankruptcy Judges. *Id.*, pp. 2878–80, n. 40.

Justice Rehnquist's concurring opinion, joined in by Justice O'Connor, stated: "the bankruptcy court is not an adjunct ... of either the District Court or the Court of Appeals ... for jurisdictional purposes because ... [a]ll matters of fact and law in whatever domains of the law to which the parties' dispute may lead are to be resolved by the Bankruptcy Court in the first instance, with only traditional appellate review apparently contemplated by Article III courts." *Id.* at p. 2882. Thus, the concurring opinion viewed the District Court as having only appellate review jurisdiction, not § 1471 trial jurisdiction. See also Senate Report, *supra,* § 405(c)(1), (2), pp. 18, 154; House Report, *supra,* § 405, p. 460, U.S.Code Cong. & Admin.News 1978, p. 6416: "Appeals will be handled by the same standards as well" (i.e., during Transition). *Id.*, pp. 2878–89. The concurring opinion would have preferred that the decision be confined to the "traditional actions at common law" as before the Court. However, the concurring opinion agreed with the plurality that "this grant of authority" "[... referring to the jurisdiction of the Bankruptcy Court over 'related proceedings' such as 'damages for breach of contract, misrepresentation' in "*Northern Pipeline's* lawsuit" ...] was such a unitary package of jurisdiction, i.e., "this ... [referring to § 241(a)—not to § 1471] ... " *is not readily severable from the remaining grant of authority* to Bankruptcy Courts under § 241(a)," citing with approval n. 40 of the plurality. *Id.* at 2882. Because of non-severability of the subparagraphs of § 241(a), Justices Rehnquist and O'Connor joined the plurality in invalidating *all* of § 241(a) which, of course, includes *all* of § 1471.

As did the plurality, the concurring opinion *referred to the § 241(a) package* as not being severable—rather than referring to the § 1471 package. See *Id.* 2882, 2881, 2880, and 2879, regarding references to § 241(a). The concurring opinion agreed with the stay and retroactive discussion of the plurality.

Although dissenting, Justice White (joined by Chief Justice Burger and Justice Powell) also recognized that the effect of *Northern Pipeline* was to eliminate the entire jurisdictional grant of § 1471. Justice White's dissent objected to the majority's

*"inexplicably heavy hand in broadening its ruling beyond the state-law facts in the case."* *Id.* at °2888. [Emphasis supplied]. Although he believed that the Court should have attempted to sever the unconstitutional grant from the rest of § 1471, Justice White acknowledged that that was not the effect of the decision. Thus, eight Justices recognized that the decision went further than the facts and invalidated *all* of § 241(a) or, at least, *all* of § 1471. *Id.*

Chief Justice Burger took a more narrow view of the scope of the plurality holding in *Northern Pipeline.* He attempted to define the decision to conform to the suggestion made in the concurring opinion of Justice Rehnquist that the Court should limit its holding to a ruling on the constitutionality of the Bankruptcy Court's exercise of State law and traditional common-law actions. But Justice Rehnquist recognized the plurality did not so limit the decision. No other Justice so construed the plurality holding as did the Chief Justice. In fact, the plurality opinion responded in n. 40 that the Chief Justice's suggestion in his dissent misconstrued the broader limits of the Court's holding. Yet, the Chief Justice recognized, at the very least, that the Bankruptcy Court jurisdiction over state law claims would require a new statutory enactment by Congress: "It will *not* be *necessary for Congress,* in order to meet the requirements of the Court's holding, *to undertake a radical restructuring* of the present system of bankruptcy adjudication ...." [Emphasis supplied]. *Id.* at 2882. Although the Chief Justice recognized that congressional action was required to remedy the effect of the *Northern Pipeline* decision, he felt this could be accomplished by Congress in a simple division of jurisdiction by routing *some* jurisdiction to the District Courts. (Of course, this is what the Judicial Conference Emergency Rule does as well as legislation currently proposed by the Judi-

cial Conference and drafted by the Administrative Office).[49]

Thus, in *Northern Pipeline,* all nine Justices seem to have concluded that congressional action would be necessary before the Bankruptcy Courts could exercise jurisdiction over State law bankruptcy claims. All the Justices seem to have agreed to the stay of the judgment to permit Congress time to act. All the Justices seem to have agreed that a constitutional solution to the decision must be devised by the Congress—not the judiciary. This fact makes it all the more startling to realize that the Judicial Conference has misapplied the plurality holding, as the plurality pointedly stated that the Chief Justice had misread the plurality, and has *undertaken* this "radical judicial restructuring of the present [statutory] system of bankruptcy adjudication" via a Rule of judicial legislation.[50]

B. *The Judicial Conference Rule v. Northern Pipeline*

The Judicial Conference and its Rule failed to recognize that, despite the dissent of the Chief Justice [51] which suggested that it would be a simple solution to the *Northern Pipeline* decision for Congress to transfer jurisdiction of state law issues to the District Court, a majority of at least six Justices of the Court demurred to such notion as a viable constitutional or probable congressional solution. The plurality in n. 40, in clear response to the Chief Justice, reasoned that transfer of some jurisdiction to the District Court was not a reasonable or likely congressional action because Congress clearly intended that the Bankruptcy Judges shall "exercise all" of the § 241(a) bankruptcy power during Transition and thereafter.[52] The plurality reasoned that § 1471(a), (b), (c), (d) and (e) and other sections of § 241(a) were integral parts of a *nonseverable* package comprising a comprehensive "statutory scheme" [53] carefully de-

**49.** S.443, S.1013, 98th Cong. 1st Sess., 129 Cong.Rec. 5364, —— Cong.Rec. ——.

**50.** *Northern Pipeline, supra,* Chief Justice dissent, p. 2882.

**51.** *Id.*

**52.** *Id.* p. 2879.

**53.** *Id.* fn. 40; Senate Report, *supra* at p. 18, 20, 166–167.

signed by Congress to eliminate the distinction between plenary and summary jurisdiction and to "ensure adjudication of all" bankruptcy matters "in a single forum"[54]—the Bankruptcy Court.

In contrast to the rationale of some Article III Courts, the plurality and concurring opinions of *Northern Pipeline* did not view subsection (c) of § 1471 as a "single" statutory grant which the Supreme Court found unconstitutional. The plurality viewed it as only a sub-part of § 1471. Moreover, § 1471 was found to be only one part of twelve sections in the "comprehensive . . . single statutory grant of jurisdiction" and venue to a "single forum" as contained in § 241(a). *Northern Pipeline* n. 40.

The term "vest" or "vesting" of *all* jurisdiction in the Bankruptcy Court was used by the Court at pp. 2878, 2879, 2880, and in n. 40, and the term "ultimate repository" was used at n. 3, p. 2862. To *vest*[55] jurisdiction in the Bankruptcy Court is to leave no exercisable jurisdiction in the District Court pursuant to § 1471(a) and (b). After *vesting*[56] of jurisdiction in the Bankruptcy Court under subsection (c), the purported conference of jurisdiction by (a) and (b) to the District Court is voided or rendered ineffective. It remains vested in the Bankruptcy Court by statutory grant, albeit declared unconstitutional. The effect of *Northern Pipeline* does not transfer that investiture to the District Court. The effect of *Northern Pipeline* is merely that the Bankruptcy Judges are constitutionally prohibited from continuing to exercise the jurisdiction which was invested in them by statute. The Court saw that the § 1471(a) and (b) conference on the District Court was purely a transitory window dressing. Possession of jurisdiction without the right to exercise it, i.e., a "facade," [*Id.*, p. 2879] is an ineffective and phony grant of jurisdiction. A "facade" is a transparency,

sham, or fiction.[56A] The transient conveyance of jurisdiction to the District Court was merely a passive, symbolic grant. The conveyance to the District Court in (a) and (b) is without substance; it is a nothing grant.

The clear implication of the dismissal of the *Northern Pipeline* adversary proceeding and the recognition by six justices of the Court that § 1471(c) was a cohesive part of a non-severable package of bankruptcy jurisdiction and judicial structure fashioned by Congress, whereby the District Court was granted no jurisdiction to exercise, and all exercisable jurisdiction was *vested* in the Bankruptcy Judges, compels the conclusion that 28 U.S.C. § 1471(a) and (b) likewise were stricken with § 1471(c).

The Justice Department, has refrained from supporting the validity of the alleged statutory authority of the bankruptcy jurisdiction of the District Courts through § 1471(a) and (b) as asserted in the Local Rule. Jonathan Rose, Assistant Attorney General in charge of the Office of Policy, testified about the proposed Model Rule on November 10, 1982 before a Senate subcommittee. He stated the Department of Justice was "uncertain whether the proposed Model Rule would withstand a judicial challenge." He explained that: "The proposed Rule is based on the assumption that the Court's decision has left untouched the broad jurisdiction conferred on the district courts by § 241(a), in 28 U.S.C. § 1471(a) and (b). In fact, it is unclear whether the court's holding may be limited in that fashion. See 102 S.Ct. at 2880 at n. 40 (plurality opinion); *Id.* at 2882 (Rehnquist, J. concurring)." The Department of Justice thus concluded that the "permissible scope of district court jurisdiction over bankruptcy matters would, of course, be subject to substantial litigation before it would be firmly

---

**54.** *Northern Pipeline,* n. 40.

**55.** See fn. 4.

**56.** *Id.* and *Northern Pipeline, supra,* pp. 2878, 79–80 and fn. 40.

**56A.** World Book Encyclopedia, Dictionary, (1963) Vol. 1, p. 703 defines "facade:" "A front, outward part, face of a building not including the rear . . . especially when thought of as concealing something, as an error, weakness or scheme."

settled." 128 Cong.Rec.H. 8875, Dec. 8, 1982.

Such doubts alone, under applicable jurisdictional principles discussed previously at IV, *supra,* are sufficient to require the federal courts to decline jurisdiction.

C. *The September 28, 1978 Bill—Jurisdiction In Court of Appeals*

1. *The Grant Of § 1471(a) and (b) To The Court Of Appeals In The September 28, 1978 Version Of The Legislation Shows That Congress Intended No Vesting Of Jurisdiction In An Article III Court*

Reproduced in Appendix A, (V), *infra,* is a photocopy of the Reform Act as actually passed by the Senate and House on October 6, 1978. The printed version is the version agreed upon by the House and Senate leadership of the Judiciary Committees as agreed by the House—Senate conferees and as passed the House September 28, 1978. The handwritten inserts above the printed version show the subsequent changes made which became the version as passed both the Senate and House on October 6, 1978.

On February 1, 1978, the House passed H.R. 8200 containing an Article III Bankruptcy Court. On September 28, 1978, the Senate passed S. 2266 containing a non-Article III adjunct Bankruptcy Court. But even before passage of the Senate bill, which was passed as an amendment to H.R. 8200, the leadership of the Senate and House Judiciary Committees were in serious negotiations in an attempt to effect a compromise on the controversial court system.[57] Only the Judicial Conference of the United States, the Chief Justice, and some other Article III judges, joined by the Attorney General, opposed the H.R. 8200 Article III court structure bill. The substantive law, Title 11 and the independent status of the Bankruptcy Court were not serious issues in either body of Congress as both bills contained a separate, functionally independent Bankruptcy Court with Bankruptcy Judges appointed by the President. The Attorney General in testimony in December 1977 agreed that the bifurcated jurisdiction whereby two levels of judges adjudicated bankruptcy issues, as existed under the Bankruptcy Act of 1898, should be eliminated; he agreed that one grant of jurisdiction to the Bankruptcy Judges was necessary.[58] Just prior to September 28, 1978, a compromise court system agreement was made.[59] The House and Senate leadership agreed that on September 28, 1978, both houses would pass the bill containing the compromise court structure.

The compromise bill in Section 201(a) provided through 28 U.S.C. § 151 that the Bankruptcy Court would be an "adjunct" of the *"Court of Appeals,"* rather than "adjunct" to the District Court as had been suggested in S. 2266. See Appendix A (V), *infra.* Section 241(a) conferred bankruptcy jurisdiction on the *"Court of Appeals"* through subsections (a) and (b) of 28 U.S.C. § 1471, and subsection § 1471(c) provided that all such jurisdiction would be exercised by the Bankruptcy Court. See Appendix A(V), *infra.* This version of H.R. 8200 passed the House on September 28 and was in the Senate in the latter hours of Friday, September 28; but due to the lateness of the day was not brought to a Senate vote. Press reports relate that over the weekend the Chief Justice made public statements and called several members of the Senate to register opposition to the separate and independent status of the Bankruptcy Court.[60] Senator Thurmond agreed to put a "hold" on the bill which prevented Senate consideration.[61] Further discussions of House and Senate leadership ensued during the week

---

**57.** *1979 Annual Survey of Bankruptcy Law,* (Callaghan and Co.) Professor Frank Kennedy, pp. 14–15; Kenneth Klee, pp. 30–31; Fiedler and Dixon, pp. 48–51; Wallop, pp. 58–59; Clarkson, pp. 68–70.

**58.** *Id.,* Clarkson pp. 167–68; Wallop, p. 59; House Hearings, Serial No. 36, December 12, 13, 14, 1977, p. 218.

**59.** See fn. 57.

**60.** *Id.,* Wallop, pp. 58–59; Clarkson, p. 73; Klee, pp. 30–32; Kennedy, pp. 14–15.

**61.** *Id.*

of October 1 in which the Attorney General again participated. A further compromise was effected which merely amended 28 U.S.C. § 151(a) and 28 U.S.C. § 1471(a) and (b) to strike "*Court of Appeals,*" and insert "*District Court.*" On October 6, this bill as amended passed both the Senate and the House.[62] The Act was almost identical to the September 28 version except for substitution of the jurisdictional grant to the "District Court" in lieu of the "Court of Appeals." Immediately after October 6, 1978, the Chief Justice again interceded to the President in opposition to the Bankruptcy Reform Act because of the separation and independence of the Bankruptcy Court.[63] The Chief Justice and the Administrative Office of the United States Courts submitted to the White House estimates which indicated that creation of a separate and independent Bankruptcy Court would be costly and waste millions of dollars. These estimates were countered by the Congressional Budget Office.[64] However, the Attorney General refused to join in the post-enactment opposition because he felt committed to the compromise which he had assisted in effecting.[65] On November 6, 1978, the President signed the bill into law. (Public Law 95–598).

The "statutory scheme" of the Senate-House compromise vested the "totality of this jurisdiction" in the Bankruptcy Judge to "exclusive[ly] exercise." S. Report, *supra,* pp. 153–54, 167–68. *Northern Pipeline, supra,* pp. 2879–80. The result of the constitutional compromise was to flow non-exercisable subject matter jurisdiction by statute through an Article III court. The first compromise on September 28, 1978 flowed the jurisdiction to the Courts of Appeal, the final version of October 5, 1978 flowed it through the District Courts. This compromise was based on the notion, apparently urged by the Senate conferees, that a little sprinkling of temporary contact of Article III bankruptcy jurisdiction with an

Article III court might sanctify the constitutionality of the actual vesting of bankruptcy jurisdiction upon the non-Article III Bankruptcy Judges. It granted bankruptcy jurisdiction to the District Court under 28 U.S.C. § 1471(a) and (b)—in effect borrowing the District Judges' Article III attributes for the new 14-year term Bankruptcy Judges—but then funneled that entire jurisdiction out of the District Court to the newly created Bankruptcy Court via § 1471(c). As the Supreme Court recognized in *Northern Pipeline,* this was a literal, but transitory, flow of jurisdiction to the District Court. In actuality, all of that jurisdiction was vested in the Bankruptcy Court. As the Supreme Court stated, the "ultimate repository" was in the Bankruptcy Court. 102 S.Ct. plurality, 2862, n. 3. Any doubts with respect to congressional intent are removed by the explanation of the floor leaders of the 1978 legislation who stated, just before the compromise agreement was reached, that the jurisdiction first granted to the District Courts by 28 U.S.C. § 1471(a) and (b) was "completely delegated to the bankruptcy court which was granted pervasive jurisdiction." 124 Cong. Rec. S17, 424 (daily ed., October 7, 1978); 124 Cong.Rec. H11, 107–11, 108 (daily ed., September 28, 1978). The Court rejected the constitutionality of this statutory device by declaring § 241(a) unconstitutional.

This legislative history of the § 1471 grant to the Court of Appeals illustrates that, if the September 28, 1978 version had passed the Senate, the Reform Act jurisdiction of § 1471(a) and (b) would be lodged in the Courts of Appeals. The reference to "adjunct" in 28 U.S.C. § 151(a) would be to the Court of Appeals. Yet, §§ 404 and 405, which provided for continuation of the structure of the prior courts of bankruptcy and the existing Bankruptcy Judges during the Transition period, remained the same Transition court in both the September 28 and the October 6 versions. The legislative

---

**62.** *Id.,* Kennedy, p. 15; Klee, p. 32; Fiedler and Dixon, pp. 51–52.

**63.** See fn. 57; see Appendix A(V); 124 Cong. Rec. 517, 424; H 11, 107–11, 108.

**64.** See fns. 60 and 62.

**65.** *Id.*

history to §§ 404 and 405 is consistent in the Senate and House Reports. See Appendix A(I), (II) and (V), *infra.* If the September 28, 1978 version had been enacted, obviously the *Northern Pipeline* decision would have been the same, to wit: (1) the "statutory scheme" (Senate Report, *supra,* § 216, pp. 153–54) of § 241(a), including 28 U.S.C. § 1471, vested the exclusive exercise of the "totality of this" bankruptcy jurisdiction in the Bankruptcy Court after April 1, 1984 (*Id.* p. 167); (2) §§ 404 and 405 vested that jurisdiction in the Bankruptcy Judges to that same extent during the Transition period; (3) the grant of jurisdiction of § 1471(a) and (b) to the Court of Appeals was a "facade;" and (4) the *vesting* of such § 241(a) jurisdiction in the Bankruptcy Judges during Transition and thereafter was unconstitutional.

It seems unlikely that if the September 28 of the bill version had been enacted, the Judicial Conference Rule would now contain language that § 1471 is severable and the Court of Appeals could exercise § 1471(a) and (b) jurisdiction. Yet, if the September 28 version had been enacted, in order to be consistent with present Administrative Office arguments, the Judicial Conference memoranda and Rule would state that subsections 1471(a) and (b) are now alive and well and are properly severable from the grant of § 1471(c), and that the Courts of Appeals have trial jurisdiction over Title 11 proceedings which they can exercise or refer to a judicially created adjudicatory system composed of Bankruptcy Judges. Such jurisdiction placed in the Courts of Appeals in the September 28 version would now require the use of FRCP 53 and 83, Bankruptcy Rule 927 (new B.R. 9029) and 11 U.S.C. § 105 as authority for the reference structure of the present Model Rule. It is doubtful that many would argue that the Courts of Appeals can use the Bankruptcy Rules and FRCP as authority to refer their subject matter jurisdiction.

If jurisdiction had been granted to the Court of Appeals, how would that affect the argument that the District Court has Transition bankruptcy jurisdiction under old 28 U.S.C. § 1334? Consistent with the arguments presently offered for the Local Rule, under the September version of the bill the Judicial Conference would also have to argue inconsistently pursuant to its present position that the District Court under §§ 404 and 405 and 28 U.S.C. §§ 1331 and 1334 possesses a Title 11 trial jurisdiction competing or overlapping with the Court of Appeals § 1471(a) and (b) jurisdiction which the District Court can exercise or refer to Bankruptcy Judges as per the Rule.

This recollection of September 28—October 6, 1978 legislative history of the Reform Act merely demonstrates again the clear intention of Congress to use an Article III court, i.e., either the Court of Appeals or the District Court, as purely a transitory conduit and not as *the* "ultimate repository" (102 S.Ct. 2862, n. 3) of Title 11 jurisdiction. Congress always intended that 28 U.S.C. § 1471 jurisdiction should be vested in and exclusively exercised by the Bankruptcy Judges, including during Transition. Senate Report, p. 20; § 402, p. 166; § 216(a), pp. 153, 154; § 405, pp. 167, 168; 124 Cong.Rec. H11, 107–11, 108, September 28, 1978. This legislative history reveals that the Congress never intended for any of the Title 11 jurisdiction to adhere to or be retained by the Article III court through which it flowed, and Congress was not too concerned with which Article III court it would use as the conduit. Senate Report, pp. 18, 20, 153, 154, 166–68. Surely, no one would now be arguing that the Congress intended the Courts of Appeals to retain trial jurisdiction over Title 11 cases and proceedings if the September 28, 1978, version of H.R. 8200 had been enacted. The grant of jurisdiction to the Courts of Appeals and the District Courts, identically contained in 28 U.S.C. § 1471(a) and (b) in both the September 28 and the October 6 versions, was equally a "facade" in which the Bankruptcy Court was the real grantee and "ultimate repository" of the exercisable jurisdiction. *Northern Pipeline, supra,* n. 3, p. 2862. The District Court has no exercisable jurisdiction under 28 U.S.C. § 1471.

**D.** *If § 1471(a) And (b) Is Deemed A Grant Of Jurisdiction To The District Court During Transition, It Equally Is A Grant To The District Court After April 1, 1984*

The Administrative Office memoranda and those Article III courts which have construed § 1471(a) and (b) as a viable, reversionary grant of bankruptcy jurisdiction to the District Court as a result of *Northern Pipeline,* seem to have assumed that the grant is temporary, that is, during Transition only. The courts which have used old 28 U.S.C. § 1334 as an alternative basis of District Court bankruptcy jurisdiction during Transition (after *Northern Pipeline*) point out that that section is not officially repealed until March 30, 1984. Then, the decisions vaguely mix § 1471(a) and (b) and § 1334 as alternative supporting authority for District Court bankruptcy jurisdiction until April 1, 1984. The Administrative Office memoranda and the recent Article III court decisions allege the District Court jurisdiction to be "retained" only during the Transition period. The Utah District Court referred to the "adjunct" [i.e., 28 U.S.C. § 151(a)] status of the Bankruptcy Court "during transition" as one of the reasons for District Court jurisdiction under the Emergency Rule. See n. 1, *supra.* The Utah court referred to the fact that the permanent court is not effective until April 1, 1984, and concluded that the Reform Act had effected "no change" in District Court status over bankruptcy jurisdiction. Neither the Administrative Office nor any Article III court decision has argued that the District Court will have any bankruptcy jurisdiction beyond the Transition period. For instance, the recent Sixth Circuit decision referred to the Rule as the "interim rule." *White Motor Corp. v. Citibank,* 704 F.2d 254, 10 B.C.D. 392 (6th Cir.1983). This reasoning reflects a misconception of the statutory scheme of 28 U.S.C. § 151(a) and § 1471, etc. and ignores the Transition statute, Title IV, of the Reform Act and its legislative history. Senate Report, *supra,* pp. 18, 20, 167–68. 28 U.S.C. § 151(a), using the term "adjunct,"

and 28 U.S.C. § 1471(a), (b) and (c) conferring jurisdiction are permanently in the statutory scheme which becomes effective April 1, 1984. That is, the "adjunct" reference is inapplicable during Transition and the § 1471(a) and (b) grants, made applicable to Transition Bankruptcy Judges by § 405(a)(1), are not applicable merely during Transition. Therefore, *if* the District Court has exercisable bankruptcy jurisdiction during Transition period, as many Article III courts are finding, it also has Bankruptcy Court jurisdiction after April 1, 1984 when the Presidentially appointed United States Bankruptcy Judges are scheduled to commence the official United States Bankruptcy Court. Section 405(a)(1) gives Transition Bankruptcy Judges "the same" jurisdiction as given to Bankruptcy Courts effective April 1, 1984.

This point is further demonstration that Congress intended no exercisable jurisdiction in the District Court, either after April 1, 1984 or after October 1, 1979. *Northern Pipeline* declares the jurisdiction vested on April 1, 1984 to the new court to be the same as vested in Bankruptcy Judges during Transition and, in either event, unconstitutional. 102 S.Ct. 2878–80.

The recognition of this fact makes it all the more implausible to accuse Congress of the intention to supply "jurisdictional insurance" in the inclusion of § 1471(a) and (b) and the failure to repeal 28 U.S.C. § 1334 until April 1, 1984, as asserted by some Article III courts.[66]

**E.** *No Other Statutory Grant Of Jurisdiction To The District Court Exists*

Arguments have been made that even if *Northern Pipeline* deprives the District Court of jurisdiction because of the nonseverability of the subsections of § 1471 and unconstitutionality of § 241(a), other statutory grants of jurisdiction to the District Court over bankruptcy cases and proceedings are found in (a) 28 U.S.C. § 1331 and (b) 28 U.S.C. § 1334. The Administrative Office memorandum of July 22, 1982, did not cite, nor has the Administrative Office

---

**66.** *See Color Craft,* fn. 1(xxx), *supra.*

in subsequent memoranda regarding the Judicial Conference Local Rule, cited 28 U.S.C. §§ 1331 or 1334 as a basis for District Court bankruptcy jurisdiction. But the opinions by District Judge DeMascio,[67] District Judge Mahon,[68] the Utah District Court,[69] and three Circuit Courts,[70] and others, have cited 28 U.S.C. §§ 1331 and/or 1334 as legal authority for District Court jurisdiction over bankruptcy cases and proceedings. The following discussion will show that these alleged sources provide no statutory grant of bankruptcy jurisdiction to the District Courts.

1. *The District Courts Do Not Have Bankruptcy Jurisdiction Under 28 U.S.C. § 1331 As Part Of Their Federal Question Jurisdiction*

 Section 1331 of the Judicial Code grants the District Court jurisdiction over all civil actions "arising under . . . laws . . . of the United States." The federal question jurisdiction granted in § 1331 has, except for changes in the requirement for the amount in controversy, been defined the same way since 1875.[71] Proponents of District Court bankruptcy jurisdiction under 28 U.S.C. § 1331 misread the federal question statute. It was not intended to include a grant of jurisdiction over bankruptcy matters. Subject matter jurisdiction of the federal courts exists only by express statutory grant. The grant in 28 U.S.C. § 1331 of jurisdiction over "all civil actions arising under the . . . laws . . . of the United States" does not, without more, confer jurisdiction over bankruptcy matters. The scope of this section is not defined by its literal wording, but rather by whether Congress *intended* to include within those words jurisdiction over bankruptcy. *See Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864 (1900).

The legislative history of bankruptcy jurisdiction and federal question jurisdiction demonstrates that Congress has never intended to include the former within the latter. Prior to the original statute conferring federal question jurisdiction which was enacted in 1875 [See 18 Stat. 470 (1875)], Congress had enacted statutory grants of jurisdiction over bankruptcy matters independent of any statute conferring federal question jurisdiction. *See* 5 Stat. 446 (1841) and 14 Stat. 517 (1867). After 1875, federal bankruptcy acts have set forth grants of jurisdiction that were separate from and not dependent upon federal question jurisdiction. *See* 30 Stat. 545 (1898) and 92 Stat. 2668 (1978). The uniform practice of Congress has been to state the grant of jurisdiction over bankruptcy matters in a separate statutory enactment from its grant of federal question jurisdiction. In fact, every bankruptcy law enacted by Congress has included an express jurisdictional grant over bankruptcy matters, as did § 2a(7) of the 1898 Act and § 241(a) of the 1978 Act. (See 5 Stat 446). This indicates that Congress has never intended that the grant of federal question jurisdiction under § 1331 include bankruptcy matters.

In *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1959), the Supreme Court found no federal question jurisdiction under § 1331 over a claim arising under federal maritime law. The Court observed that the words "arising under the Constitution and laws of the United States" would appear to "fit [the plaintiff's claim] like a glove," but rejected "treating such statutes as a wooden set of self-sufficient words." *Id.* at 378–79, 79 S.Ct. at 483–84. The Court found that the proper guide to interpreting § 1331 was the intent of Congress as revealed in the background of maritime jurisdiction compared to § 1331. The Court noted that Congress had consistently made separate provisions for conferring jurisdiction over maritime matters before the federal

---

**67.** See fn. 1(x), *supra.*

**68.** See fn. 1(xx), *supra.*

**69.** See fn. 1(xxx), *supra.*

**70.** See fn. 1(xx), *supra, White Motor Corp. v. Citibank,* 704 F.2d 254, 10 B.C.D. 392 (CA6, 1983); *In re Braniff Airways, Inc.,* 705 F.2d 450 (CA5, 1983).

**71.** See 94 Stat. 2369; 72 Stat. 415; 18 Stat. 470.

question statute was enacted in 1875 and had continued to use separate jurisdictional statutes even after the federal question statute was enacted. Therefore, there was no basis to "suggest, even remotely" that Congress intended "the inclusion of maritime claims within the scope" of the statute creating federal question jurisdiction. 358 U.S. at 368, 79 S.Ct. at 478. If Congress had intended federal question jurisdiction under § 1331 to encompass jurisdiction over bankruptcy matters, it would not have enacted express grants of bankruptcy jurisdiction in each bankruptcy law it has enacted. It would not have adopted the "adjunct" § 1471 grant without a reference to § 1331. No decision found by the undersigned (and there were countless disputes over the summary-plenary issue under § 2(a)(7) of the prior Bankruptcy Act) ever used 28 U.S.C. § 1331 to assert bankruptcy jurisdiction on the District Court by reference of jurisdiction.

▇▇ Moreover, even if federal question jurisdiction was construed to encompass jurisdiction in the District Court over bankruptcy matters, it could not bring within its grant the full jurisdiction granted under § 1471 of the Bankruptcy Reform Act. The jurisdictional grant under 28 U.S.C. § 1471(b) includes jurisdiction over civil proceedings "arising in or related to cases under Title 11." "Proceedings" related to cases under Title 11 are not "cases" arising under the laws of the United States. A case arises under the law that creates the cause of action. *American Well Works Co. v. Lane & Bowler Co.,* 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). Proceedings relating to cases under Title 11 involve actions which arise under state law, not federal law. *Chamberlain Livestock Auction, Inc. v. Aberdeen Production Credit Assn.,* 22 B.R. 750, 9 B.C.D. 674 (D.C.N.D.S.D.1982).

▇▇ The pendent jurisdiction of the District Court to consider nonfederal claims is no basis for asserting District Court jurisdiction over proceedings related to cases under Title 11 because pendent jurisdiction exists only where there is a federal claim of sufficient substance. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In addition, there is "the well established maxim of statutory construction that a specific grant of power such as that contained in § 1471, prevails over the broader language of § 1331." [72] While in effect before *Northern Pipeline,* the specific provisions for bankruptcy jurisdiction in 28 U.S.C. § 1471 (and its predecessors) were never intended to have § 1331 as a backup. Indeed, the elaborate bankruptcy court system established by both the 1898 and 1978 Acts shows that Congress has never intended that bankruptcy cases be brought directly in the District Courts under § 1331.[73] Nor can federal question jurisdiction over bankruptcy matters be implied from the mere fact that the Bankruptcy Reform Act of 1978 is a federal statute creating rights that are enforceable in the federal courts. An "independent jurisdictional basis" must exist.[74] Thus, any argument for bankruptcy jurisdiction under § 1331 conflicts with principles of federal jurisdiction which require that the presumption against jurisdiction be overcome and restrict jurisdiction in District Courts to that clearly granted by specific congressional statute.[75]

2. *Section 1334 Of The Judicial Code Does Not Grant Jurisdiction Over Title 11 Bankruptcy Matters To The District Court*

Recently, some creative Article III courts have cited and embraced former § 1334, repealed by § 238 of the Reform Act, effective April 1, 1984, as a basis for the Rule's assertion of bankruptcy jurisdiction in the District Courts.[76] But these courts have

**72.** *In re Conley,* fn. 1(a) at 21, *supra.*

**73.** Accord: *Gillman v. Preston Family Investment Co. (In re Richardson),* 27 B.R. 407 at 424 (Bkrtcy.Utah 1983).

**74.** *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 970 (9th Cir.1981), cert. den. 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

**75.** See ¶ V Federal Jurisdictional Principles, *infra,* pp. 15–21.

**76.** See fn. 1, *supra.*

not offered any discussion or analysis of former § 1334, other than to observe that the Reform Act failed to specifically repeal it until April 1, 1984. From this, some courts are concluding that the District Courts possess Title 11 jurisdiction through former § 1334 from the date of the expiration of the stay of the *Northern Pipeline* decision to April 1, 1984.

 The House Report of September 15, 1982, and a memorandum of Professor Frank Kennedy, University of Michigan Law School,[77] brought up and repudiated the possibility of former § 1334 as a possible source of Title 11 jurisdiction in the District Court. Professor Kennedy concluded that former § 1334 had been repealed by implication and replaced by new § 1334 effective October 1, 1979. Chairman Rodino of the House Judiciary Committee likewise concluded that the "shell of the former bankruptcy courts were explicitly continued," but that "the former jurisdiction was clearly not continued." H.R.Rep. No. 807, 97th Cong. 2d Sess. (Sept. 15, 1982), n. 5 at 30. Section 238 of the Bankruptcy Reform Act replaced the former § 1334 with an entirely new § 1334 entitled "Bankruptcy Appeals." Former § 1334 trial bankruptcy jurisdiction of District Courts does not survive after October 1, 1979 on a concurrent basis with the new § 1334 "Bankruptcy Appeals." One or the other must yield; they cannot coexist. Any jurisdictional grant of § 1334 under new Title 11 must be provided by the new § 1334, and not the former § 1334. As reenacted in 1948, § 1334 provided: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy." This section has since become a legislative orphan. Although clearly inconsistent with the "comprehensive" juris-

dictional provisions of the Reform Act, i.e., § 241(a), it was not expressly repealed in the 1978 Act. Effective April 1, 1984, it is amended and re-entitled "Bankruptcy Appeals" to provide for bankruptcy appeals to the District Courts, Bankruptcy Appellate Panels and Courts of Appeal. There is no legislative history that accounts for the delayed effect of the new § 1334.[78] However, it does not matter because, under § 405(c)(2), beginning October 1, 1979, the new provisions of § 1334 were made applicable to the Transition Bankruptcy Courts, District Courts, and Courts of Appeal:

> The jurisdiction of the district court, courts of appeals, and panels of bankruptcy judges *to hear appeals* shall be the same as the jurisdiction of such courts and panels granted under the amendments made by Section ... 238 ... of this Act *to hear appeals* from the judgments, orders, and decrees of the bankruptcy courts established under § 201 of this Act. [Emphasis supplied]

This provision, as did the Bankruptcy Code, became effective October 1, 1979. See *Maiorino Branford Savings Bank,* 691 F.2d 89, n. 2 (2d Cir.1982); *In re Kutner,* 656 F.2d 1107, 1111, 12 (5th Cir.1981), *cert. denied* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); *Callister v. Ingersoll-Rand Financial Corp.,* 673 F.2d 305, 306 (10th Cir. 1982). For all practical purposes, the provisions of Title IV of the Reform Act, i.e., § 405(c)(2) make new § 1334 effective October 1, 1979.

Most likely, as Professor Kennedy advised the House Judiciary Committee,[79] the former § 1334 was implicitly repealed by the 1978 Act, effective October 1, 1979.[80] *Northern Pipeline* found that § 1471(c), and applicable legislative history, demonstrate congressional intent that the Bankruptcy

---

77. House Committee on the Judiciary, Bankruptcy Court Act of 1982, House Rep. No. 807, 97th Cong. 2d Sess., September 15, 1982, BO ff.

78. Section 238 of the 1978 Act enacts an entirely new § 1334 entitled "Bankruptcy Appeals" which provides for the District Courts to exercise *appellate* jurisdiction over orders from Bankruptcy Courts. Although not technically effective until 1984, under § 402(b) of 1978

Act, the new § 1334 took operational effect on October 1, 1979 by virtue of the Transition provisions of Title IV of the 1978 Act. See § 405(c)(2) giving effect to new § 1334.

79. See fn. 77, *supra.*

80. *Id.*

Courts alone, to the exclusion of the District Courts, were to exercise all of the jurisdiction conferred transitorily on the District Courts by § 1471(a) and (b). This congressional intent, fully expressed in § 1471(c), § 405(a)(1) and (c)(2), and Senate Reports, *supra,* pp. 17–18, 20, 153–54, 167–68, and House Report, *supra,* 459–60, shows there was no intent through former 28 U.S.C. § 1334 to continue to confer bankruptcy trial jurisdiction on any court. In the face of § 1471 and § 405, to construe former § 1334 as "jurisdictional insurance"[81] specifically continued by Congress against the event of a future *Northern Pipeline* decision, is to present an irreconcilable statutory conflict which the legislative history clearly shows that Congress never intended.

Whereas § 1334 grants the District Court original and exclusive jurisdiction of "all matters and proceedings" in bankruptcy, 28 U.S.C. § 1471 covered "all cases under title 11," as well as "all civil proceedings arising under title 11 or arising in or related to cases under title 11." Thus, the grant of jurisdiction in § 1471 over proceedings is considerably broader than that of § 1334. It seems reasonable to assume that Congress would have amended § 1334 to include the broader language of § 1471 if § 1334 was intended to have any continuing viability after passage of the Bankruptcy Reform Act.

■ Section § 1334 has never been construed as applying to so-called "plenary" adversary proceedings involving state law claims. Instead, § 1334 was construed only to confer "summary jurisdiction" on the District Courts.[82] Summary jurisdiction is restricted to disputes involving the property in the actual or constructive possession of the debtor. Thus, whatever the continued limited effect of the former § 1334, it is not co-extensive in scope with the broad jurisdiction of § 1471(a) and (b). Unfortunately, no Article III court decision citing for-

mer § 1334 as authority for District Court bankruptcy jurisdiction has yet recognized the distinction between the limited jurisdiction of former § 1334 and the broader grant under § 1471(a) and (b) and the resulting effect on the exercise of jurisdiction under the Local Rule. If a District Court is found to derive bankruptcy jurisdiction under § 1471(a) and (b), it is one thing; if the District Court is found to derive bankruptcy jurisdiction from former § 1334, it is quite another lesser scope of jurisdiction.

■ Finally, if former 28 U.S.C. § 1334 is deemed to be effective at all after October 1, 1978, for *any* bankruptcy jurisdictional authority to the District Courts, it must be limited to two situations.

One, because all bankruptcy cases pending on October 1, 1979 continued to be governed by the prior Act for all purposes, in accordance with § 401 of the 1978 Act, former § 1334 merely enabled District Courts to play a continuing role in cases pending under the "old" Act. Former 28 U.S.C. § 1334 had conferred certain jurisdiction over bankruptcy matters on the District Courts which were, in fact, denominated the "courts of bankruptcy" under § 1(10) and § 2a of the prior Act of 1898. As discussed earlier, §§ 404 and 405 continued the courts of bankruptcy in a considerably altered form under the direction of incumbent Bankruptcy Judges rather than under the District Court. Congress did not intend to retain the District Courts as the "courts of bankruptcy" by virtue of the "old" or "new" 28 U.S.C. § 1334 or any other statute except possibly insofar as it was necessary to preserve jurisdiction over "old" bankruptcy cases *already pending* under the prior Act on October 1, 1979 when the 1978 Act became effective.

Second, former § 1334 may be construed to allow the District Judges to assist Bankruptcy Judges in Title 11 matters by exercising the contempt and injunctive power which § 405(a)(1)(A), (B), (C) specifically

---

81. See Utah District Court, *Color Craft, supra,* fn. 1(xxx).

82. *In re Conley,* 26 B.R. 885 at 895, 10 B.C.D. 10 (Bkrtcy.M.D.Tenn.1983); Wright, Miller and Cooper, *Federal Practice and Procedure:* Jurisdiction, Sect. 3570 (1975).

494

withheld from the Bankruptcy Judges. Section 405(a)(1) vested all other Reform Act jurisdiction and judicial power to the Transition "incumbent" Bankruptcy Judges.[83] Senate Report, *supra*, pp. 20, 167–68. *Northern Pipeline* refused to accord § 1471(a) and (b) any validity to confer any exercisable jurisdiction on the District Court. The Court saw no non-appellate Title 11 jurisdiction in the District Court except contempt and injunction as allowed in § 405(a)(1)(A), (B), (C). Former § 1334 would not be needed after April 1, 1984 to reserve such powers to the District Court because 28 U.S.C. § 1481 would be applicable. This limited construction of former § 1334 could account for the failure to specifically repeal former § 1334 until April 1, 1984. This limited construction will prevent a collision course with the new 28 U.S.C. § 1334 "Bankruptcy Appeals" and with § 241(a). This limited view of § 1334 is the only construction of former § 1334 jurisdiction in the District Courts after October 1, 1979 which does not conflict with § 1471(a), (b), (c) and (e) and new § 1334. Pursuant to the federal jurisdictional principals previously discussed, and pursuant to the plurality and concurring opinions in *Northern Pipeline,* this confusing federal jurisdictional statute may not be construed as a grant of bankruptcy trial jurisdiction broader than § 405(a)(1)(A), (B), (C) and (c)(2) prescribe.

If § 1334 is a statute conferring a broader bankruptcy jurisdiction to the District Court during Transition, after *Northern Pipeline,* after repeal of the Bankruptcy Act and after enactment of the Reform Act, then congressional enactment of 28 U.S.C. § 1471 vesting jurisdiction on the Bankruptcy Court and § 405(a)(1) of the Reform Act referring all cases to Bankruptcy Judges and requiring them to exclusively exercise that jurisdiction during the Transition period in order to make accurate workload and judicial time studies to determine the number of Bankruptcy Judges to be required on April 1984 was pointless. If

former § 1334 applies to let District Courts exercise *any* bankruptcy jurisdiction at all, the Transition studies cannot be accurate. Senate Report, *supra,* pp. 18, 20, 167–68; House Report, *supra,* p. 287–89, 459. A construction of former § 1334 should be found which is consistent with the myriad other provisions of the Reform Act, as discussed by *Northern Pipeline* 102 S.Ct. at pp. 2878, 2879, 2880, 2882 and n. 40, vesting all bankruptcy jurisdiction and judicial authority in Bankruptcy Judges effective October 1, 1979. Clearly, no general bankruptcy jurisdiction to the District Court was continued after October 1, 1979, through former § 1334.

In addition, there is the well established maxim of statutory construction that a specific, substantive grant of power such as that contained in § 1471, prevails over a prior inconsistent grant such as former § 1334. See n. 73, *supra.* The comprehensive package of § 241(a) jurisdiction in §§ 1471–1482 statutorily preempts any bankruptcy grant which may be perceived in § 1334; and forbids any argument that after September 30, 1978, §§ 1331 or 1334 have any bankruptcy jurisdictional relevance.

To contend that former § 1334 continues to be effective during Transition is to argue with the *Northern Pipeline* decision. At least six Justices in *Northern Pipeline* recognized that *all* of the § 241(a) jurisdiction was vested in and to be exercised exclusively by the Bankruptcy Judges, with no exercisable non-appellate jurisdiction being reserved for District Judges. Those six Justices agreed that no part of the § 241(a) grant could be severed from the Bankruptcy Judges and thus the entire grant as designed and enacted was unconstitutional. If the Local Rule reaches the Supreme Court, surely the plurality, and perhaps eight Justices, will be surprised that the Judicial Conference and numerous Article III judges have found several statutes, § 1471(a) and (b) and former § 1334 and

**83.** *See Color Craft Press Ltd. v. Nationwide Shopper Systems (In re Color Craft Press),* 27 B.R. 392 at 395 fn. 2, 10 B.C.D. 53 (Bkrtcy.Utah 1983). *Still v. First Bank (In re Jorges Carpet Mills, Inc.),* 27 B.R. 333 at 338, 10 B.C.D. 1 (Bkrtcy.E.D.Tenn.1983).

§ 404, and perhaps others, which every member of the *Northern Pipeline* Court and all parties and amicus curae to that litigation overlooked.

▮ An emergency obviously exists due to the absence of bankruptcy jurisdiction as the Supreme Court emergency stay recognized. But chaos in the bankruptcy process cannot supply the jurisdictional basis for District Court seizure of Title 11 jurisdiction, or the authority for delegation of proceedings and judicial powers.

## VIII. EVEN IF IT IS DEEMED THAT THE DISTRICT COURT HAS BANKRUPTCY JURISDICTION, THE DISTRICT COURT DOES NOT HAVE AUTHORITY TO REFER PROCEEDINGS AND DELEGATE JURISDICTION TO BANKRUPTCY JUDGES

### A. Outline of Arguments For the Rule

The Article III courts, finding jurisdiction after *Northern Pipeline* "retained" by the District Courts under the Local Rule, moved therefrom to the Rule based conclusion that the District Courts have inherent, statutory or rule-making authority to take over the Bankruptcy Court, to refer and delegate cases and proceedings to Bankruptcy Judges, and to specify District Court review of a unique adjudicatory procedure for judicial actions by Bankruptcy Judges. Existing statutes and Bankruptcy Rules pertaining to appeals from orders of Bankruptcy Judges are disregarded by the Rule. This quantum leap to referral of proceedings to Bankruptcy Judges and establishment of a special non-statutory adjudicatory system has been accepted without substantial analysis or discussion by the Article III judges who have, so far, dealt with the operative mechanisms of the Emergency Model Rule.

The Model Rule does not identify any authority permitting the District Court to adopt the Rule. The September 27 memorandum from the Administrative Office refers to legislation which was offered to Congress in September 1982 which suggests a bankruptcy jurisdiction grant to the District Court and allocation of jurisdiction to subordinates by referral much the same as this Model Rule. Thus, legislation proposed by the Judicial Conference since 1977, when the Article III Bankruptcy Court was first recommended by the House Judiciary Committee, has been consistent with this Emergency Model Rule. The position of the Judicial Conference, in conflict with Congress since 1977, has been to place bankruptcy jurisdiction in the District Court, resurrect the universally criticized and congressionally rejected referee system and recreate a bifurcated, two-step adjudicatory system. This Rule has essentially reincarnated judicially what Congress rejected in 1977–78. Nowhere does the Rule state that the District Court has bankruptcy jurisdiction. It does state the District Court has the power to refer matters to Bankruptcy Judges, and perhaps this presumes original jurisdiction. The District Courts have promulgated the Rule, not of their own initiative, but based upon the Resolution of the Judicial Conference, memoranda drafted by the Administrative Office of the United States Courts, and the order of the Circuit Councils. The Administrative Office memorandum of July 22, 1982, and memoranda dated September 27 and December 3, 1982, cite 11 U.S.C. § 105 and Bankruptcy Rule 927 as authority for the District Court to promulgate the Rule to govern "practice and procedure under the Act."[84] The directives of the Circuit Councils cite 28 U.S.C. § 332(d) as authority to require the District Courts to adopt the Rule, i.e., "pursuant to 11 U.S.C. § 105, and it is so ordered."[85]

• On November 10, 1982, the Justice Department stated to the Senate Subcommittee on Courts that there was substantial doubt as to the legality of the Judicial Conference "model" Rule: "We are uncertain whether the proposed rule would with-

---

**84.** *Norton Bankruptcy Law and Practice; Monograph: The Aftermath of Northern Pipeline: Bankruptcy Jurisdiction Under Local Court Rule,* Norton and Lieb (Callaghan and Co.), February 1983, Appendix 2 and 4, pp. 82, 84, 89–90.

**85.** *Id.,* p. 88.

stand a judicial challenge." As further stated by the Justice Department at that time, after it expressed doubt that the *Northern Pipeline* decision left untouched the jurisdiction that 28 U.S.C. § 1471(a) and (b) facially conferred on the District Courts:

Furthermore, there are *serious questions whether* the proposed *rule legitimately may assign to the bankruptcy courts* significant portions of the district courts' broad bankruptcy jurisdiction under the Act, since this is precisely what the Court refused to do in holding that the jurisdiction which the bankruptcy courts cannot be severed from the remainder of the jurisdiction conferred on the bankruptcy courts under the 1978 Act.

*We have no confidence that the proposed rule will be proven an effective interim remedy* to the bankruptcy court crisis, thereby enabling the Congress to take more time to determine how it wishes to resolve this matter. [Emphasis supplied].

▆▆ Nevertheless, some recent decisions of District Courts have continued to suggest additional alleged authority for the promulgation of the Rule to delegate bankruptcy powers to Bankruptcy Judges as aides, i.e., pseudo special masters, to the District Judges. A list of the alleged sources of authority for a District Court to promulgate such a rule which have been suggested are:

(1) Section 332(d) of the Judicial Code, 28 U.S.C. 332(d);

(2) Section 105 of the Bankruptcy Code, 11 U.S.C. § 105;

(3) Section 2071 of the Judicial Code, 28 U.S.C. § 2071;

(4) Section 2075 of the Judicial Code, 28 U.S.C. § 2075;

(5) Rule 53 of the Federal Rules of Civil Procedure;

(6) Rule 83 of the Federal Rules of Civil Procedure;

(7) Bankruptcy Rule 927;

(8) Other provisions;

(9) The Magistrates Act, 28 U.S.C. § 631, *et seq.;*

(10) The inherent power of the District Court;

As will be seen, none of these sources authorize the District Court to promulgate a Local Rule which organizes and establishes a non-statutory bankruptcy adjudicatory system for itself and establishes a separate statutory trial judge and court.

Moreover, other arguments which have been suggested in some Article III judges' opinions as authority for the Local Rule are without legal basis:

(11) The Local Rule improperly permits the Bankruptcy Judge to enter final orders in *Northern Pipeline* type issues;

(12) The Local Rule violates Article III even where Bankruptcy Judges exercise only so-called summary jurisdiction;

(13) Consent of parties cannot give legal jurisdiction to Bankruptcy Judge;

(14) *De novo* determination by the District Court of final orders of Bankruptcy Judges does not cure Article III defects.

B. Discussion of Arguments For the Rule

(1) *28 U.S.C. § 332 Is Not Authority For Promulgation Of The Rule*

▆▆ The only authorities for the Local Rule recited in the directive of the Judicial Council of the Eleventh Circuit are 28 U.S.C. § 332(d) and 11 U.S.C. § 105. However, the authority conferred by § 332(d) to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit," does not authorize the Council to establish the bankruptcy system included in the Local Rule. This is a procedural authority, not an authority to confer jurisdiction or to establish an adjudicatory structure, despite the comments by the District Judge in *Northland Point* to the contrary. See n. 1, *supra.*

▆▆ Section 332 does not permit the Judicial Council to confer subject matter jur-

isdiction upon any inferior federal court. *Cf. Chandler v. Judicial Council,* 398 U.S. 74, 86 n. 7, 90 S.Ct. 1648, 1654 n. 7, 26 L.Ed.2d 100 (1970); Kohn, *The Authority of the Circuit Judicial Councils: Separation of Powers of the Courts of Appeals,* 5 *Seton Hall L.Rev.* 815, 826, 832–33 (1974); Address of Honorable J.W. Oliver, 64 F.R.D. 201, 202–206.

■ As the United States Supreme Court definitively explained in *United States v. Sherwood,* 312 U.S. 584, 589–90, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941):

> An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934 . . ., authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts. [Citations omitted].

The Model Rule goes far beyond mere procedure. It subjugates and harnesses Bankruptcy Judges under District Judges in a sub-divided jurisdiction and adjudicatory system never conceived by a statute.

*(2) Section 105 of the Bankruptcy Code Does Not Provide A Basis For The Promulgation Of The Local Rule*

The Administrative Office memoranda and order of the Circuit Council cite 11 U.S.C. § 105 as the authority of the District Court for promulgation of the Rule and as authority to establish the broad, specific adjudicatory process using Bankruptcy Judges as aides to District Judges.

■ Section 105 of the Bankruptcy Code provides as follows:

> (a) The Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105.

Section 105 is a Title 11 U.S.C. provision. Title 11 was not affected by the *Northern Pipeline* decision. Title 11 remains as the statute to be administered by the Bankruptcy Courts and Bankruptcy Judges. Even if it is found that bankruptcy adjudicatory jurisdiction is in the District Courts, Section 105 does not grant authority to District Courts to promulgate local rules for the District Court or the Bankruptcy Court. Nor does it grant authority to *any* court to promulgate a local rule which delegates judicial decision-making and sets up a broad adjudicatory system in the manner provided in the Local Rule. Nor does it grant *any* authority to the District Court; the provision is a grant of authority in Title 11 cases to the new *Bankruptcy Court* effective October 1, 1979, to be exercised by Bankruptcy Judges, not District Judges. The provision gives to the Bankruptcy Court and Bankruptcy Judges the authority restated, as provided in the All Writs Statute. See 28 U.S.C. § 1651. The plurality opinion referred to this authority of the "bankruptcy judge . . . to issue all writs necessary in aid of the bankruptcy court's expanded jurisdiction." *Northern Pipeline, supra,* at n. 37. That authority is somewhat reiterated to the Bankruptcy Court in 28 U.S.C. § 1481. The District Court already possesses the authority of the All Writs Statute; thus § 105 power would be redundant. Surely no one would argue that the All Writs Statute gives the District Courts authority to set up a bankruptcy adjudicatory structure as per this Local rule. The legislative history explains the provision:

> [T]he limitation on the power of a bankruptcy judge [i.e. powers that under § 2(a)(15) of the prior Act are reserved to the district judge] is removed as inconsistent with the *separation of the two courts* and *the increased powers and jurisdiction* of the new bankruptcy court. House Report, 95–595, *supra,* pp. 316–17; Senate Report, 95–989, *supra,* p. 29, U.S. Code Cong. & Admin.News 1978 pp. 5815, 6273. [Emphasis supplied].

This quote recognizes the "separation of the two courts" and "increased . . . jurisdiction of the new bankruptcy court" both after April 1, 1984 and during Transition.

Title 11, § 105 is applicable to the Bankruptcy Court effective October 1, 1979. The only limitations on the judicial powers of Bankruptcy Judges during the Transition period are stated in § 405(a)(1)(A), (B), (C). The § 105 authority confers judicial power on Bankruptcy Judges to enter necessary and appropriate orders in individual cases and proceedings during Transition. It was not voided, removed, or affected in any way by *Northern Pipeline*. It may not be removed or modified by the District Court from the Bankruptcy Judges to whom it has been granted. It is not a power of the District Court and the Local Rule is illegal insofar as its adjudicatory structure and asserted authority over the Bankruptcy Court is founded on 11 U.S.C. § 105.

(3) *The Local Rule Violates § 2071 Of The Judicial Code And § 2071 Does Not Authorize Promulgation Of The Local Rule*

▮ Section 2071 of the Judicial Code provides that:

> The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules *shall be consistent with Acts of Congress* and rules of practice and procedure prescribed by the Supreme Court.[86] [Emphasis supplied].

The Local Rule violates § 2071 of the Judicial Code because it directly conflicts with the practice and procedure established by Congress in the Reform Act. In enacting the Reform Act, Congress abolished the referee system that had evolved under the Bankruptcy Act and created a new separate and independent Bankruptcy Court with independent Bankruptcy Judges to exercise plenary jurisdiction over all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11.[86A] In discussing the jurisdictional framework established by the Reform Act, the House Report states:

> The bankruptcy court continues to operate today despite an antiquated law that limits its effectiveness. The increas-

ing burden placed on the system demands that the system be made workable and efficient before the burden becomes intolerable. The time has come for the formal separation of the bankruptcy courts and judges from the district courts, where they have labored under serious limitations. *The rights of bankruptcy litigants entitle them to no less.* House Report 95–595, 9th Congress, 2d Session (1978) at 52, U.S.Code Congressional and Administrative News (1978) at 6013. [Emphasis supplied].

The Senate Report contained similar findings that the new court was to be functionally separate and independent. (Senate Report, *supra,* pp. 18, 20, 167–68). See Appendix A(II), Senate Report, *infra,* herein. See also 124 Cong.Rec.H. 11089, September 28, 1978, where Rep. Edwards, Chairman of House Judiciary Subcommittee stated:

> The amendment does not contain the Article III court proposal in the original House bill, but ..., [I]n summary, the amendment retains a strong independent bankruptcy court to handle the large number of bankruptcies filed every year.

The Local Rule adopted by this District Court to cope with the jurisdictional void and administrative crisis created by *Northern Pipeline* conflicts with an Act of Congress, i.e., the Reform Act. The Bankruptcy Reform Act sought to eliminate the old referee system, avoid delay and waste of two levels of judges, and to have all bankruptcy matters determined by an independent court comprised of only one set of judges; to wit: Bankruptcy Judges. The Reform Act by deliberate design, to remedy the defects found under the 1898 Act, established a unitary package of broad jurisdiction to be exercised by a single forum and judge during Transition as well as thereafter. Footnote 40 of the plurality opinion of *Northern Pipeline* recognized this. The *Northern Pipeline* decision found that the Reform Act vests *all* bankruptcy jurisdiction and judicial power to exclusively exercise that jurisdiction upon the Bank-

---

**86.** 28 U.S.C. § 2071.

**86A.** *Id.*

ruptcy Judges during Transition and thereafter[87]. The Local Rule ignores that statutory status and assumes all bankruptcy jurisdiction to the District Court and purports to refer all bankruptcy matters to Bankruptcy Judges who, under that Rule, do not have the power to enter final orders and judgments. Section 405(a)(1) already refers all Title 11 cases (i.e., "shall be referred") to Bankruptcy Judges and vests in Bankruptcy Judges the "totality" of the jurisdiction granted under § 241(a). The Local Rule restores the bifurcated judicial system for bankruptcy matters which the Congress clearly abolished via the Reform Act. Because the Local Rule is not "consistent with Acts of Congress," § 2071 prohibits the District Court from controlling and referring all cases arising under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11. Accordingly, the District Court has no authority to promulgate the Local Rule under § 2071 and in any way direct or affect the judicial responsibility of Bankruptcy Judges.

As will be discussed later, the Local Rule is also "contrary with acts of Congress," to wit: FRCP 53, 83, Bankruptcy Rule 927 and others.

(4) *The Local Rule Violates § 2075 Of The Judicial Code And § 2075 Does Not Confer Authority Upon the District Court to Adopt the Local Rule*

■ Another alleged source of authority for the District Court to adopt the Local Rule is § 2075 of the Judicial Code. Section 2075, as amended by the Bankruptcy Reform Act, provides that:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11.

Such rules shall not abridge, enlarge, or modify any substantive right.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.

This provision cannot be construed to invest the District Court with the authority to adopt the Local Rule. First, § 2075 provides that the Supreme Court, not the District Courts, has the power to prescribe general rules. The origin of the Rule via the Judicial Conference, the Administrative Office, Circuit Councils, to the District Courts is not from the Supreme Court. If the Supreme Court has the authority to delegate its power to promulgate (via Congress) uniform national rules of procedure, it must so delegate by some formal procedure; and then it would have to be exercised through District Court rule-making authority, i.e., 28 U.S.C. § 2071. (Incidentally, the Rule lacks the quality of uniformity both from its innate vagueness and the fact that several versions of the "Model Rule" were promulgated by the District Courts.) Second, the District Court's rule-making authority under § 2071 is only "for the conduct of [its own] business." Such a rule can deal with procedure only, not with the authority of another independent judicial officer and another separate court, which can only be dealt with by a statute. This is what *Northern Pipeline* was all about. The Court in *Northern Pipeline* left the restructuring of the bankruptcy adjudicatory system to the Congress. Third, Congress in promulgating § 2075, did not contemplate that the Judicial Branch could restructure the Reform Act adjudicatory system or transform the Bankruptcy Courts pursuant to § 2075.[88] Thus, § 2075 does not provide the District Court with the power to adopt the sweeping restructuring of the Bankruptcy Courts provided for in the Local Rule.

---

**87.** *Northern Pipeline, supra,* 102 S.Ct., pp. 2862–2863.

**88.** House Rep. No. 95–595, 95th Cong. 1st Sess., (1977) at 292–93, reprinted in 1978 U.S. Code Cong. and Ad.News 6249–50 (stating that

matters left to the rules concern such matters as giving notice, setting time limits, specifying form and content of documents and organizing court dockets and calendars).

**(5) *The Local Rule Conflicts With FRCP 53 And Bankruptcy Rule 810***

 Local rules that are inconsistent with FRCP are invalid under FRCP 83. Rule 83 provides simply that the District Courts can make rules which are "not inconsistent with these rules." This provision does not authorize the Local Rule here, which is categorically at variance with FRCP 53. *See, e.g., First National Bank v. S.B.A.*, 429 F.2d 280 (5th Cir.1970). Rule 53 applies to references of civil actions of the kind contemplated in the Local Rule.

Section (c)(1) of the Local Rule refers all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 to the Bankruptcy Judges. The powers of the Bankruptcy Judges under the Local Rule are set forth in Section (d)(1) as follows:

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judges' actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States Bankruptcy Judge; or

(D) jury trials.

Those matters which may not be performed by a Bankruptcy Judge shall be transferred to a District Judge.

The only limitation upon the power of a Bankruptcy Judge contained in Section (d) of the Local Rule not found in 28 U.S.C. § 1481 is the power of a District Court to consider an appeal or conduct a jury trial. The Bankruptcy Judge under the Local Rule is directed to exercise precisely the powers contemplated by the definition of master contained in FRCP 53(a), which "includes a reference, an auditor, an examiner, a commissioner, and an assessor."

Rule 53 is not cited by the Model Rule or memoranda of the Administrative Office, but the pattern is obvious and the Rule has been cited by subsequent decisions. But, the rules of FRCP do not create jurisdiction of bankruptcy matters or allow the reference structure provided in the Model Rule. Rule 53 allows a District Court to refer matters to a master to be paid by the parties. The limited grounds for the appointment are enumerated in FRCP 53(b):

A reference to *a master shall be the exception* and not the rule ... In actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. [Emphasis supplied].

Admittedly, as the *Northern Pipeline* court concluded when it issued its unusual stay, the bankruptcy process is in a crisis condition as a result of the decision. However, the exceptional circumstances referred to in Rule 53 do not exist. Yet, section (c)(1) of the Local Rule, "Reference to Bankruptcy Judges," refers all Title 11 cases and proceedings to the Bankruptcy Judges.

 References to masters are reserved for exceptional cases and are to be made on an individualized, case-by-case basis.[89] The recital in the Local Rule that "exceptional circumstances exist," including the "unanticipated" unconstitutionality of § 241(a) powers to Bankruptcy Judges, and "the clear intent of Congress to refer bankruptcy matters to bankruptcy judges," is not a valid basis for the Rule's blanket reference of all bankruptcy matters to Bankruptcy Judges. As the Supreme Court said in *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957), "[t]he use of masters is 'to aid judges in the

**89.** FRCP 53(b); *LaBuy v. Howes Leather Co.*, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957).

performance of specific judicial duties, as they may arise in the progress of a cause' ... and not to displace the court." The authority to order references under FRCP 53 was narrowly circumscribed by the Supreme Court in the *LaBuy* decision, *supra,* where the District Court appointed a master in two related antitrust cases involving 87 plaintiffs and 6 defendants with allegations of monopoly and price fixing. The master was directed to make findings, conclusions and recommendations. In affirming the issuance of a writ of mandamus requiring the District Court to vacate its order of reference, the Supreme Court explained:

Congestion in itself is not such an exceptional circumstance as to warrant a reference to a master. If such were the test, present congestion would make reference the rule rather than the exception. Petitioner realizes this, for in addition to calendar congestion he alleges that the cases referred had unusual complexity of issues of both fact and law. But most litigation in the antitrust field is complex. It does not follow that antitrust litigants are not entitled to a trial before a court. On the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work. Nor does petitioner's claim of the great length of time these trials will require offer exceptional grounds.

352 U.S. at 259, 77 S.Ct. at 315. See also *Wilver v. Fisher,* 387 F.2d 66 (10th Cir. 1967), where the court held that delay on the part of defendants, and the variety, number and complicated nature of the problems and issues involved, did not amount to an exceptional circumstance to justify an appointment of a master to supervise answers to interrogatories.

■ The District Court is therefore precluded from adoption of the Local Rule which appoints Bankruptcy Judges as something akin to permanent special masters. Thus, the Rule, which in effect purports to

make standing pseudo special masters out of statutory Bankruptcy Judges, is invalid.

■ Subsection (2) of the Local Rule provides:

The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on a timely motion by a party.

This order of reference is redundant to, superceded by, and conflicting with § 405(a)(1) of the Reform Act:

All cases commenced under Title 11 of the United States Code during the transition period shall be referred to the United States Bankruptcy Judges.

Section 405 uses "during the transition period" to make clear that the District Judges during Transition have no authority over the cases before the Bankruptcy Judges in the continued Transition court. See Senate Report, *supra* pp. 20, 167–68; House Report, *supra,* p. 459. Subsection (c)(2) of the Local Rule conflicts with § 405(a)(1) which provides:

The United States bankruptcy judges may exercise in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by Section 404(a) of this Act and *all proceedings in such cases shall be before the United States bankruptcy judges* except .... 

Thus, the Rule is void insofar as it purports to confer the power to refer to or withdraw cases and proceedings from Bankruptcy Judges.

Not only does the Local Rule violate the limitations of Rule 53(b), it is also inconsistent with the other provisions of Rule 53. Rule 53(e)(2) provides that in non-jury actions, the court "shall accept the master's findings of fact unless clearly erroneous." Local Rule Section (e)(2)(B) provides a different and inconsistent standard of acceptance:

In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment or proposed order or

judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

■ The above-quoted standard for review also conflicts with Bankruptcy Rule 810 which also applies a clearly erroneous standard for orders of Bankruptcy Judges on appeal to the District Court. In addition to the contrary appellate standard of review, the Rule conflicts with all of Part VIII of the Bankruptcy Rules in that the appellate procedure is replaced by another procedure. Rule 810 and the other rules of Part VIII are not inconsistent with a provision of the Reform Act and thus Rule 810, etc. continues to be applicable for appeals of orders of Bankruptcy Judges under the Bankruptcy Reform Act. Rule 810 is likewise applicable to appeals to Bankruptcy Appellate Panels and stipulated direct appeals to the Court of Appeals. The Local Rule, being inconsistent with the existing applicable Bankruptcy Rule 810 and FRCP 53 which were promulgated by the Supreme Court with the approval of Congress, is invalid.

It seems likely that all disputed proceedings involving fact findings by a Bankruptcy Judge under the Local Rule will involve a dispute as to the standard of review and thus will involve the validity of the rule.

(6) *FRCP 83 Does Not Authorize Promulgation Of The Local Rule*

(a) *The Local Rule Exceeds The Scope Of Authority Contained In FRCP Rule 83*

It has been alleged that authority to promulgate the Local Rule may lie in FRCP Rule 83. Rule 83 authorizes each District Court to "make and amend rules governing *its practice* not inconsistent with these rules." [90] [Emphasis supplied].

The FRCP rules are limited to general procedural rule-making or standing orders affecting cases and parties and attorneys in that individual court, not to allow rule-making for another court and other judges. FRCP 83 does not authorize the creation of a subsidiary court or the fabrication of a subsidiary judicial system out of an existing statutory system of Bankruptcy Judges. In *Minor v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), a District Court adopted a rule that provided for the taking of depositions in admiralty cases. The admiralty law did not provide for depositions. In striking the local rule, the Supreme Court held that "basic procedural innovations" are beyond the local rule-making power. This Emergency Rule creates a system far beyond "basic procedural innovations." FRCP 83 is insufficient to allow the District Court to reform the adjudicatory system and procedure provided by the Reform Act for Bankruptcy Judges during Transition.

(7) *Bankruptcy Rule 927 Does Not Authorize Promulgation Of The Local Rule*

■ The Administrative Office memoranda cites Bankruptcy Rule 927 for the authority of the District Court to issue the Rule. Bankruptcy Rule 927 authorizes each District Court to "make and amend rules governing practice and procedure under the [prior Bankruptcy] Act not inconsistent with these rules." There is no authority in Bankruptcy Rule 927, the Bankruptcy Rule equivalent of FRCP Rule 83, provided to the District Court to promulgate the Local Rule for the same reason that FRCP 83 fails to grant such authority: Bankruptcy Rule 927 is limited by Bankruptcy Rule 513 which incorporates FRCP 53.

As with FRCP 83, Rule 927 was not intended to grant authority to the District Court to fundamentally alter the structure of the bankruptcy judicial adjudicatory process in bankruptcy cases, in contrast to the statutory process which was enacted for the Bankruptcy Courts in the Reform Act, beginning October 1, 1979.

Finally, the authority given to the District Court in Rule 927 to "regulate" practice and procedure is fundamentally inconsistent with the authority of the Reform Act which, beginning October 1, 1979, refers *all* cases and proceedings and vests *all*

---

**90.** FRCP 83.

of the new § 241(a) bankruptcy jurisdiction exclusively in and under the "direction" of "incumbent bankruptcy judges" sitting at that time. § 405(a)(1); Senate Report, *supra*, § 405, pp. 20, 167–68; House Report, *supra*, p. 459. Rule 927 simply does not apply, after October 1, 1979, to the District Court.

■■■ Rule 927 is consistent with the Reform Act only as it is construed to allow the District Court to establish rules for proceedings in the District Court, but not in the "separate department" which is the equivalent of the new post-1984 Bankruptcy Court and is under the "direction of transition bankruptcy judges." Senate Report, *supra*, p. 168; House Report, *supra*, § 405, p. 459. In August 1982, the Bankruptcy Rules of Procedure proposed by the Advisory Committee on Bankruptcy Rules reported its package of new rules; the Judicial Conference approved them in September 1982; and the package was approved and submitted to Congress by the Supreme Court on April 25, 1983. Rule 9029 as thus proposed tracks Rule 927 very closely by merely substituting "bankruptcy court" for "district court." This is the only way Bankruptcy Rule 927 can be construed to be consistent with the Reform Act. As was Rule 927, the new Rule 9029 is an adaptation of Rule 83 FRCP and Rule 57(a) FRCrim.P. The new Bankruptcy Rules, as proposed August 1982, are drafted to be applicable for proceedings in the Bankruptcy Court under Title 11 during Transition as well as thereafter. The Judicial Conference Local Rule is contrary to the package of new rules and Rule 9029 which recognizes that the District Court has no bankruptcy jurisdiction or authority over bankruptcy cases or proceedings.

Thus, Rule 927 is inapplicable after October 1, 1979, as it purports to give the District Court any rulemaking authority over the procedure for Title 11 proceedings in the Transition Bankruptcy Court or over incumbent Bankruptcy Judges.

(8) *The Local Rule Conflicts With Other Provisions*

■■■ The Local Rule, by purporting to prohibit all jury trials by Bankruptcy Judges, conflicts with 11 U.S.C. § 303, and Bankruptcy Rules 104, 112, 114, 115(a) and (b) which combine to provide for Bankruptcy Judges to conduct jury trials on the contested issue of insolvency in involuntary petitions that are resisted by the debtor. The Rule is invalid in that by eliminating all appeals of orders of Bankruptcy Judges to the District Court and Bankruptcy Appellate Panels and, by stipulation, directly to the Court of Appeals, it conflicts with 28 U.S.C. §§ 160, 1293, 1482, and § 405(c)(2) which govern during the Transition period.

It seems beyond dispute that court rules, in the absence of an affirmative statute, cannot grant or govern the division of subject matter jurisdiction.[91] Rule 82 of the Federal Rules of Civil Procedure is typical. It states: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts ..." Bankruptcy Rule 928 has a similar recitation. Whether stated or not, this limitation exists as to any other rule of court, including any Local Rule of the District Courts.

Local court rules simply cannot create or confer jurisdiction, or reorganize a statutory adjudicatory system contrary to what was intended and provided in § 241(a) and §§ 404 and 405 of the 1978 Act.

(9) *The Magistrates Act Does Not Provide A Basis For Promulgation Of The Local Rule*

The representatives of the Administrative Office in a hearing before Senator DeConcini at the Senate Judiciary Committee on January 7, 1983, stated that the Model Rule was not completely patterned after Rule 53 but was more of the Federal Magistrates Act, because the Federal Magistrates Act is not limited as to appointment or bound by the clearly erroneous rule of review, as in Rule 53, and has been approved

---

**91.** *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); see discussion of Jurisdictional Principles, *supra,* ¶ V, pp. *15–21.*

by the Supreme Court in *Raddatz,*[92] and by comments by the plurality opinion in *Northern Pipeline, supra.*

Thus, while it is not referred to in the Rule or in any Administrative Office memoranda, the pattern for the Rule, and an alleged possible source of authority for the delegation of judicial functions, is the Federal Magistrates Act, 28 U.S.C. §§ 631–39. The Magistrates Act contains a comprehensive scheme for the use of magistrates, including the procedures by which the number and location of magistrate positions are determined, the manner of appointment, the duration of appointment, the methods of removal, and the powers vested in magistrates. The Magistrates Act permits the District Court to employ and designate United States Magistrates to hear and determine any pretrial matter, except certain matters such as a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.[93] The Magistrates Act also permits a District Court to designate a Magistrate to conduct hearings and to submit proposed findings of fact and recommendations for disposition by a District Court, except for the motions described above.[94]

The Magistrates Act does not provide the District Court with the authority to refer bankruptcy matters to Bankruptcy Judges. The Magistrates Act contemplates the designation of *United States Magistrates,* not United States Bankruptcy Judges, to hear and determine pretrial matters and to conduct hearings, but subject to a *de novo* determination and review by an Article III judge. In enacting the Magistrate Act, Congress did not envision that the District Courts would administer and adjudicate Title 11 bankruptcy cases and

proceedings by referring them to Magistrates or Bankruptcy Judges. "As part of a comprehensive restructuring of the bankruptcy laws, Congress has . . ." (*Northern Pipeline, supra,* n. 40) established a separate court system using Bankruptcy Judges exclusively to resolve Title 11 bankruptcy matters.[95] The bankruptcy adjudicatory structure and procedure in the Rule specifying the use of Bankruptcy Judges fashioned after the Magistrates Act conflicts with the Bankruptcy Code, § 241(a), §§ 404 and 405 and makes the adjudicatory system of the Local Rule invalid.

(10) *The District Court Has No Inherent Authority To Promulgate The Local Rule To Establish A Bankruptcy Adjudicatory System*

The final possible source of support for the Local Rule is the alleged inherent authority of the District Court to appoint auditors or experts and issue orders not anticipated by statute. Judge DeMascio in *Northland Point,*[96] Judge Mahon in *Braniff*[97] and the Utah District Court[97A] seem to hold that the District Court possesses inherent equitable powers to issue the Local Rule to delegate bankruptcy jurisdiction and adjudicatory authority and supervise Bankruptcy Judges. Such a notion, including the unique and startling analogy offered in n. 9 and at pp. 10–11 of the *Braniff* opinion,[98] seems misplaced to formulate a judicial adjudicatory structure in conflict with official rules and congressional statute. In affirming, by per curiam opinion offering no discussion, the Court of Appeals for the Fifth Circuit seems to have adopted or approved this concept.[99]

Whether the inherent power concept in these opinions is considered an argument for District Court bankruptcy jurisdiction

92. *Id.*

93. 28 U.S.C. § 636(b)(1).

94. 28 U.S.C. § 636(b)(1)(B).

95. 102 S.Ct. at 2880.

96. See *Northland Point,* fn. 1(x), *supra.*

97. See *Braniff,* fn. 1(xx), *supra.*

97A. See *ColorCraft,* fn. 1(xxx), *supra.*

98. See *Braniff,* fn. 1(xx), *supra.*

99. See fn. 1(xx), *supra.*

or as judicial power to formulate a system of delegation of jurisdiction, the notion is one of the more frightening ideas which have been espoused in the aftermath of *Northern Pipeline.* It seems actually subversive of the constitutional powers of Congress to legislate the jurisdiction and powers of courts.

In order for the Local Rule to be within the inherent equitable power of the District Court, the promulgation must be (1) within the scope of the inherent authority; and (2) the rule must not be contrary to legislation. *Ex Parte Peterson,* 253 U.S. 300, 312–13, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920). Neither condition is satisfied with the Model Rule.

a. *The Rule Is Beyond The Inherent Power Of The District Court To Appoint Bankruptcy Judges As Aides*

The inherent authority recognized in *Peterson, supra,* provides no basis for the promulgation of a blanket reference to Bankruptcy Judges of all cases and proceedings in, arising in, or related to Title 11 of the United States Code. In *Peterson* the Supreme Court recognized the authority of a District Court to appoint an auditor to conduct a preliminary hearing for the purpose of reviewing lengthy records, identifying items in dispute, and expressing an opinion upon the items found to be in dispute. The order appointing the auditor expressly provided that the auditor should not finally determine any of the issues and that the final determination of all issues was to be made by the jury at trial. No act of Congress had specifically authorized this practice, but no legislation appeared to prohibit the practice.

In discussing the District Court's inherent power, the Supreme Court stated in *Peterson:*

> Courts have (at least, in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties as they may arise in the progress of a cause

> .... It is a reference to "auditors"—a term which designates agents or officers of the court, who examine and digest accounts for the decision of the court.

253 U.S. at 312–13, 40 S.Ct. at 547 [citations omitted].

The *Peterson* Court expressly recognized that the District Court's inherent power is subject to limitations imposed by legislation. FRCP 53, discussed earlier at ¶ VIII(5), *supra,* is an express limitation on the otherwise inherent judicial power of the District Court. Because FRCP 53 governs, the District Court may not rely on some other inherent power to create an adjudicatory system that differs from, yet substantially parallels, the Rule 53 treatment of masters.

In reviewing the decisional law, and particularly *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) and *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the plurality opinion in *Northern Pipeline* declared that two "principles" emerged from the relevant case law:

> Together these cases establish two principles that aid us in determining the extent to which Congress may constitutionally vest traditionally judicial functions in non-Art. III officers. First, it is clear that when Congress creates a substantive federal right it possesses substantial discretion to prescribe the manner in which that right may be adjudicated—including the assignment to an adjunct of some functions historically performed by judges .... Second, the functions of the adjunct must be limited in such a way that 'the essential attributes' of judicial power are retained in the Art. III Court.

*Id.,* 102 S.Ct. at 2876 (footnote omitted).

In applying the two principles, the plurality opinion stated that Congress' power to create "adjuncts" to consider cases related to those under Title 11 is not as great as Congress' power to assign factfinding functions to an adjunct established to aid Article III courts in adjudication of congressionally created statutory rights. It singled out

for criticism several specific provisions of § 241(a) as contravening those principles. *Id.* at 2878–79. The plurality noted that the *Northern Pipeline* case "involves a right created by *state* law, a right *independent of and antecedent to* the reorganization petition that conferred jurisdiction upon the bankruptcy court." *Id.,* at 2878 (footnote omitted). [Emphasis supplied]. The plurality concluded that ". . . Congress' authority to control the manner in which such right is adjudicated, through assignment of historically judicial functions to a non-Article III 'adjunct,' plainly must be deemed at a minimum." *Id.*

If Congress' power to control the manner of adjudication of a right created by State law is "at a minimum," the District Court, even if it is vested with *all* Title 11 jurisdiction and power, cannot, under an alleged inherent power to appoint agents to assist in cases, refer by Local Rule all cases "related to cases under Chapter 11" to the Bankruptcy Judges of this district.

(11) *The Local Rule Improperly Permits The Bankruptcy Judge To Enter Final Orders In Northern Pipeline Type Issues*

■ The Local Rule is illegal because it authorizes a non-lifetime tenured judge to enter final orders in respect to § 241(a) jurisdiction. Notwithstanding *Northern Pipeline,* the Local Rule reenacts a number of § 1471's provisions and thus offends the very principles described in *Northern Pipeline.* Section (c)(1) of the Local Rule refers all bankruptcy cases and all civil proceedings arising under Title 11 or related to cases arising under Title 11 to the Bankruptcy Judges of the district. The plurality objected to § 1471's permitting "the bankruptcy courts [to] issue final judgments, which are binding and enforceable even in the absence of an appeal." *Id.* at 2879. Yet, the Local Rule permits the Bankruptcy Judge to enter orders and judgments that "are effective upon entry by the Clerk," in a broad variety of cases. See Section (d)(2) and (3). This feature of the Local Rule also flatly contravenes *Northern Pipeline.* This is the grant of 28 U.S.C. § 1471(c) and (e) to the Bankruptcy Court. Except with respect to related matters defined in Section (d)(3)(A) of the Local Rule, the Bankruptcy Judge shall enter judgments which become effective upon entry. Unless a proceeding is within the scope of Section (d)(3)(A), the Bankruptcy Judge may enter judgment.

An analysis of the matters included within the purview of Section (d)(2) includes many state law claims which form the basis of the Supreme Court's decision in *Northern Pipeline.* For example, a Bankruptcy Judge acting under Section (d)(2) may enter final orders with respect to counterclaims, objections to claims, fraudulent conveyances, preferences, turn over of property, validity and priority of liens, dischargeability of particular debts, objections to discharge, confirmation of Chapter 11 and Chapter 13 plans, and the determination of other private rights involving matters in which State law provides the rule of decision or significantly impacts the rule of decision.

In addition, the Local Rule perpetuates a number of the features of the invalidated § 1471 that the plurality found were an impermissible vesting of all of the "essential attributes of the judicial power of the United States in the 'adjunct' bankruptcy court." *Id.* at 2878. Just like the invalidated § 1471, the Local Rule permits Bankruptcy Judges to exercise bankruptcy jurisdiction extending beyond "channeled fact-finding functions." *Id.* at 2878–79. Thus, the Local Rule permits Bankruptcy Judges to "perform . . . all acts and duties necessary for the handling" of bankruptcy cases, with four enumerated exceptions. See Section (d)(1).

The scheme behind the Local Rule is based upon a distinction between "related proceedings" and all other bankruptcy proceedings. The Bankruptcy Judges' orders are effective upon entry as to the latter category, but not with respect to "related proceedings." "Related proceedings" exclude a large number of cases arising out of state law claims. See Section (c)(3)(a). In fact, the Rule explicitly states, "[a] proceeding is not a related proceeding merely because the outcome will be affected by state law." *Id.* The proceeding before the court

involves serious issues of the State law contract and property rights of creditors and the debtor. The plan of reorganization under consideration, as do many reorganization plans, actually requires a reformation of the real property deed of debtor and an objecting creditor. In apparent disregard of *Northern Pipeline,* the Rule appears to categorize the proceeding involving movants as *not* a "related proceeding."

The plurality drew a distinction between assigning cases to adjunct courts arising out of "Congressionally created statutory rights" and those arising out of "rights not created by Congress." It stated:

> While *Crowell* certainly endorsed the proposition that Congress possesses broad discretion to assign factfinding functions to an adjunct created to aid in the adjudication of congressionally created statutory rights. *Crowell* does not support the further proposition necessary to appellants' argument—that Congress possesses the same degree of discretion in assigning traditionally judicial power to adjuncts engaged in the adjudication of rights *not* created by Congress. (*Id.* at 2877; emphasis in original).

Notwithstanding this admonition, the Local Rule delegates to the Bankruptcy Judges jurisdiction over private State law claims. See Section (c)(1) of the Rule. A more direct conflict with *Northern Pipeline* is difficult to imagine.

The *Northern Pipeline* plurality decision indicates that public rights (which may be adjudicated by non-Article III judges) "must at a minimum arise between the government and others ... It is ... clear that the presence of the United States as a proper party to the proceeding is necessary ..." p. 2870 and n 23 ... In contrast, the "liability of one individual to another under the law ... [cite omitted] is a matter of private rights." *Id.* pp. 2870–71. "... Only controversies of [i.e., public rights] may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination. [Cits.]" *Id.* p. 2871. *Northern Pipeline* makes manifest the impropriety of delegat-

ing to a non-Article III judge the authority to enter a final order in matters where the adjudication of State-created rights or other private rights is dispositive. Such rights must be determined by the undersigned in the proceeding under consideration. *Northern Pipeline* manifests that a non-Article III Bankruptcy Judge is constitutionally prohibited from entering final orders or judgments pursuant to the authority prescribed in the Local Rule, irrespective of the scope of review by the District Court. *Id.* 2876–79 and J. Rehnquist at 2882.

(12) *The Local Rule Violates Article III Even Where Bankruptcy Judges Exercise Only So-Called Summary Jurisdiction*

In a startling departure from what Congress intended, the Local Rule divided bankruptcy proceedings into two categories —"related" and "unrelated" proceedings. "Related proceedings" are defined by the Rule as those civil proceedings that could have been brought in a District Court or a state court in the absence of a petition in bankruptcy. *See* Emergency Model Rule, Section (d)(3). That definition is reminiscent of the distinction between "summary" and "plenary" proceedings, which Congress rejected in the 1978 Act. The issue of "summary"' and "plenary" had required burdensome litigation to determine the proper court to entertain and adjudicate particular bankruptcy proceedings and controversies.

Even if Section (d)(3)(A) of the Local Rule were redrafted to include matters only within the so-called summary jurisdiction of the Bankruptcy Court as under the prior Bankruptcy Act, it would still be invalid. While *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), approved the authority of a non-Article III bankruptcy referee to allow or disallow claims, the constitutionality of the exercise of summary jurisdiction granted under the Bankruptcy Act was never considered by the United States Supreme Court. Indeed, the plurality in *Northern Pipeline* states that the broad powers exercised by referees and Bankruptcy Judges prior to the Bankruptcy Reform Act of 1978:

... have never been explicitly endorsed by this court. In *Katchen v. Landy* [citation omitted] ... there was no discussion of the Article III issue. Moreover, when *Katchen* was decided, the 1973 bankruptcy rules had not been adopted, and the district judge, after hearing the report of magistrate, was free to modify it or ... reject it in whole or in part ... or receive further evidence or ... recommit it with instructions. *Id.,* 102 S.Ct. at 2876, n 34.

The adjudication of competing rights involving property of the debtor most always involve State/common law rights, i.e., private rights rather than public rights in which the United States is a proper party. Constitutionally, there is no distinction between private right adjudications under summary jurisdiction and private right adjudications under plenary jurisdiction. That is, constitutionally, there is no difference between the adjudication of common law, State law, and private rights connected with property in the constructive possession of the debtor at the time of filing the Title 11 petition and adjudicating such rights under circumstances where the property of the debtor is not involved as in *Northern Pipeline.* The Article III character of the adjudication of rights under either circumstance is the same. It is irrelevant whether the issue involves the property in the debtor's possession, if the adjudication of rights encompasses the exercise of the Article III judicial power of the United States. In neither situation may a non-Article III judge constitutionally adjudicate such rights.

(13) *Consent Of Parties Cannot Give Legal Jurisdiction To Bankruptcy Judges*

■ The consent of the parties to subject matter jurisdiction before the non-Article III arbiter does not alter the character of the adjudication. If a power to adjudicate is either constitutionally or statutorily

prohibited, jurisdiction will not be conferred upon the court by the consent of the parties or by waiver.[100] Not even consent or estoppel by judgment will confer jurisdiction where it is prohibited.[101]

■ Thus, the Local Rule conflicts with the longstanding principle that federal jurisdiction cannot arise from the consent of the parties. The Local Rule allows a Bankruptcy Judge to enter a "judgment or dispositive order" even in "related proceedings" if "the parties to the proceeding consent to entry of the judgment or order." See Section (d)(3)(b). Unlike § 2a(7) of the prior Act (even assuming that consent statute was constitutional, which may not be a valid assumption) no present statute authorizes the creation of "consent" jurisdiction for bankruptcy matters. These Local Rule provisions cannot be squared with the long line of federal decisions holding that consent of the parties does not create jurisdiction and that the federal courts accordingly, at every level, must raise questions about subject matter jurisdiction on their own motion. *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinal,* 456 U.S. 694, 700–702, 102 S.Ct. 2099, 2103–2104, 72 L.Ed.2d 492, 500–501 (1982). *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 287, 58 S.Ct. 586, 589, 82 L.Ed. 845 (1939); *Louisville & Nashville R. Col. v. Mottley,* 211 U.S. 149, 153, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). *Sea-Land Service Inc. v. International Longshoreman's Association,* 625 F.2d, 38, 41, (5th Cir.1980).

(14) *De Novo Determination by the District Court of Final Orders of Bankruptcy Judges Does Not Cure Article III Defects*

■ Even if the District Court had authority over the Transition Court and Bankruptcy Judges, the judicial powers allowed

---

**100.** *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 17–18, fn. 17, 71 S.Ct. 534, 541–542, fn. 17, 95 L.Ed. 702 (1951); *Jackson v. Ashton,* 33 U.S. 148, 8 Pet. 148, 8 L.Ed. 898 (1834); *Dred Scott v. Sandford,* 60 U.S. 393, 19 How. 393, 15 L.Ed. 691 (1857).

**101.** *Maloney v. Northwestern Bell Tel. Co.,* 377 F.2d 549 (CA 8, 1977); *Mansfield v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462.

under the Local Rule to be exercised by Bankruptcy Judges comprise the judicial power of the United States which exercise is restricted by Article III to lifetime judges and may not be cured by review by the Article III District Judges.

The Article III limitations on the entering of final orders and judgments by non-Article III judges are clear. In *Harding v. Kurco, Inc.*, 603 F.2d 813 (10th Cir.1979), the plaintiff appealed a judgment entered upon the order of a United States Magistrate to whom the action was referred for trial final judgment in accordance with a stipulation of the parties. In holding that the judgment appealed from was not a final decision of the District Court appealable directly to a court of appeals, the court declared:

A magistrate exercising "additional duties" jurisdiction remains constantly subject to the inherent supervisory power of the district judge and the judge retains the "ultimate responsibility for decision-making in every instance." Thus, the discretionary authority to direct entry of a final judgment is a fundamental and exclusive power of an Article III judge.

603 F.2d at 814. *See also Horton v. State Street Bank and Trust Co.*, 590 F.2d 403 (1st Cir.1979) (no appeal could lie from judgment entered by magistrate; discretionary authority to enter a final judgment is fundamentally an exclusive power of an Article III court.) The Court in *Northern Pipeline* rejected the argument of appellants and the Solicitor General that the review on appeal by an Article III judge cures the constitutional defect of the exercise of the "judicial power of the United States" in an adjudicated matter by a non-Article III judge. J. Rehnquist, 102 S.Ct. at p. 2882, citing *Crowell v. Benson*. The plurality noted that the constitutional requirements for the exercise of judicial power must be met at *all stages* of adjudication. *Id.* at 2879, n. 39. Thus, the consideration of the Article III judge in the exercise of the judicial power must include the hearing, the determination, the findings and the order of adjudication of the rights of the parties. The reference of a "related proceeding" via Section (d)(3) to a non-Article III arbiter is not the exercise of the judicial power of the United States by an Article III judge "at all stages of adjudication."

Thus, the Rule is void as it refers such matters for final orders to the undersigned.

IX. EVEN IF THE DISTRICT COURT HAS ALL TITLE 11 JURISDICTION, THE RULE IS INVALID BECAUSE THE DISTRICT COURT IS WITHOUT AUTHORITY TO CONSCRIPT BANKRUPTCY JUDGES AS AIDES AND TO DIRECT AND SUPERVISE BANKRUPTCY JUDGES

The courts are misguided which state that no court structure changes until the Reform Act takes place April 1, 1984, and thus there "has been no change" in the District Court adjudicatory structure, bankruptcy jurisdiction, and powers during Transition; and the District Court has jurisdiction and judicial authority to exercise and direct the bankruptcy adjudicatory system. True, April 1, 1984, is when the Presidential appointments to the new positions of Bankruptcy Judges become effective, and the United States Bankruptcy Court officially is ordained. Nevertheless, the provisions of Title IV—Transition of the Reform Act and the legislative history previously discussed in paragraph VI(1), *supra,* concerning the Transition court show the many changes in authority which took place October 1, 1979, in lieu of the prior Act's court status and adjudicatory system. These provisions show that a different court and status was created to operate during Transition, and that the District Court is without the authority of statute to govern bankruptcy cases and proceedings or to delegate or refer proceedings to Bankruptcy Judges, or to direct and supervise the judicial acts of a Bankruptcy Judge after October 1, 1979.

Aside from the apparent dangerous and unprecedented encroachment upon the legislative function of Congress to decide and allocate jurisdiction to federal courts, it seems to be a very dangerous policy and precedent for the Judicial Conference, the

quasi-legislative, administrative agency of the federal judiciary, led by the Chief Justice and joined by the appellate courts, to direct the issuance of a rule which creates present jurisdiction previously invalidated by a Supreme Court decision, establishes a new and unique adjudicatory court structure, and conscripts trial judges of a lower and separate court, and then subsequently to rule on the legality of that rule of jurisdiction jointly promulgated by them. In the past, Congress has been jealous of the courts which promulgate rules of practice and procedure, even pursuant to clear jurisdiction, which encroach upon substantive law. Most recently in regard to bankruptcy policy, the Congress in the 1978 Reform Act pointedly amended 28 U.S.C. § 2075 to restrict the Supreme Court and Judicial Conference from using the rule-making process to alter existing law. House Report 95–595, at 292–93, n 88, *supra.*

Paragraph IX emphasizes that the District Court, effective October 1, 1979, lost any authority over the individual Bankruptcy Judges. It shows that the Rule is invalid insofar as it attempts to enlist (voluntarily or involuntarily) the Bankruptcy Judges to exercise the judicial performances included in (b) and (c) of the Rule.

(1) The 1898 Bankruptcy Act is repealed by § 401 and "all laws currently in force relating to bankruptcy" are repealed. This includes old 28 U.S.C. § 1334, which has been replaced by a new 28 U.S.C. § 1334 entitled "Bankruptcy Appeals," effective October 1, 1979. The existing courts of bankruptcy are continued for the Transition only and "shall constitute a separate department of the district court 'under the direction' of the 'incumbent' Bankruptcy Judges." § 404(a). House Report, *supra,* p. 459. Senate Report, supra 167–68. The terms of office of "incumbent" Bankruptcy Judges serving at October 1, 1979, are extended to "the end of the transition period," i.e., until replacements are "appointed and qualified." This Transition term of office cannot be affected by District Court Judges. Section 404(b) and Title IV "protects existing bankruptcy judges" and re-

moves the District Judges from any control, supervision, or functional authority over incumbent Bankruptcy Judges; it "gives . . . the judges the statutory title of 'United States bankruptcy judge' . . . The provision prevents district judges . . . from . . . removing" Bankruptcy Judges. "[I]t is important to have experienced judges on the bench during the early phases [Transition] of the implementation of the new law." Only the merit screening committee has any authority to terminate a Bankruptcy Judge, i.e., if declared "not qualified" at end of the term which began prior to October 1, 1979. If not replaced at that time, only the President's appointee may replace the "incumbent." § 404(b); Senate Report, *supra,* p. 20, § 402(d), p. 166; House Report, § 404(a), p. 287–89, 459–60. The District Judges have no authority after October 1, 1979 over the separate department Transition court of bankruptcy. The "adjunct" court status to the District Court effective April 1, 1984, was found to be a "facade," (*Northern Pipeline,* 102 S.Ct. at 2879); thus, it is a "facade" to argue that the "separate department" during Transition is a functionally subordinate adjunct of the District Court and "not changed" by the Reform Act.

(2) Cases and proceedings filed under Chapter 3 of Title 11 during Transition are filed with the Clerk of the Bankruptcy Court. 11 U.S.C. § 301; 28 U.S.C. § 1930, § 405(a)(1). When filed, cases "commenced under title 11 . . . during the transition period," are automatically "referred to the United States bankruptcy judges," (i.e., not the "court of bankruptcy") and "all proceedings in such cases shall be before the United States bankruptcy judges" (i.e., not the "District Judges"). It must follow that because § 405(a)(1) has referred all cases and all proceedings shall be before the Bankruptcy Judges, the District Court has no cases and/or proceedings to refer, and there is no authority for the District Court to refer, withdraw or alter such statutory referral. 11 U.S.C. Chapter 3; § 405(a)(1). Section 405(a)(1) supercedes Bankruptcy Rule 102.

(3) Section 404(d) "gives the bankruptcy judges the same staff and *control* over staff as the new court will have" after Transition. [Emphasis supplied]. The Clerk of the Bankruptcy Court, effective October 1, 1979 and during Transition, and the court and staff shall be appointed and under the *control* of the Bankruptcy Judges sitting during Transition. "These provisions will aid in the administration of the [Transition] bankruptcy courts, and provide a better estimate of the need for judges after the transition period." § 404(e), House Report, *supra*, p. 287–89, 460, U.S.Code Cong. & Admin.News 1978, pp. 6243–6246, 6415. The purpose is to have the Transition court operate and function under the "direction" of Bankruptcy Judges "as much" as possible like the post-Transition courts so that the "time and workload studies" will be "accurate" to determine the number of judgeships needed on April 1, 1984. Thus, District Judges have no court of bankruptcy role over Bankruptcy Judges during Transition. § 404; House Report, *supra*, p. 287–89, 459; Senate Report, *supra*, pp. 18, 20, 166–67.

(4) Continuation of the courts of bankruptcy through § 404 does not carry with it or establish any grant of "old" Act jurisdiction or Title 11 jurisdiction to the District Court or District Judges. The jurisdiction is supplied by § 405(a)(1) solely to Bankruptcy Judges, not to the courts of bankruptcy, and not to the District Judges. The continuation of the courts of bankruptcy during Transition through § 404 is for the sole purpose of continuing in judicial service the "existing, incumbent" Bankruptcy Judges in office on October 1, 1979, through the Transition period and until Presidential appointments are made and qualify. § 404. "The thrust of § 405 is to provide the *transition period bankruptcy courts with the same jurisdiction and powers* as the proposed new "courts after transition." House Report, *supra*, p. 460, U.S.Code Cong. & Admin.News 1978, p. 6416. The "statutory scheme" (Senate Report, *supra*, § 216, p. 153) through subsection (c) of 28 U.S.C. § 1471, *vests all* of the jurisdiction ["the totality of this jurisdiction", *Id.*, p. 153] in the Bankruptcy Judges to "exclusive[ly] exercise," and leaves no jurisdiction for District Judges to exercise. *Northern Pipeline, supra*, pp. 2879–80. A transitory conveyance of jurisdiction without permanent *vesting* of jurisdiction is not a grant of jurisdiction. A conveyance of jurisdiction without any power to exercise that jurisdiction is not a grant of jurisdiction. Moreover, at the very least, 28 U.S.C., § 1471(e), which is separate and specific from 28 U.S.C. § 1471(a) and (b) and (c), gives the Bankruptcy Judges during transition the exclusive authority over the property of the debtor and all proceedings affecting that property, and the District Court has no power to disturb or affect that grant. Section 405 provides no power or authority for the District Judges to exercise control or supervision over Bankruptcy Judges during Transition as there is no power over Bankruptcy Judges after April 1, 1984.

(5) Where there are several Bankruptcy Judges, the Bankruptcy Judges, not District Judges, are charged with the determination of policy of the equitable allocation of the automatically "referred" cases and proceedings among the existing Bankruptcy Judges. Only where the Bankruptcy Judges disagree and cannot determine a policy may the Circuit Council (not District Judges) have any authority to determine a policy division of cases. Even then, there is no power of withdrawal of cases or proceedings. 28 U.S.C. § 156.

In summary, the District Court Local Rule is without authority to refer (or withdraw) cases and proceedings already referred by § 405(a)(1) and 11 U.S.C. § 301, 302, 303 to Bankruptcy Judges. The District Court is without authority to effect a division of jurisdiction already vested in the Bankruptcy Courts by § 405(a)(1) and § 241(a).

As District Judge Morton in Tennessee and District Judge Van Artsdalen in Pennsylvania concluded, if the District Court has bankruptcy jurisdiction, it must find a means to exercise the jurisdiction itself, and the District Court lacks authority to assert or delegate bankruptcy jurisdiction, and the

**512**

Rule is not valid insofar as it asserts that delegation power.[102]

The District Court is without power to enlist, conscript, direct, and supervise Bankruptcy Judges as aides to District Judges in the exercise of its asserted jurisdiction.

## X. CONCLUSION

It is the Congress that "vested" . . . "all" the Section 241(a) jurisdiction "exclusive[ly]" upon the Bankruptcy Court effective April 1, 1984, and upon the "existing," "incumbent" Bankruptcy Judges effective October 1, 1979. It is the Congress that included the Bankruptcy Judges in an independent "separate department" of the District Court and placed the Transition court under the "direction" of the "incumbent" Bankruptcy Judges. It is the Congress that made the Transition court as much "like the proposed new court" . . . "courts after transition . . ." as possible during the Transition period. It is the Congress which "referred" all cases and proceedings to the Bankruptcy Judges and provided that "all proceedings shall be before" the Bankruptcy Judges during Transition. It is the Congress that "vested" the jurisdiction upon Bankruptcy Judges for them to "exclusive[ly] exercise" and thus withheld from the District Court any authority to exercise the jurisdiction transitorily conveyed in § 1471(a) and (b). It is the Supreme Court which has declared in *Northern Pipeline* that the *vesting* of nonseverable jurisdiction to the Bankruptcy Judges rendered § 241(a) unconstitutional. It is the Supreme Court which has prohibited the Bankruptcy Judges from continuing to exercise that jurisdiction exclusively vested on those judges, during the Transition and thereafter, beginning December 24, 1982.

The *Northern Pipeline* decision, by excising the § 241(a) package of statutory jurisdiction from Bankruptcy Judges, has transformed Bankruptcy Judges into judicial capons. It is now a situation where Bankruptcy Judges possess statutory jurisdiction and judicial powers without possession of constitutional power to exercise those statutory powers. The Supreme Court pointedly refused to attempt to carve out or define from § 241(a) any acceptable Title 11 subject matter jurisdiction that non-Article III Bankruptcy Judges possibly could constitutionally exercise. The Supreme Court likewise recognized the "facade" of the transitory, symbolic grant of jurisdiction to the District Court and refused to reapportion the jurisdiction or to construe the statute as allowing any bankruptcy jurisdiction to be exercised by District Judges.

Even if the District Courts are deemed to possess subject matter Title 11 jurisdiction after such emasculation of the powers of Bankruptcy Judges by *Northern Pipeline,* the District Courts are without statutory or other authority to legislate and ordain by a local judicial rule a non-statutory adjudicatory system, to conscript Bankruptcy Judges as their aides, to effect miracle by implanting as the rule prescribes a partial jurisdictional restoration to impotent Bankruptcy Judges. The District Courts simply are without authority over Transition Bankruptcy Judges and the Transition Bankruptcy Court. Finally, District Courts are without authority to circumvent the Supreme Court's decision which prohibits effective judicial action by Bankruptcy Judges under § 241(a) of the Reform Act. Only Congress can regraft a federal statute found unconstitutional by the Supreme Court. As the *Northern Pipeline* plurality opinion stated (p. 2880), the concurring opinion agreed (p. 2882), and as the dissent of the Chief Justice suggested (p. 2882), only Congress can legislate a court structure and jurisdiction solution to the constitutional deficiencies. If any Justice, or any party or amicus curiae, in *Northern Pipeline,* had any suspicion that § 1471(a) and (b), §§ 404 and 405, or § 1334, had any vitality in favor of the District Courts and that the federal judiciary by a local rule could assume bankruptcy jurisdiction and effect, i.e., "reconstitute," an adjudicatory system, reason suggests that someone

---

**102.** See fn. 2(b), and 1(*l*), *supra.*

would have expressed such suspicion and the extraordinary six-month stay would not have been necessitated. As stated earlier, if the damage could be papered over by [a local] rule, there would be no need for the stay. If the Supreme Court had any thought that the Judicial Conference or the Circuit Councils or the District Courts had the power to judicially restructure the bankruptcy adjudicatory system, it would have said so. Moreover, if the Supreme Court thought that it had the lawful power itself to deal with the problem, it surely would have exercised its own explicit rule-making powers, for example under § 410 of the 1978 Act or 28 U.S.C. § 2075, rather than issue the stay and specifically direct Congress to supply a legislative solution. But quite to the contrary, the Supreme Court, with due observance to constitutional amenities, called upon Congress to take the required action. The Supreme Court was well aware that if Congress failed to act, "the bankruptcy system would face a jurisdictional abyss." *In re Color Craft, supra,* 27 B.R. 392 n. 1(b), 10 B.C.D. at 57. But that perilous condition does not create District Court jurisdiction or confer rule-making power on the District Courts. Until Congress does effect legislation, our constitutional principles of separation of powers withhold from the judiciary the power to interfere with the actions of our legislative branch of the federal government.

This legal opinion is the most distasteful rendering in 11 years and 5 months on the federal judiciary, not only because the issues so adversely affect the debtor and creditor litigants here, and also because they involve the political inability of Congress to recognize the economic impact and to come to grips with the constitutional realities of *Northern Pipeline,* but principally because this decision involves the undersigned involuntarily in an internecine confrontation with the combination of the federal judiciary which effected the controversial, confusing, conflicting, unworkable and unconstitutional Judicial Conference Rule. The Rule is the same as the suggestion of the Chief Justice's dissent which the plurality repudiated in n. 40. The Rule is essen-

tially the same as the legislative proposals of the Judicial Conference in 1977–78 in response to the House Article III bill after congressional rejection of the old referee-District Judge system. The Rule is the same as the current legislative proposals of the Judicial Conference since September 1982 now illustrated by S. 1013 and urged by the forces of the Judicial Conference, the Administrative Office and the Federal Judges' Association. The Rule and the proposed legislation are hand-in-hand. Unfortunately S. 1013 is patterned after the Rule. The Rule has had the effect of giving the erroneous impression to the Congress that the judiciary has framed a solution that is suitable, constitutional and is working well as the Judicial Conference and some Article III judges are erroneously alleging. In point of fact, the Rule is not working well and there is a latent defect of unconstitutionality of jurisdiction in every order of a Bankruptcy Judge and District Judge under this Rule. The several proceedings in which this opinion will be entered, and the many other diverse and conflicting opinions which are being published daily, witness the fact that the Rule and S. 1013 do not offer a workable or constitutional solution.

The initiation of the Rule and S. 1013 has pitted the Judicial Conference and Article III judges *against* (1) Bankruptcy Judges who construe *Northern Pipeline* as forbidding virtually all judicial adjudicatory actions by Bankruptcy Judges, against (2) the public policy of Congress that the unitary grant of broad bankruptcy jurisdiction should be vested exclusively in the incumbent, independent Bankruptcy Judges, and against (3) the *Northern Pipeline* Court which held that such bankruptcy jurisdiction must be exercised only by Article III judges pursuant to new legislation.

The burdening fact that the Rule was initiated at the apex of the hierarchy of the federal judiciary, with the persistent, long-range objective to subjugate bankruptcy jurisdiction, Bankruptcy Courts and Bankruptcy Judges, is a realization apparent throughout all this massive judicial examination. Unfortunately for this unwilling

participant in this fray, the undersigned has the judicial responsibility consistent with the oath as a federal judge to inquire into and determine its own jurisdiction under this Rule. It requires the foregoing extensive examination of the alleged legal supports of the Rule. Hence the unpleasant necessity of this perhaps lowest but very important trial echelon of the federal judiciary to demur to the establishment of the federal judiciary and the authority alleged in respect to this Local Rule.

Bankruptcy Judges in the emergency following *Northern Pipeline* generally, as here, are responsibly carrying on judging virtually as prior to December 24, not because of the Rule, but because debtors and creditors alike want their cases to work and generally do not have the desire or the money to contest questionable jurisdiction. This court is convinced from legal analysis that *Northern Pipeline* leaves no § 241(a) jurisdiction for *any* trial court to exercise. As aforesaid, there is a lapse of bankruptcy trial jurisdiction after December 24, 1982, until Congress acts to cure the constitutional deficiencies of the § 241(a) grant, as concluded and directed by the Supreme Court. Thus, by such business as usual actions which this Court intends to continue in proceedings absent jurisdictional objections, this court fears it routinely may be violating the judicial responsibilities and oath of office by failing *sua sponte* to decline jurisdiction over each matter, even where unobjected to, when this court concludes that it is absent subject matter jurisdiction. For the undersigned to act judicially beyond the known constitutional jurisdictional authority may be to violate the oath of office which charges federal judges to rule in accordance with the law and the Constitution as construed by the Supreme Court.

■ Moreover, it is axiomatic that judicial actions by a federal judge in matters beyond the jurisdiction of that judge, especially where that judge recognizes the ab-sence of constitutional subject matter jurisdiction to act, are not protected by the principles of judicial immunity. Judicial action beyond jurisdictional authority renders the judge subject to suits for damages.[103] This seems clear.

■ In hearings held prior to December 24, 1982, the court announced its intention that the Chapter 11 reorganization plan should be confirmed under § 1129. This court has entered the order in accordance with that evidentiary determination and intention. However, in consideration of this motion to dismiss which intervened prior to entry of the order of confirmation, this court has determined that it has no present legal authority since December 24, 1982, to enter the order of confirmation. The motion alleging lack of subject matter jurisdiction of this Bankruptcy Judge to enter the order on confirmation or an order in pending adversary proceedings affecting the debtor and these moving parties is proper. The motion to dismiss the Chapter 11 case is denied. *Northern Pipeline* did not deal with cases or Title 11 U.S.C. The Court decision dealt only with the constitutional power of Bankruptcy Judges to consider issues and enter orders in proceedings in cases as allowed under Section 241(a) of the Reform Act. An order of revocation of the order allowing confirmation will be entered consistent with this opinion. The order of confirmation of a Chapter 11 plan applying the standards of 11 U.S.C. § 1129 clearly abridges, alters, and affects the State law contract and property rights of the debtor and creditors which is beyond the power of this non-Article III judge to effect, as *Northern Pipeline* held. The within reorganization plan reforms the deeds of debtor and creditors in respect to the real property apartment project in issue. Private rights are being affected and adjudicated, albeit the confirmation proceeding is not a civil action involving a complaint and answer. While the abridgement of State law contract rights may be more readily allowed

**103.** *Yaselli v. Goff,* 12 F.2d 396 (CA 2, 1926), aff'd 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395; *Rammage v. Kendall,* 168 Ky. 26, 181 S.W. 631; see fn. 1(jj), supra; *Winters National Bank v. Scheor Realty Group,* 25 B.R. 463, 9 B.C.D. 1210 (Bkrtcy.S.D.Ohio, 1982); Tip-Pa-Hans Enterprises v. Atco Electric Co., Inc. (In re Tip-Pa-Hans Enterprises Co., Inc., 27 B.R. 780 (Bkrtcy.W.D.Va.1983).

through a reorganization plan under the bankruptcy power, it seems less likely that the alteration of real property rights may be allowed in any proceeding determined by a non-Article III judge.[104]

The Local Rule of the District Court cannot give constitutional sanction to any action by the non-Article III judge in such matters where the Supreme Court in *Northern Pipeline* has prohibited the exercise of such jurisdiction as allowed under § 241(a). To the extent that the Rule asserts the legal authority of the undersigned to do so, the Rule is invalid and the undersigned may not legally or constitutionally act to enter the order which adjudicates such rights of contract and property. As to the power of the District Court to act in a matter, that determination is for that court when it arises. Because that power of the Bankruptcy Judge to hear the instant matter derives from the Local Rule and because the District Court which promulgated the Local Rule is without jurisdiction over this bankruptcy case and proceeding, and without the additional power to refer or confer jurisdiction and judicial authority to act to a Bankruptcy Judge, the undersigned is likewise without constitutional power to consider and act in the instant proceeding by reference or otherwise.

Further, this court declines to exercise such jurisdiction in this diputed matter for the reason that no judicial immunity is available to protect the undersigned from possible liability for such judicial acts.[105]

This opinion will be made a part of orders in motions to dismiss in several other proceedings in other cases ruled upon contemporaneously.

IT IS SO ORDERED.

## APPENDIX A

### Table of Contents

(I.) The Reform Act

(II.) House Report to H.R. 8200

(III.) Senate Report to S. 2266

(IV.) Statements of Congressional Leaders

(V.) Reform Act Passed on October 6, 1978

### *(I). The Reform Act*

The Title IV—Transition provided extended terms of office and immediate additional rights and powers for Bankruptcy Judges:

(1) "The term of a referee in bankruptcy who is serving on the date of enactment of this Act is extended to and expires on March 31, 1984, when his successor takes office. During the period commencing October 1, 1979, and ending on March 31, 1984 (hereinafter in this title referred to as "the transition period") ... such a referee in bankruptcy ... shall have the title of United States Bankruptcy Judge, and shall serve in the court of bankruptcy continued under section (a) of this section that appointed such United States bankruptcy judge, in the manner prescribed by this title." § 404(b).

(2) Section 404(e) provides the existing Bankruptcy Judges the necessary staff and facilities during Transition:

"During the Transition period, the United States bankruptcy judges of each district may appoint a clerk, necessary other employees, ... the same as a United States bankruptcy court established under section 201 of this Act may appoint such officers and employees .... The United States bankruptcy judges of each district shall have the same rights and powers as a United States bankruptcy court established under section 201 of this Act with respect to such clerk, other employees and reporters."

---

**104.** *Railway Labor Executives Associations v. Gibbons,* 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982).

**105.** See fn. 1(jj), *supra;* fn. 104, *supra; Broom v. Douglass,* 175 Ala. 268, 57 So. 860; *Savacool v. Boughton,* 5 Wend 170 (NY); *Bigelow v. Stearns,* 19 Johns 168 (NY); and see *Winters v. Schear,* fn. 103 *supra.*

NOTE: Thus, the Clerk of Court and employees are under the authority of the Bankruptcy Judges during Transition.

(3) As to jurisdiction during Transition, § 405(a)(1) provides:

"All cases commenced under Title 11 of the United States Code during the Transition period shall be *referred to* the United States bankruptcy judges. The United States bankruptcy judges may *exercise* in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by section 404(a) of this Act, and all proceedings in such cases *shall be before* the United States bankruptcy judges, except ...." [Emphasis supplied].

NOTE: Therefore, all Title 11 cases are automatically referred by statute to the Bankruptcy Judge during Transition.

(4) The exceptions of enjoining another court and certain punishments of contempts during Transition are referenced again in subsection (a)(2) of Section 405:

"(2) Except as provided in subsection (c) of this section ... [subsection (c) provides for appeals from orders of "a United States bankruptcy judge" to bankruptcy appellate panels, if established, circuit courts, or district courts of the "district in which the bankruptcy judge sits"] ...."

Subsection (c)(2) of Section 405 provides:

"During the Transition period, the jurisdiction of the district courts, the courts of appeals, and panels of bankruptcy judges *shall be the same as* the jurisdiction of such courts and panels granted under the amendments made by sections 236, 237, 238 and 241 of this Act *to hear appeals* from the judgments, orders and decrees of the bankruptcy courts established under section 201 of this Act." [Emphasis supplied].

NOTE: Thus, § 404(b) provides that during the period of Transition the existing Bankruptcy Judges are "vested" (as *Northern Pipeline* found, 102 S.Ct. 2878–80) with the jurisdiction and powers conferred by the Bankruptcy Reform Act [Section 404(b)], which includes jurisdiction of "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11."

(5) Subsection (d) of Section 405 provides the procedure during Transition and thereafter:

"The rules prescribed under Section 2075 of Title 28 of the U.S.C. and in effect on September 30, 1979, shall apply to cases under Title 11, to the extent not inconsistent with the amendments made by this Act, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act." § 405(d).

NOTE: The Bankruptcy Rules, Part VIII, provide the procedure for appeals of orders from the Bankruptcy Judges to the District Court. These existing rules are not inconsistent with, in fact, are consistent with, the existing Bankruptcy Rules until the Supreme Court and Congress, pursuant to 28 U.S.C. § 2075, change them. These Bankruptcy Rules are binding on the District Courts and Bankruptcy Courts.

*(II.) House Report to H.R. 8200*

(1)(a) "The purpose of the transition period is to allow time for a study of the number of bankruptcy judges needed under the new court system ..." (*Id.* p. 287 [U.S.Code Cong. & Admin.News 1978, p. 6243]). The bill creates a new court system, and substantially changes the administration of bankruptcy cases ... (p. 287).

(b) "However, the bill also expands the jurisdiction of the bankruptcy court, bringing into the bankruptcy court law suits that might now be brought elsewhere. This will increase the need for bankruptcy judges under the bill ..." (*Id.* p. 287 [U.S.Code Cong. & Admin.News 1978, p. 6244]).

(c) "Thus, the number of judges needed under the bill is uncertain. However, only operation [during the Transition period] under the new law will give the definitive answer to the needs of the new court system." (*Id.* p. 287 [U.S.Code Cong. & Admin.News 1978, p. 6244]).

(d) "Thus, the transition period is designed to *simulate operation . . . under the new law and new court structure* in order to permit an accurate measurement of the needs of the bankruptcy system. The Director of the Administrative Office of the United States Courts is required to perform a study of the bankruptcy system during the transition period to determine the number of new judges needed after transition, and to report the results of that study to Congress for Congressional authorization of the new positions." [Emphasis supplied]. (*Id.* p. 287 [U.S.Code Cong. & Admin.News 1978, p. 6244]).

(e) "The change in the court system will begin partially effective on October 1 . . . the existing bankruptcy courts will remain in place as adjuncts of the district courts which are continued as the "courts of bankruptcy." The courts of bankruptcy will, however, be designated as a separate department of the district courts. The existing bankruptcy judges will hear cases commenced under the new bankruptcy law, and will continue to hear all matters and proceedings pending under the former bankruptcy act. Their jurisdiction with respect to new cases will change. Bankruptcy judges during the transition period will have the same jurisdiction that the bankruptcy judges of the new Article III court will have [when the new court commences]. The appellate jurisdiction of the district courts over the orders, decrees and judgments of the bankruptcy judges will be changed with respect to the new cases under Title 11 to be the same as the jurisdiction that the courts of appeal will have over the orders, decrees, and judgments of the new Article III bankruptcy courts in . . . [1984]." (*Id.* p. 288 [U.S.Code Cong. & Admin.News 1978, pp. 6244–6245]).

(f) "The expansion of jurisdiction of the bankruptcy courts during the transition period while they continue as adjuncts of the district courts should not raise any constitutional issues as if the system were permanent. As Mr. Justice Harland noted in *Glidden v. Zdanok,* Congress has greater flexibility in establishing a court system for a transitory purpose, where the jurisdiction is to be exercised for a short period and will not become permanent. Nevertheless, in order to avoid any doubts, *two limitations that exist on the powers of the bankruptcy courts today are continued during the transition period.* The bankruptcy courts will not be permitted to enjoin other courts, and they will not be permitted any greater contempt powers than they have under the current Rules of Bankruptcy Procedure." [Emphasis supplied]. (*Id.* p. 288 [U.S.Code Cong. & Admin.News 1978, p. 6245]).

(g) "The terms of all the bankruptcy judges that are serving on the date of enactment of H.R. 3200 will be extended until the end of the transition period. . . . During the experimental phase, that is the five-year transition period, it is important to have experienced judges on the benches. The period is critical in an examination of the system and a proper evaluation of the needs of the system, and new, inexperienced judges would be detrimental to this move transition from the current system to the new. . . ." (pp. 287–289 [U.S.Code Cong. & Admin.News 1978, pp. 6243–6246]).

(h) "In order to permit an accurate measurement of the personnel needs of the new court system and an accurate study by the Administrative Office, the bill ensures that bankruptcy courts during the transition period will have the same staff and the same control over their staff as the judges of the court will after the transition period. Thus, during transition, bankruptcy judges will be restored to control of their court clerks . . ." (*Id.* p. 289 [U.S.Code Cong. & Admin. News 1978, p. 6246]).

"Once this system is in place [during the transition period], the Administrative Office will be able to begin measurement of the system." (*Id.* p. 289 [U.S.Code Cong. & Admin.News 1978, p. 6246]).

(2) The provisions relating to Transition in H.R. 8200 and in S.2266 were not changed by any amendments which produced the 1978 Act. The Transition provisions applied to the continued, changed court irrespective of whether it was the H.R. 8200 Article III court or the so-called "adjunct"

court of S.2266. Hence, the House Report, here, and Senate Report (at III. to follow), reference Transition are completely relevant as revealing congressional intention in the Act.

Section 404 of the House Report states:

"The purpose of Section 404 is *to continue the present bankruptcy court system* during the Transition period, with changes that are necessary to make the *Transition system* enough *like the proposed new court system* so that *the measurement process of caseload and judicial time requirements will be accurate.* Subsection (a) continues the court system as under the Bankruptcy Act, but makes the courts of bankruptcy a separate department of the district court." [Emphasis supplied]. p. 459 [U.S.Code Cong. & Admin.News 1978, p. 6415].

(3) The House Report continues reference Section 404:

"Subsection (b) *protects existing bankruptcy judges during* the *transition* period. It provides that the *terms of all bankruptcy judges* sitting on the date of enactment of the legislation *are extended to the end of the transition period,* and gives the current referees the *statutory title of 'United States bankruptcy judge.'* The reason for this provision is to *prevent* the *district judges,* based solely on political or patronage considerations, *from removing* experienced *bankruptcy judges* from the bench. Feeling among the district benches is running high against bankruptcy judges for their role in the formulation of this legislation. There has been some fear that retaliation may take the form of unrenewed appointments of sitting bankruptcy judges. Such a result would seriously impair the conduct of the transition period, *for it is important to have experienced judges on the bench during the early phases of the implementation of this new law.* Finally, toward the end of the transition period, patronage considerations may induce appointments of those who seek appointments to the new bench, in preference to the sitting judges." [Emphasis supplied]. p.

459–460 [U.S.Code Cong. & Admin.News 1978, p. 6415].

. . . "Subsection (d) gives the *bankruptcy judges* the same staff and *control over staff* as the new court will have after 1983. These provisions will aid in the administration of the bankruptcy courts, and *provide a better estimate of the need for judges* after the transition period . . . ." [Emphasis supplied]. p. 460 [U.S.Code Cong. & Admin.News 1978, p. 6415].

NOTE: It seems clear from the above quotes, and especially the statements emphasized, that the House Report considers the new court to be functionally in place as the *de facto* United States Bankruptcy Court under the authority of existing Bankruptcy Judges during the Transition period, although *de jure* the *new* court is not officially ordained until the end of the Transition period. Certainly, the Bankruptcy Judges become Title 28 Bankruptcy Judges on October 1, 1979, and during Transition as well as after April 1, 1984, are *protected* from removal and retaliation by District Judges and are removed from any supervision or direction by District Judges. p. 460–461.

(4) The House Report continues at p. 460:

"The thrust of Section 405 is to provide *the transition bankruptcy courts* with *the same jurisdiction and powers* as the proposed new United States bankruptcy court system created under Title II of the bill. The *procedure of the transition court will also be the same as the procedure established* under Title 11 *for the new court system. Appeals will be by the same standards* as well. Subsection (a)(1), however, places certain limits on the powers of United States bankruptcy judges during the transition period. These limits are some of the same limits that are placed on current bankruptcy judges, by the Bankruptcy Act and Rules, and are felt to be the minimum constitutionally required in light of the non-tenured status of the bankruptcy judges. The two limits are on the power to enjoin another court." [Emphasis supplied]. p.

460 [U.S.Code Cong. & Admin.News 1978, p. 6416].

NOTE: The jurisdiction and powers of the Transition Bankruptcy Court and appellate procedure and standard of appeal (i.e., from Bankruptcy Judge orders to District Court Appellate Panels to Court of Appeals) is the same as after April 1, 1984.

(5) Title II of the 1978 Act referenced in the above quote contains amendments to Title 28 United States Code and to the Federal Rules of Evidence.

"Subsection (d) continues the present rules of bankruptcy procedure into the transition period, to the extent they are not inconsistent with the bill. The Supreme Court, under the rule-making authority in 28 U.S.C. 2075, will be able to amend or supercede these rules in order to fill in any gaps created by the enactment of a new bankruptcy law, and to conform the rules to the new law." p. 460 [U.S.Code Cong. & Admin.News 1978, p. 6416].

NOTE: Since early 1979, the Advisory Committee on the Bankruptcy Rules has been at work on the new rules. Its report was made to the Judicial Conference in August 1982 and the Judicial Conference recommended the rules package to the Supreme Court in September 1982.

*III. Senate Report to S.2266*

NOTE: S. 2266 offered a different Bankruptcy Court from the H.R. 8200 Article III court. The Article III court was not enacted. The S. 2266 adjunct Bankruptcy Court was not enacted. A compromise between the two proposals was adopted. The structure of the statutory scheme of H.R. 8200 was enacted, a separate and independent Bankruptcy Court was enacted, but the term "adjunct" used in S. 2266 was used in 28 U.S.C. § 151; and the device of a transitory flow of jurisdiction through an Article III court as a conduit to the non-Bankruptcy Court was used. The Senate Report concerning the grant to commentary is relevant, however, to show that, even under the S. 2266 "adjunct" status, the Bankruptcy Court was "functionally independent" and the jurisdiction was to be "exclusively" exercised by the Bankruptcy Judges even during Transition.

(1) The Senate Report dated July 14, 1978 [Cong.Rec. Vol. 124 (1978) ] Senate Report No. 95–989 states re Title 11 at p. 15:

"TITLE II—AMENDMENTS TO TITLE 28 UNITED STATES CODE AND TO THE FEDERAL RULES OF EVIDENCE

ESTABLISHMENT OF BANKRUPTCY COURT, APPOINTMENT OF BANKRUPTCY JUDGES, AND JURISDICTION

"The need for a *functionally independent bankruptcy court* has been demonstrated beyond question, first by the study and recommendations of the Commission on the Bankruptcy Laws of the United States, by knowledgeable witnesses before the Subcommittee, in published commentary, as well as through long practical experience under the present referee system. A considerable body of opinion has developed in support of *the establishment of a bankruptcy court separate from the United States district court,* either as ...

... It is the view of the subcommittee that the establishment of the new bankruptcy court as *an adjunct of the United States district court* offers several important advantages...." [Emphasis supplied]. p. 15–16 [U.S.Code Cong. & Admin.News 1978, pp. 5801–5802].

(2) Senate Report on S. 2266 (No. 95–989), dated July 14, 1978 (124 Cong.Rec. [1978] ), beginning as quoted above at p. 15, continued at p. 16:

... "The appointment of bankruptcy judges by the district court has contributed significantly (1) to a real and apparent dependency on the part of the bankruptcy court and its judges upon the district courts which appoint and review the decisions of bankruptcy judges, and (2) to the image of the bankruptcy court as the stepchild of the district court. This bill is *designed to eliminate both the real and apparent dependency and subservience of the bankruptcy court,* in part by vesting

the power to appoint bankruptcy judges in the courts of appeals, rather than in the district courts. The change is further warranted by the need to do away with the unseemly appellate practice whereby the district judge or judges who appoint the bankruptcy judge often rule on appeals from the orders of their own appointees." [Emphasis supplied]. pp. 16–17 [U.S.Code Cong. & Admin.News 1978, pp. 5802–5803].

"There will be a twelve-year term of office for bankruptcy judges appointed under new 28 U.S.C. § 152. The present six-year term is insufficient to attract the calibre of individual needed to perform the highly demanding and important functions of the office of bankruptcy judge. By doubling the term of office for future bankruptcy judges it is anticipated that a major goal of this reform legislation, *the establishment of a functionally independent bankruptcy court, can be further advanced....*" [Emphasis supplied]. p. 17 [U.S.Code Cong. & Admin.News 1978, p. 5803].

"... *A bankruptcy judge* whose term expires *is permitted to continue to serve until a successor* is appointed and *qualifies.*" p. 17 [U.S.Code Cong. & Admin. News 1978, p. 5803].

"*A major impetus* underlying this reform legislation *has been* the need *to enlarge the jurisdiction of the bankruptcy court* in order to eliminate the serious delays, expense and duplications associated with the current dichotomy between summary and plenary jurisdiction, a wasteful remnant of the referee system left over from the pre-Chandler Act era. For fully four decades, and more notably during the present decade, referees in bankruptcy have served as trial judges of the bankruptcy court whose orders are final unless a timely appeal is taken to the district court. Yet the jurisdictional limitations presently imposed on the bankruptcy courts have embroiled the court and the parties in voluminous litigation whose sole function is to determine whether the court possesses the requisite summary jurisdiction to determine the merits of

issues often necessarily heard by the court in determining its jurisdictional question. Upon a finding that it lacks summary jurisdiction, the bankruptcy court is required to dismiss the action, whereupon it is necessary for the parties to proceed anew with a plenary action in either the U.S. district court or an appropriate state court to try issues already substantially tried in the summary proceedings before the bankruptcy court. Frequently, the liquidation of bankrupt estates and the rehabilitation of debtors are significantly prejudiced thereby." [Emphasis supplied]. pp. 17–18 [U.S. Code Cong. & Admin.News 1978, pp. 5803–5804].

"*The advent of the Rules* of Bankruptcy Procedure, with their automatic reference of most bankruptcy matters to the referee in bankruptcy and their scrupulous insistence upon procedural due process, *have underscored the absurdity of perpetuating these jurisdictional limitations* in bankruptcy cases arising under title 11 and civil actions and proceedings arising under or related to cases under title 11." [Emphasis supplied]. p. 18 [U.S.Code Cong. & Admin.News 1978, p. 5804].

"*It is the purpose* of new section 164 of title 28, United States Code, *in conjunction with 28 U.S.C. section 1334,* as amended by section 216 of this act, *to eliminate entirely the present jurisdictional dichotomy* between summary and plenary jurisdiction. *Therefore,* except where the bankruptcy court abstains from hearing an action or proceeding arising under or related to a case under title 11, *all cases under title 11 and all civil actions and proceedings* arising under or related to cases under title 11 *are to be before the bankruptcy judge.*" [Emphasis supplied]. p. 18 [U.S.Code Cong. & Admin.News 1978, p. 5804].

"Jurisdiction in bankruptcy cases and in civil actions and proceedings arising under or related to bankruptcy cases is vested directly in the district courts by 28 U.S.C. section 1334, as amended by section 216 of this act, consistent with the

establishment of new bankruptcy courts as adjuncts of the United States district courts, pursuant to 28 U.S.C. section 151. Sections 164 and 1334 of title 28, United States Code, as enacted and amended by sections 201 and 216 of this bill while conferring expanded jurisdiction in bankruptcy cases and related civil actions and proceedings directly upon the district courts, *delegate the exclusive exercise of that jurisdiction at the trial level to bankruptcy judges, except* as provided in subsection (d)(2) of section 1334, as amended." [Emphasis supplied]. p. 18 [U.S. Code Cong. & Admin.News 1978, p. 5804].

NOTE: In contrast with H.R. 8200, recommended by the House Judiciary Committee with House Report No. 95–595, 95th Congress, 1st Sess., dated September 8, 1977, which was passed by the House February 1, 1978, and created a separate and independent Article III United States Bankruptcy Court with jurisdiction the same as Section 241(a) (28 U.S.C. 1471) of the Reform Act, the Senate bill, S. 2266, with Report dated June 28, 1978, recommended a functionally separate and independent non-Article III court statutorily appended to the District Court as "adjunct."

(3) *Re: 28 U.S.C. 1334:* While the House Bill H.R. 8200, and as finally contained in the Reform Act, provided the bankruptcy trial jurisdiction in a new chapter 90 via § 241(a) and 28 U.S.C. § 1471, Section 216 of S. 2266 would have provided the bankruptcy jurisdiction through 28 U.S.C. 1334. Thus § 1334, as proposed by the Senate bill contain District Court and Bankruptcy Court was different (e.g., municipals and railroad in District Court), from the final Reform Act. It must be distinguished from 28 U.S.C. § 1471 of the Bankruptcy Reform Act as enacted November 6, 1978. The Senate Report at § 216, p. 153 [U.S.Code Cong. & Admin.News 1978, p. 5939], stated: "This section amends 28 U.S.C. 1334 relating to the jurisdiction of the U.S. district court over bankruptcy proceedings. In deference to the concern over the splintering of the jurisdiction of the district court, original and exclusive jurisdiction over all bankruptcy cases shall re-

main in the district court, and the jurisdiction of the district courts over bankruptcy matters is expanded to include all controversies arising out of or related to a case under Title 11. However, the (a) *statutory scheme has been adopted whereby the totality of this jurisdiction,* subject only to the exceptions set forth in subsection (d) of this section, *shall be exercised by the bankruptcy court,* which is created as an adjunct of each U.S. District court."

This proposed use of 28 U.S.C. 1334 in § 216 of S. 2266 instead of 28 U.S.C. 1471 to confer Title 11 jurisdiction is also in contrast to the new 28 U.S.C. 1334 "Bankruptcy appeals" enacted through § 238 of the Reform Act which makes new § 1334 "Bankruptcy appeals" exclusively a vehicle for conferring only appellate jurisdiction on the District Court.

(4) The Senate Report stated at p. 153: "Subsection (a) of this section gives the U.S. district courts original and exclusive jurisdiction of all cases under Title 11. *To facilitate the exercise of this jurisdiction by the bankruptcy court* provision is made elsewhere for the case to be filed directly with the clerk of the bankruptcy court." (Section 216, p. 153 [U.S.Code Cong. & Admin.News 1978, p. 5939]).

NOTE: Thus, even Senate bill S.2266 which provided original and exclusive Title 11 jurisdiction in the District Courts, provided for the cases to be filed in the Clerk of the *functionally independent* Bankruptcy Court. (Senate Report, pp. 153 and 15–17)

(5) The Senate Report to S.2266 continued at P. 153:
"Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under Title 11 or arising under or related to cases under Title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts to the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions

that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent and bases for jurisdiction is eliminated. *The adjunct bankruptcy courts will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case.* [Emphasis supplied]. p. 153.

*The jurisdiction to be exercised by the bankruptcy court is of all proceedings* arising under title 11 or arising under or relating to a case under Title 11. The term "proceeding" is used instead of "matters and proceedings," the terminology currently used in the Bankruptcy Act and Rules. Thus, *proceeding* here is used in its broadest sense, and *would encompass* what are now called contested matters, adversary proceedings, and *plenary actions* under current bankruptcy law. It also includes all disputes related to administrative matters in a bankruptcy case...." [Emphasis supplied]. p. 153–154 [U.S.Code Cong. & Admin.News 1978, pp. 5939–5940].

(6) The Senate Report to S. 2266 continued at p. 154:

"The phrase 'arising under Title 11' will enable the bankruptcy court to hear *any matter* under which a claim is made *under* a provision of *Title 11.* The combination of the three bases for jurisdiction ... will *leave no doubt as to the scope of the jurisdictional disputes to be exercised by the Bankruptcy Court.*" [Emphasis supplied].

"Subsection (c) permits the bankruptcy court, in the interest of justice, to abstain from hearing a particular proceeding arising under Title 11 or arising under or related to a case under Title 11, and makes the abstention, or a decision not to abstain, non-reviewable. The subsection recognizes there may be cases in which it is more appropriate to have a State court hear a particular matter of State law."

NOTE: The Senate Report at § 216, pp. 153–154, leaves no doubt that the real grant, the exercisable grant of Title 11 jurisdiction (except for municipal and railroad cases) was *vested* "exclusively" in the Bankruptcy Judges. The subsection (c) merely gives the Bankruptcy Judge complete abstention discretion as to what jurisdiction it choses to exercise under "arising under Title 11 or arising under or related to a case under Title 11."

(7) The Report to S. 2266 at p. 154 re-emphasizes and reinforces the comments at p. 153 [U.S.Code Cong. & Admin.News 1978, p. 5940]:

"Subsection (d) ... restricts the power of the bankruptcy judge *in only two areas* which have traditionally been reserved to district judges. (1) The adjoining of another court, and (2) the imposition of punishment for contempt of court. District judges are to conduct cases under chapter 9 and railroad reorganization cases under chapter 11. *Otherwise, bankruptcy judges shall have full and complete responsibility for cases under Title 11 and all litigation arising out of such cases.* The use of the term 'may' in this section *is not intended to imply that the District Court has any discretion whatsoever* in withholding bankruptcy cases or civil proceedings arising under Title 11 or arising under or related to a case under Title 11 *from the bankruptcy court.*

NOTE: It should be noted that in the Reform Act, the District Court is not given any discretion or authority over jurisdiction either *to grant,* refer, or to *withhold.*

(8) The Senate Report continued at p. 154:

The powers of the bankruptcy judge ... include the power to conduct all proceedings under Title except in municipal adjustments and railroad reorganization cases, and the power to conduct trials and al other proceedings in actions under § 1334(b) of this title. *It is the intent of these provisions that the bankruptcy court will receive*[1] *and the bankruptcy judge will handle*[1] *cases and proceedings*

1. Note "receive" and "handle."

*under Title 11, and that all actions filed under § 1334(b), except those arising in connection with municipal adjustment and railroad reorganization cases will be automatically referred to the bankruptcy judge.* It is contemplated that Rules of Bankruptcy Procedure will be adopted to carry out this intent in order that *the bankruptcy judge shall exercise the full range of jurisdiction* in bankruptcy cases and proceedings. *Except* for municipal adjustment and railroad reorganization cases, the district judge will be expected to act in Title 11 cases only in limited instances (1) Where it is necessary to adjoin a State or Federal court or (2) to punish a person for contempt by imprisonment or by a fine of more than $1,000.00. *Otherwise, the district judge will function only as an appellate judge in bankruptcy matters,*[2] as provided in subsection (e) of this section." p. 154 [U.S.Code Cong. & Admin.News 1978, p. 5940]. [Emphasis supplied].

NOTE: Subsection (d) emphasizes that the District Judges have no trial jurisdiction during the Transition period except as to the two limitations placed on Bankruptcy Judges by 28 U.S.C. § 1481. In contrast to S. 2266, the Reform Act as enacted confers jurisdiction in municipal and railroad reorganization cases on the Bankruptcy Judges. The reference in the Senate Report to the sole appellate role of District Judges in bankruptcy cases shows that under the Reform Act the old 28 U.S.C. § 1334 is not intended to allow any bankruptcy trial court jurisdiction in the District Judges.

(9) The Senate Report made clear that the District Judge had only appellate jurisdiction of orders of Bankruptcy Judges.

The Senate Report continues at p. 154: "Subsection (e)(1) confers upon the District Court for each judicial district jurisdiction of appeals from . . . the bankruptcy court. . . . Subsection (e)(2) provides that the decisions of the bankruptcy court shall be final unless notice of appeal to a district judge is timely filed. It is contemplated that the manner and time for filing notice of appeal will be set forth in the Rules of Bankruptcy Procedure." pp. 154–155 [U.S.Code Cong. & Admin.News 1978, pp. 5940–5941].

(10) The Senate Report includes a section-by-section analysis of the Transition provisions at p. 166 essentially identical to the House version and the Reform Act. However, the Senate Report at p. 20 had some additional relevant comments (p. 20 [U.S.Code Cong. & Admin.News 1978, p. 5806] ):

### "TITLE IV—TRANSITION

In order to accomplish a smooth transition between the old bankruptcy law and procedures and the new law, the committee felt it necessary to have special provisions for a transition period. These provisions are contained in Title IV. The basic provision of this title calls for a 3-year *transition period* beyond the effective date of October 1, 1979. This *is intended to ensure the availability of a cadre of experienced bankruptcy judges* for service on the bankruptcy bench *between the enactment of the act* and October 1, 1982. It is in the public interest that *bankruptcy judges in office on the date of enactment be continued in service,* since the attraction of replacement judges from the private sector to serve a 3-year term would be extremely difficult. The acquired experience of the incumbent bankruptcy judges is a public resource which cannot be replaced until such time as their successors have seen equivalent service on the bankruptcy bench. *Thus, the terms of bankruptcy judges serving at the date of enactment are extended* through September 30, 1982, and a bankruptcy judge in office on the enactment date of this Act whose regular term extends beyond September 30, 1982, *is permitted to complete the term* for which he was originally appointed even though it may extend beyond September 30, 1982.

---

**2.** Note restriction of District Judge to appellate role as per new 28 U.S.C. § 1334.

To help assure that only qualified bankruptcy judges shall serve during the transition period, a merit screening committee is created to evaluate the qualifications of each incumbent referee whose term of appointment expired prior to October 1, 1982. *Bankruptcy judges serving* between the enactment of this bill and October 1, 1982, are conferred with the *powers of a judge* appointed under section 201 of the bill, *which include "the powers conferred upon the bankruptcy courts by this act."* [3]

"The provisions of the bill are not to affect cases commenced under prior law, which are to proceed, with respect to both substantive and procedural matters, in the same fashion as though this act was not in effect. The bill provides that rules of bankruptcy procedure and various fees and charges in effect on October 1, 1979 (the effective date of the bill), shall continue in effect until superseded by new rules or fees promulgated in accordance with the act. However, the rules shall apply only if not inconsistent with the act. To help the Congress and the Judicial Conference evaluate the impact of the new bankruptcy law, the Director of the *Administrative Office of U.S. Courts will conduct a survey to determine the number of judges needed to implement the provisions of the act* and report the results of the study to Congress and to the Conference by or before July 1, 1982. The committee feels that *the 33-month period* between the effective date and the date the report is due *will be sufficient time for meaningful data and workload patterns to have evolved* upon which to base judgment on the needs of the bankruptcy courts for numbers and distribution of personnel." [Emphasis supplied].

NOTE: Obviously, unless only Bankruptcy Judges during the Transition period exercise the "totality" of Title 11 jurisdiction "exclusively," the Administrative Office would not have "meaningful data and workload patterns." District Judge jurisdiction simply was not contemplated or in-

**3.** Note the Report's emphasis on the quote.

tended, i.e., was prohibited during Transition.

(11) The Senate Report to S. 2266 provided in its section-by-section analysis of Title IV—Transition, Section 402 ... *incumbents,* at p. 166:

"Subsection (e) [of § 402] confers upon each referee in bankruptcy serving on the date of the enactment of this Act, *the title of bankruptcy judge and vests in him all of the rights and powers vested in a Bankruptcy Judge* appointed under Section 201 of the Act. Therefore, the *broadened jurisdiction* conferred by 28 U.S.C. § 1334, as amended by § 216 of this Act *is exercisable by incumbent bankruptcy judges serving on and after the date of the enactment of this Act,* except to the extent such exercise would be inconsistent with the provisions of § 403 of this Act." p. 166 [U.S.Code Cong. & Admin.News 1978, p. 5952.] [Emphasis supplied].

NOTE: The purpose of the S. 2266 grant of jurisdiction to the "incumbent Bankruptcy Judges" during Transition was to make studies to determine the number of Bankruptcy Judges needed at April 1, 1984. That expression of congressional intention reveals the same purpose reference Transition as obtains under Sections 404 and 405 of the Reform Act as enacted.

(12) Section 404 [405] Transition of the Senate Report at page 167 provides:

"Section 405 *Transition study.*

Section 405 requires the Director of the Administrative Office of the United States Courts (1) *to complete a study to determine the number of Bankruptcy Judges needed* to implement the provisions of this Act and (2) to report the results of that study to the Congress and to the Judicial Conference before July 1, 1982." p. 167 [U.S.Code Cong. & Admin. News 1978, p. 5953].

"The *Transition period* prescribed in Section 402(a)(b) *is necessary in view of the time required to acquire meaningful and empirical data under the vastly enlarged*

*jurisdiction and altered structure of the new bankruptcy court."* [Emphasis added]. p. 167 [U.S.Code Cong. & Admin. News 1978, p. 5953].

NOTE: The Judiciary Committee equated the "new court" after April 1, 1984 with the Transition court headed by the incumbent Bankruptcy Judges.

(13) "The broadened jurisdiction and powers of the new bankruptcy courts pertain only to cases commenced after October 1, 1979.... The committee feels a 3-year Transition period should be sufficient to enable the Director to conduct a meaningful study on which to base his report to the Congress...." (p. 167 [U.S.Code Cong. & Admin.News 1978, p. 5953])

"Since implementation of the approved changes may be infeasible within the allotted time, section 402(d), authorizing bankruptcy judges to continue to serve until their successors are appointed and qualified, permits the bankruptcy courts to continue to function *under the direction* of *incumbent transition bankruptcy judges* until the numbers and locations of bankruptcy court judgeships can be established under this section." (p. 168 [U.S.Code Cong. & Admin.News 1978, p. 5954])

NOTE: Thus, during Transition, the "bankruptcy courts": [not a reference to "courts of bankruptcy;" courts of bankruptcy were *altered* by §§ 402, 404, 405 (Senate Report p. 166) to a much different court].

*(IV.) Statement of Congressional Leader*

(1) Statement of the Honorable Dennis DeConcini, Chairman of the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, upon introducing the Senate amendment to the House amendment to H.R. 8200, October 6, 1981, 124 Congressional Record, S. 17406:

"... Section 201 of the House amendment creates in each judicial district a bankruptcy court that is an *adjunct to the Circuit Court of Appeals* for the district....

Section 241 of Title II establishes a new chapter 90 of Title 28 entitled Court of Appeals and bankruptcy courts. This chapter specifies the jurisdiction and venue in bankruptcy cases and specifies various powers of the bankruptcy courts. The chapter *grants the courts of appeal* original and exclusive *jurisdiction* of all cases under Title 11. That *jurisdiction in turn is completely delegated to the bankruptcy court* with the sole exception of punishment of contempts by imprisonment and enjoining of the courts. The bankruptcy court is thus *given pervasive jurisdiction over all proceedings* arising in or relating to bankruptcy cases. In addition, the bankruptcy court is given exclusive jurisdiction of the property of the estate in a case under Title 11. This represents a major improvement over present law where the distinction between summary and plenary jurisdiction often results in wasteful litigation...." [Emphasis supplied].

(V.) Reform Act Passed on October 6, 1978

Bankruptcy Reform Act —

DeConcini Amendment.
Passed Senate 5 Oct, 1978
Passed House 6. Oct, 1978

*In the House of Representatives, U. S.,*

*September 28, 1978.*

*Resolved,* That the House agree to the amendment of the Senate to the bill (H.R. 8200) entitled "An Act to establish a uniform Law on the subject of Bankruptcies", with the following

## AMENDMENT:

In lieu of the matter inserted by the Senate amendment, insert:

## TITLE I—ENACTMENT OF TITLE 11 OF THE UNITED STATES CODE

SEC. 101. *The law relating to bankruptcy is codified and enacted as title 11 of the United States Code, entitled "Bankruptcy", and may be cited as 11 U.S.C. § , as follows:*

### TITLE 11—BANKRUPTCY

| CHAPTER | Sec. |
|---|---|
| 1. GENERAL PROVISIONS | 101 |
| 3. CASE ADMINISTRATION | 301 |
| 5. CREDITORS, THE DEBTOR, AND THE ESTATE | 501 |
| 7. LIQUIDATION | 701 |
| 9. ADJUSTMENT OF DEBTS OF A MUNICIPALITY | 901 |
| 11. REORGANIZATION | 1101 |
| 13. ADJUSTMENT OF DEBTS OF AN INDIVIDUAL WITH REGULAR INCOME | 1301 |
| 15. UNITED STATES TRUSTEES | 1501 |

(C) *modification of the plan after confirmation;* and

(3) *advise, other than on legal matters, and assist the debtor in performance under the plan.*

§ 151326. *Payments*

Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and

(2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.

# TITLE II—AMENDMENTS TO TITLE 28 OF THE UNITED STATES CODE AND TO THE FEDERAL RULES OF EVIDENCE

SEC. 201. (a) Title 28 of the United States Code is amended by inserting immediately after chapter 5 the following:

## "CHAPTER 6—BANKRUPTCY COURTS

"Sec.
"151. Creation and composition of bankruptcy courts.
"152. Appointment of bankruptcy judges.
"153. Tenure and residence of bankruptcy judges.
"154. Salaries of bankruptcy judges.
"155. Chief judge; precedence of bankruptcy judges.
"156. Division of business among bankruptcy judges.
"157. Times of holding court.
"158. Accommodations at places for holding court.
"159. Vacant judgeship as affecting proceedings.
"160. Appellate panels.

"§ 151. Creation and composition of bankruptcy courts

"(a) There shall be in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district.

"(b) Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service. Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court.

"(c) Except as otherwise provided by law, or rule or order of court, the judicial power of a bankruptcy court with respect to any action, suit or proceeding may be exercised by a single bankruptcy judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other bankruptcy judges.

"§ 152. Appointment of bankruptcy judges

"The President shall appoint, by and with the advice and consent of the Senate, bankruptcy judges for the several judicial districts. In each instance, the President shall give due consideration to the recommended nominee or nominees of the Judicial Council of the Circuit within which an appointment is to be made.

"§ 153. Tenure and residence of bankruptcy judges

"(a) Each bankruptcy judge shall hold office for a term of 14 years, but may continuue to perform the duties of his office until his successor takes office, unless such office has been eliminated.

## "CHAPTER 90—DISTRICT COURTS AND BANKRUPTCY COURTS

"Sec.
"1471. Jurisdiction.
"1472. Venue of cases under title 11.
"1473. Venue of proceedings arising under or related to cases under title 11.
"1474. Venue of cases ancillary to foreign proceedings.
"1475. Change of venue.
"1476. Creation or alteration of district or division.
"1477. Cure or waiver of defects.
"1478. Removal to the bankruptcy courts.
"1479. Provisional remedies; security.
"1480. Jury trials.
"1481. Powers of bankruptcy court.
"1482. Appeals.

"§ 1471. Jurisdiction

"(a) Except as provided in subsection (b) of this section, the ~~courts of appeals~~ district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the ~~courts of appeals, the courts of appeals~~ district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the ~~courts of appeals~~. district courts.

"(d) Subsection (b) or (c) of this section does not prevent a ~~court of appeals~~ district courts or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular of title 11 of the United States Code, as enacted by section 101 of this Act, apply to cases pending under section 77 of the Bankruptcy Act (11 U.S.C. 205) on the date of enactment of this Act in which the trustee has not filed a plan of reorganization.

(c) The repeal made by section 401 (a) of this Act does not affect any right of a referee in bankruptcy, United States bankruptcy judge, or survivor of a referee in bankruptcy or United States bankruptcy judge to receive any annuity or other payment under the civil service retirement laws.

(d) The amendments made by section 314 of this Act do not affect the application of chapter 9, chapter 96, sec-

tion 2516, section 3057, or section 3284 of title 18 of the United States Code to any act of any person—

(1) committed before October 1, 1979; or

(2) committed after October 1, 1979, in connection with a case commenced before such date.

(e) Notwithstanding subsection (a) of this section, a fee may not be charged under section 40c(2)(b) of the Bankruptcy Act in a case in which the plan is confirmed after September 30, ~~1979,~~ 1978 to the extent that such fee exceeds $100,000.

## COURTS DURING TRANSITION

SEC. 404. (a) The courts of bankruptcy, as defined under section 1(10) of the Bankruptcy Act, created under section 2a of the Bankruptcy Act, and existing on September 30, 1979, shall continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act and the amendments made by this Act. Each of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy under the Bankruptcy Act.

(b) The term of a referee in bankruptcy who is serving on the date of enactment of this Act is extended to and expires on March 31, 1984 or when his successor takes office. During the period commencing on October 1, 1979, and ending on March 31, 1984 (hereinafter in this title referred to as "the transition period"), unless such referee is found to be not qualified by the Chief Judge of the Circuit Court after consultation with a merit screening committee established as provided in subsection (c) of this section, such a referee in bankruptcy shall have the title of United States bankruptcy judge, and upon the expiration of his appointed term referred;

shall serve in the court of bankruptcy continued under subsection (a) of this section that appointed such United States bankruptcy judge, in the manner prescribed by this title. Section 8335(a) of title 5 of the United States Code shall not apply in respect of United States bankruptcy judges during the transition period.

(c) There shall be established for each State a merit screening committee composed of the president or the designee of the president of the State bar association, the dean of the